IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LaSHAWN EZELL )<br>　　　　Plaintiff, )<br>　v. )<br>　　　　　　　　　　　　　　)<br>CITY OF CHICAGO, *et al.*, )<br>　　　　Defendants. ) | | Case No. 18 CV 01049<br><br>Hon. Judge Kendall<br><br>Magistrate Judge Jeffrey Cole |
| LAROD STYLES )<br>　　　　Plaintiff, )<br>　v. )<br>　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>CITY OF CHICAGO, *et al.*, )<br>　　　　Defendants. ) | | Case No. 18 CV 01053<br><br>[Consolidated with *Ezell v. Chicago* for discovery purposes] |
| CHARLES JOHNSON )<br>　　　　Plaintiff, )<br>　v. )<br>　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>CITY OF CHICAGO, *et al.*, )<br>　　　　Defendants. ) | | Case No. 18 CV 01062<br><br>[Consolidated with *Ezell v. Chicago* for discovery purposes] |
| TROSHAWN McCOY )<br>　　　　Plaintiff, )<br>　v. )<br>　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>CITY OF CHICAGO, *et al.*, )<br>　　　　Defendants. ) | | Case No. 18 CV 01068<br><br>[Consolidated with *Ezell v. Chicago* for discovery purposes] |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT CITY OF CHICAGO TO
<u>DESIGNATE AND PRODUCE RULE 30(b)(6) WITNESSES</u>**

Plaintiffs LaShawn Ezell, Charles Johnson, Larod Styles, and Troshawn McCoy respectfully request that this Court enter an order compelling Defendant City of Chicago to designate and produce witnesses to provide binding testimony on behalf of the City on each of the topics set forth in Plaintiffs' Notice of Rule 30(b)(6) Deposition ("Plaintiffs' Topics"), stating as follows:

## Introduction

Plaintiffs have alleged and are developing in discovery evidence that they were wrongfully convicted of involvement in a double murder, of which they are innocent, as part of an investigation carried out by various members of the Chicago Police Department (CPD). As part of their discovery into the CPD officers' alleged misconduct in this case, Plaintiffs issued a Notice of Rule 30(b)(6) Deposition to the Defendant City on September 21, 2020. *See* Ex. A. The Notice seeks testimony on:

> (1) the City's policies, practices, and training related to
>    (a) interrogations and interviews of juveniles in homicide investigations;
>    (b) the use of Youth Officers during interrogations of juveniles;
>    (c) the use of live lineups containing juvenile homicide suspects;
>    (d) documentation and preservation of information learned during a homicide investigation;
>    (e) the use, creation, location, and preservation of homicide investigative files kept at CPD Areas;
>    (f) documentation and use of information learned by CPD officers during homicide investigations from an anonymous source; and
>    (g) the creation, use, and maintenance of composite sketches in December 1995;
> (2) CPD's ability to trace anonymous phone calls in December 1995; and
> (3) the City's efforts to locate and produce files responsive to Plaintiffs' document requests in this case.

Defendants object to this Notice on a number of superficial grounds upon which they declined to elaborate. They argued most specifically that certain of

2

Plaintiffs' topics were only relevant to *Monell* issues bifurcated by this Court, and that Plaintiffs' topics were generally burdensome and irrelevant to the issues in this litigation. These objections are meritless. Each of these topics directly relates to conduct that Defendants have themselves testified about in their depositions or that are central to Plaintiffs' claims about the Defendants' investigative and interrogation misconduct in this case. They are well within the ambit of discovery contemplated by Rule 26.

Defendants contend that they became aware of Plaintiffs' alleged involvement in the crime for which they were convicted through a purported anonymous tip. The receipt of that purported tip, and its documentation, are key issues in this litigation; indeed, this tip provided the only "probable cause" to arrest Plaintiff McCoy, as the Defendant Officers have testified. Yet Defendants failed to trace this crucial call or take any steps to investigate who made it.

Following this purported tip, Plaintiffs, who were juveniles or just over 18, were interrogated. The juvenile Plaintiffs allege they were compelled to provide involuntary inculpatory statements by the Defendant Officers, and that these Defendants prevented their guardians from being present during their interrogations, instead using Youth Officers (who are also defendants in this case related to their role in obtaining these involuntary statements).

The Defendants also conducted lineups in this case with multiple eyewitnesses. There are factual and legal issues surrounding those lineups, including why all Plaintiffs were included in each lineup (*i.e.*, four suspect, one filler

3

lineups), how eyewitnesses viewed these lineups, who viewed the lineups, and how those lineups were documented—or not documented. Similarly, the Defendants relied on a "composite sketch" in the case to implicate one of the Plaintiffs. The circumstances surrounding the creation of the sketch are also key issues in this litigation.

Finally, the Defendant Officers' recordkeeping is also of significance in discovery. Relevant documents which appear to have existed at one time in this investigation—including the original investigative file—have disappeared. The City has not been able to produce general progress reports, supplemental reports and other original documents related to this investigation that were supposed to be permanently retained. Whether these documents were innocently and inadvertently lost, or whether they were discarded because they contained information Plaintiffs could have used to undermine the state's case against them, will be one issue for the jury to determine at trial. The City presumably will argue the former, but Plaintiffs are entitled to develop evidence of the latter, and the City's policies covering the maintenance of records, and the steps it took to find the original investigative file in this case, are centrally relevant to this topic.

In order to develop evidence on these claims and issues, Plaintiffs served appropriate deposition notices under Rule 30(b)(6), requesting that the City designate witnesses to provide binding testimony on the topics in Plaintiffs' Notice. Yet, despite Plaintiffs' extensive efforts following Rule 37 to confer with the City to resolve this dispute, the City maintains its objections to *all* of Plaintiffs' noticed

4

topics. The City's position is antithetical to the liberal discovery standard under the Federal Rules, and disregards the existing evidence in this case. Its objections should be overruled and it should be compelled to designate witnesses to testify about the topics in Plaintiffs' Notice.

## Legal Standard

Liberal discovery rules contemplate that parties will have broad discovery to investigate facts and define the issues in a case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Federal Rule of Civil Procedure 30(b)(6) permits a party to notice the deposition of a public or private corporation like the Defendant City. Upon receiving a notice, "the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf." FED. R. CIV. P. 30(b)(6). "That corporation has the duty to 'make a conscientious good faith effort to designate the persons having knowledge of the matters sought by the [discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters.'" *Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 (N.D. Ill. 2008) (quoting in part *Buycks–Roberson v. Citibank Federal Savings Bank*, 162 F.R.D. 338, 342 (N.D. Ill. 1995)). With respect to Rule 30(b)(6) depositions, "[t]he more complex the case, the greater the number of topics to be explored during the deposition and the greater number of witnesses." *In re Sulfuric Acid Antitrust Litigation*, 2005 WL 1994105, at *3 (N.D. Ill. Aug. 19, 2005).

Federal Rule of Civil Procedure 37 allows a party to file a motion to compel (after first conferring in a good faith attempt to resolve the dispute) whenever a party fails to respond to a discovery request, including failing to make an appropriate Rule 30(b)(6) designation. FED. R. CIV. P. 37(a)(1), 37(a)(3)(b)(ii).

In resolving motions to compel, Courts apply the discovery rules liberally. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996); *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp.3d 1044, 1046 (N.D. Ill. 2018). Rule 26 allows a party to obtain discovery about "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)0(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

**Procedural History**

Plaintiffs issued the Notice of Rule 30(b)(6) Deposition on September 21, 2020. *See* Ex. A. On October 1, 2020, the City objected to all of Plaintiffs' requested 30(b)(6) Topics. *See* Ex. B. The City claimed that the topics were "directed at the *Monell* claims which have been bifurcated," and that Plaintiffs' Topics relating to the CPD's ability to trace anonymous phones calls and the City's efforts to locate and produce responsive files were "broadly objectionable." The City also objected to Plaintiffs' request for testimony on the City's ability to trace anonymous phone calls as burdensome and disproportional to the needs of the case, and Plaintiffs' request for testimony on the City's efforts to locate responsive files as "not only burdensome

6

and disproportional, but uncalled for and unjustified." Lastly, the City generally objected to all of Plaintiffs' requests as "objectionable to one degree or another on grounds such as vagueness, ambiguity and overbreadth."

On October 16, 2020, Plaintiffs responded to the City's objections, explaining the relevance of each Topic to Plaintiffs' individual, non-*Monell* claims and noting that Plaintiffs could not meaningfully respond to the City's general objections of "vagueness, ambiguity, and overbreadth" without a more specific objection directed at particular requests. *See* Ex. C. In response, on November 9, 2020, the City maintained its original objections, contended that Plaintiffs did not explain the relevance of their Topics sufficiently, and "decline[d] to address the specifics" of its general objections. *See* Ex. D.

On November 13, Plaintiffs requested a Rule 37.2 telephonic meet and confer regarding the City's objections. *See* Ex. E at 3. The City requested a written response to its November 9 correspondence. *Id.* at 2-3. Plaintiffs explained that they stood on the positions and explanations in their previous written correspondence and did not believe that any further written communication would sharpen the issues; they again requested that the parties confer telephonically to try and resolve the City's objections. *Id.* at 2. On November 13, 2020, the City insisted on another written response before agreeing to a Rule 37.2 meet and confer. Plaintiffs addressed Defendants' objections in writing on January 15, 2021. *See* Ex. F. Despite representations made during a conference call with the City on February 2, 2021 that the City intended to respond to Plaintiffs' letter, the City has not done so.

7

Despite Plaintiffs' repeated good-faith efforts to resolve this dispute without Court intervention, the parties have reached impasse. The City has refused to designate a witness for any of the topics in Plaintiffs' Rule 30(b)(6) Notice. Plaintiffs' Rule 30(b)(6) Notice is carefully tailored to seek relevant testimony on important issues in this case, and the City's blanket and boilerplate objections lack merit. Plaintiffs respectfully seek the Court's intervention to compel the City to designate and produce witnesses to testify on each topic so that this important discovery in this matter can be completed.

## Argument

### I. The City's Objections to Topics 1(a)-(g) in Plaintiff's 30(b)(6) Notice Are Not Well-Founded.

Topics 1(a)-(g) in Plaintiffs' Rule 30(b)(6) Notice seek testimony about the City's policies and practices and the Individual Defendants' training relating to

a) interrogations and interviews of juvenile witnesses;
b) the use of Youth Officers during interrogations and interviews of juvenile witnesses;
c) the use and operation of live/in-person lineups containing juvenile suspects in homicide investigations;
d) documentation and preservation of information learned during a homicide investigation;
e) the use, creation, contents of, storage, location, movement/transfer, and preservation of homicide investigative files kept at Chicago Police Department Detective Areas;
f) the documentation, preservation, and use of information learned by CPD officers during a homicide investigation from an anonymous source; and
g) the creation, use, and maintenance of composite sketches in December of 1995.

*See* Ex. A. Plaintiffs fully appreciate that *Monell* discovery has been bifurcated in this case, but Defendant's insistence that these topics are relevant only to *Monell*

8

discovery is plainly wrong. Each of these topics is directly relevant to Plaintiffs' claims against the individual Defendants, and as to what they must demonstrate to prevail both on liability and in the evaluation of their damages.

Plaintiffs allege that the Individual Defendants coerced and fabricated their false confessions to a murder that they did not commit, and suppressed evidence that would have been favorable to them in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Plaintiffs have further alleged that Defendants fabricated and suppressed evidence related to witnesses in this case, including related to the identification of Plaintiffs during lineups. Evidence of the City's policies and practices on permissible conduct during interrogations of juveniles and during lineups, the City's policies on the documentation of evidence collected during homicide investigations and the City's training on those policies for detectives, as well as the City's policies and trainings implementing *Brady,* are all directly relevant to Plaintiffs' Section 1983 claims against the individual defendants.

First, the requested testimony about the City's policies and practices, and the Individual Defendants' adherence to or deviation from those policies, goes directly to the Individual Defendants' state of mind in this case. *See, e.g.*, *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (explaining that a violation of a public agency's rule is "relevant evidence on which the jury could have relied to conclude that [the violation] w[as] "done with an intent to harass."); *Brooks v. City of Chicago*, No. 13 CV. 3090, 2015 WL 3545386, at *7 (N.D. Ill. June 5, 2015) (holding that "Defendants' knowledge and familiarity with police department guidelines ... is

9

relevant to their state of mind and the issue of punitive damages"); *Glenwood Halsted LLC v. Village of Glenwood*, 2014 WL 2862613, at *4 (N.D. Ill. June 24, 2014) (recognizing that evidence related to a defendant's "experience and expertise" would be admissible "state of mind" evidence); *Catt v. Affirmative Inc. Co.*, 2009 WL 1228605, at *4 (N.D. Ind. Apr. 30, 2009) (ordering 30(b)(6) deposition of corporation and holding that whether corporation "had certain policies or training programs" was relevant because it might "inform the state of mind, knowledge, and regular practices of" the individual employees who worked on the disputed case). In particular, the 30(b)(6) will shed light on the Individual Defendants' conduct in failing to adequately investigate the Ali and Ibrahim homicide, in their documentation (or failure to document) information learned in the investigation, including what was purportedly provided by an anonymous source, and in their interrogation of Plaintiffs (three of whom were juveniles at the time and who were not interrogated in the presence of a parent or guardian). The testimony is also relevant to the Individual Defendants' state of mind in their post-interrogation conduct in support of the wrongful prosecution of Plaintiffs, for instance, when they testified at the Plaintiffs' criminal proceedings and re-created police reports that had supposedly been "lost" and which were then used against Plaintiffs at their criminal trials. Given the relationship between the policies at issue and the Defendants' mental state, the noticed deposition topics are particularly appropriate, since it is Plaintiffs' burden to prove that the Defendants' misconduct was intentional and deliberate. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th

10

Cir. 2013) ("Liability for constitutional torts is more limited in scope than common law tort liability. Negligence is not sufficient.").

Moreover, Plaintiffs can support a finding of intentional or deliberate misconduct by presenting evidence at trial through an expert that the Defendants violated the City's own policies, for

> [i]n constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful. . . . Expert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights.

*Id.* at 721–22; *see also, e.g.*, *Brandon v. Vill. of Maywood*, 179 F. Supp. 2d 847, 853 (N.D. Ill. 2000) (Bucklo, J.) (holding that training records relate to the reasonableness of the officers' actions). However, in order for Plaintiffs' expert to testify regarding sound professional standards—from which the jury could infer that the Individual Defendants had egregiously deviated and were therefore likely acting intentionally or recklessly—Plaintiffs' expert must first be able to reference those relevant professional standards—which includes the CPD's policies on those topics, and information about how those policies were communicated to the officers through training. This sort of evidence is routinely considered by experts. *See, e.g.*, *Richman v. Sheahan*, 415 F.Supp.2d 929, 935-37 (N.D. Ill. 2006) (describing how expert relied on police training materials and guidelines); *City of Los Angeles v. Heller*, 475 U.S. 796, 802 (1986) (allowing experts to testify about whether defendants' conduct complied with municipal policy in assessing officers'

11

intent); *Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005) (noting that expert in excessive force was permitted to testify whether police officers' behavior complied with municipal policy).

Second, whether the officers violated any CPD rule is relevant to punitive damages. *Brooks*, 2015 WL 3545386, at *7 (holding that "Defendants' knowledge and familiarity with police department guidelines ... is relevant to their state of mind and the issue of punitive damages"); *see also Ratliff v. City of Chicago*, No. 10 C 739, 2012 WL 5845551, at *3 (N.D. Ill. Nov. 19, 2012). Finally, the policies themselves can be used as impeachment evidence should an officer testify at trial that they did not act inconsistently with any CPD policy.

Finally, in addition to their direct relevance to the Individual Defendants' states of mind (both as evidence of their individual liability, and for punitive damages purposes), the subject matters contained in Topic 1 are also important as background information to provide context for the progress of the murder investigation, and to shed light on potential additional avenues of follow-up discovery. While information on these topics have been, and will continue to be explored at depositions of the Individual Defendants and third-party witnesses, given the passage of time and resulting equivocal testimony, there is no substitute for a formally-designated witness, properly prepared to testify by the City, to provide informed and conclusive testimony on these topics. Again, these are not peripheral issues, but topics that are central to how the investigation (and alleged misconduct) took place here—which began with an anonymous tip and led to

12

allegedly improper juvenile interrogations, allegedly flawed identification procedures, and a tunnel vision investigation which was not properly documented, leading to what Plaintiffs allege was their wrongful convictions and incarceration for these murders they did not commit.

For all these reasons, the City should be required to designate and produce a 30(b)(6) designee to testify regarding the City's policies, practices, and training on the subjects listed in Plaintiffs' Topic 1.

## II. Plaintiffs' Topic 2 is Neither Burdensome nor Disproportionate to the Needs of the Case.

The City also objects to Topic 2 of Plaintiffs' 30(b)(6) Notice, which seeks information relating to CPD's ability to trace anonymous phone calls in December 1995, including CPD's use of caller I.D., the so-called "*69" (call back) feature, or phone software programs with the ability to trace phone calls, on the basis that this request is burdensome and disproportional to the needs of the case.

The City cannot reasonably argue that Topic 2 is not proportional to the needs of this case. Defendant Cassidy claims that on December 5, 1995, he unexpectedly received an anonymous phone call at Area One, and that this call led to the arrest of Plaintiff McCoy, and eventually, the arrests of Plaintiffs Ezell, Johnson, and Styles. According to the Defendants, that call was the *only* basis for probable cause to arrest McCoy. The identity of the supposed anonymous caller was never disclosed to Plaintiffs. The information that was supposedly provided by the purported anonymous caller is undoubtedly going to be part of the Defendants' theory at trial, and Plaintiff is clearly entitled to explore the abilities of the CPD to

13

obtain the allegedly anonymous caller's identity. Frankly, the City's claim that CPD's number tracing capacities is irrelevant to this litigation is so misplaced that it borders on the frivolous.

Second, the City has not, and cannot, state with any specificity why designating a witness to testify about the CPD's ability to trace anonymous phone calls in December 1995 is burdensome. The topic is succinct and clearly described in the notice. The Court should compel the City to designate and produce a witness to testify on this topic.

### III. The City Should Designate Witnesses about its Efforts to Locate Missing Homicide Investigation Files.

Plaintiffs' Topic 3 seeks information regarding what efforts the City has made to locate and produce files relating to the Ali and Ibrahim murder investigation, which are supposed to be maintained permanently according to CPD's own standard operating procedures as they existed in 1995. The deposition topics are straightforward: Who looked for responsive documents relating to this case? Where did they look (or not look)? When did they conduct a search? For the records that were produced, where were they found (and where have they been kept since the underlying investigation)? Critically, where is the investigative file relating to the Ali and Ibrahim homicide investigation that has yet to materialize? These are essential questions, clearly relevant to Plaintiffs' individual claims (i.e., to show that exculpatory evidence was suppressed), and particularly appropriate given the City's inability to locate the investigative file relating to the homicides that Plaintiffs were wrongfully convicted of committing.

The City's objection to Topic 3 as "burdensome and disproportional," and "uncalled for and unjustified" is particularly perplexing because the City has already identified two witnesses who could be designated to testify – Detective Brian Spain and Lieutenant Eric Winstrom. On April 2, 2019, the City sent Plaintiffs a letter detailing the City's efforts to locate the Ali and Ibrahim investigative file. The City has taken the position that a 30(b)(6) deposition on this topic is not necessary because of the City's letter. But this brief and unverified letter, containing only a bullet point list of locations where Det. Spain and Lt. Winstrom "conducted reasonably diligent examinations," is not a substitute for the City's binding testimony about its efforts to find the relevant files. Plaintiffs agree that this correspondence will help guide the deposition of an appropriate Rule 30(b)(6) designee, ensuring it can be targeted and efficient, but the letter does not obviate the City's obligations to comply with Rule 26. Plaintiffs are entitled to question a witness about the efforts undertaken in the City's search, including to explore the details that are missing from the City's vague and unsworn discovery correspondence, and the City should be compelled to designate a witness to provide such testimony.

## Conclusion

WHEREFORE, Plaintiffs respectfully request that the Court enter an order compelling Defendant City of Chicago to designate and produce witnesses to provide binding testimony on behalf of the City on each of the topics set forth in Plaintiffs' Rule 30(b)(6) Notice.

15

Respectfully submitted,

**LASHAWN EZELL**

 /s/ Katie Roche
Arthur R. Loevy
Jonathan I. Loevy
Tara Thompson
Sam Heppell
Katie Roche
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
arthur@loevy.com
jon@loevy.com
josh@loevy.com
katie@loevy.com
tara@loevy.com

***Attorneys for Lashawn Ezell***

**CHARLES JOHNSON**

 /s/ Alexa Van Brunt
Alexa Van Brunt
Locke E. Bowman
MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-1336
a-vanbrunt@law.northwestern.edu
l-bowman@law.northwestern.edu

J. Samuel Tenenbaum
Bluhm Legal Clinic
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-4808
s-tenenbaum@law.northwestern.edu

Jon Loevy
Tara Thompson
Katie Roche

>LOEVY & LOEVY
>311 North Aberdeen St., 3rd Floor
>Chicago, Illinois 60607
>(312) 243-5900
>jon@loevy.com
>tara@loevy.com
>katie@loevy.com
>
>***Attorneys for Charles Johnson***
>
>**TROSHAWN McCOY**
>
>/s/ Jon Erickson
>Jon F. Erickson
>Michael Oppenheimer
>Erickson & Oppenheimer, Ltd
>223 W. Jackson Blvd
>Suite 200
>Chicago, Illinois 60606
>(312) 327-3370
>jon@eolawus.com
>michael@eolawus.com
>
>***Attorneys for Troshawn McCoy***
>
>**LAROD STYLES**
>
>/s/ Terence H. Campbell
>Terence H. Campbell
>Cotsirilos, Tighe, Streiker, Poulous &
>     Campbell, LTD
>33 N. Dearborn
>Suite 600
>Chicago, Illinois 60602
>(312) 263-0345
>tcampbell@cotsiriloslaw.com
>
>***Attorneys for Larod Styles***

17

## **CERTIFICATE OF SERVICE**

I, Katie Roche, an attorney, certify that on March 9, 2021, I filed the foregoing Plaintiffs' Motion to Compel Defendant City of Chicago to Designate and Produce Rule 30(b)(6) Witness(es) using the Court's CM/ECF system, which effected service on all counsel of record

/s/ Katie Roche
*Attorney for Plaintiff Ezell*
