**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LaSHAWN EZELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1049 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs have moved to compel the City of Chicago to designate and produce Rule 30(b)(6) witnesses on a number of topics. For the following reasons, the plaintiffs' motion [Dkt. #254] is granted in part and denied in part.

The current discovery dispute dates back eight months, to September 21, 2020, when plaintiff issued a Notice of Rule 30(b)(6) Deposition to the City seeking testimony on the City's policies, practices, and training related to:

(a) interrogations and interviews of juveniles in homicide investigations;

(b) the use of Youth Officers during interrogations of juveniles;

(c) the use of live lineups containing juvenile homicide suspects;

(d) documentation and preservation of information learned during a homicide investigation;

(e) the use, creation, location, and preservation of homicide investigative files kept at CPD Areas;

(f) documentation and use of information learned by CPD officers during homicide investigations from an anonymous source; and

(g) the creation, use, and maintenance of composite sketches in December 1995

It also sought testimony on the CPD's ability to trace anonymous phone calls in December 1995, and the City's efforts to locate and produce files responsive to plaintiffs' document requests in this case. [Dkt. #254-1].

The City responded by email a week and a half later, "[i]n lieu of a formal objection now, and in the spirit of Local Rule 37.2." The main issue the City had with the deposition notice was that topics 1(a)–(g), asking for testimony about "policies, practice, and training" were clearly related to the plaintiff's *Monell* claims that Judge Kendall had bifurcated and stayed. [Dkt. #130]. The City wanted an explanation of the non-*Monell* relevance of those requests, because that was, it claimed, apparent. That was a valid request, but the remainder of the City's objections were unamplified, boilerplate – and thus of no validity or effect.[1] The topic of tracing calls was, it was claimed, burdensome and disproportional to the needs of the case, and the topic of City's efforts to locate and produce files was burdensome, disproportionate, and uncalled for and unjustified. The City threw in a handful of other general "boilerplate" objections – vague, ambiguous, and overbroad – for good measure. [Dkt. #254-2].

Plaintiffs responded with an explanation that wasn't much of an explanation at all. They insisted each topic was "at the heart" of the fabrication of evidence, coercion of confessions, and *Brady* claims. Then, rather than explain, they summarized their claims:

---

[1] Despite courts' repeated admonitions that "boilerplate" objections are ineffectual, *Joseph v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir.1983), their use continues unabated, with the consequent institutional burdens, *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996), and the needless imposition of costs on the opposing party. They are "'tantamount to not making any objection at all.'" *E.E.O.C. v. Safeway Store, Inc.*, 2002 WL 31947153, *2–3 (N.D.Cal.2002). *See also In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295 (N.D.Ill.1997); *Klein v. AIG Trading Group Inc.*, 228 F.R.D. 418, 424 (D.Conn.2005) (overruling objections that "the familiar litany that the [requests] are burdensome, oppressive or overly broad"). *See also infra* at 12.

> Plaintiffs, most of whom were juveniles at the time of their arrests and convictions, were interrogated by individual defendants and participated in lineups conducted by the individual defendants; a composite sketch was created and used to identify and secure the conviction of Plaintiff Johnson; and Defendants have not been able to locate the investigative file relating to the murders that Plaintiffs were wrongfully convicted of committing.

In the end, the plaintiffs simply claimed they were "entitled" to testimony on the City's policies and practices, and the training and discipline that the individual defendants received, relating to the topics. [Dkt. #254-3]. As to the two remaining topics, the plaintiffs reminded the City that defendant, Cassidy, claimed that he received an anonymous phone call that led to the arrest of plaintiff, McCoy, and eventually, plaintiffs, Ezell, Johnson, and Styles, and the identity of that caller was never disclosed to plaintiffs prior to their criminal trials. Consequently, plaintiffs felt they were entitled to testimony regarding the abilities of the Chicago Police Department to obtain the allegedly anonymous caller's identity. As to the efforts the City has made to locate and produce files relating to the Elegant Auto Investigation, the plaintiff explained that it was a common Rule 30(b)(6) request. [Dkt. #254-3].

The parties went back and forth over the next few months, with the plaintiff, all the while, standing on its "entitlement" position and refusing the budge, while the City continued to demand a more detailed explanation in writing, but also proposed some less cumbersome alternatives, such as document requests or interrogatories. [Dkt. #254, at 7; Dkt. 254-4]. They apparently had two telephonic meetings on March 18 and 29, 2021, but plaintiff's motion to compel fails to comply with Local Rule 37.2 – which requires an itemization of "[w]here the consultation occurred, and the date, time and place of such conference, and the names of all parties participating therein." Nor does it provide any detail as to what was discussed. Thus, there is no way to tell whether the parties

negotiated in "good faith" as the Rule demands. The plaintiffs' account in their motion suggests they did not. They simply dug in at their original position and refused to consider any alternatives. [Dkt.## 254, at 7; 260, at 15-16]. But that is not what the Local Rule demands or seeks to accomplish. *See Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018); *Gunn v. Stevens Security & Training Servs., Inc.*, 2018 WL 1737518, at *3 (N.D. Ill. 2018); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016).[2] And, ironically, the steadfast refusal to negotiate or even consider alternatives to the far-reaching discovery proposed is a tactic plaintiffs' counsel has decried in the past. *See, e.g., Bishop v. White*, 2020 WL 6149567, at *3 (N.D. Ill. 2020).

In a recent hearing before Judge Ellis, in another case against the City, the Judge was surprised to find that the plaintiffs' Firm had named a staggering *two-hundred and fifty* Rule 404(b) witnesses and had refused to budge from that number. Judge Ellis, understandably, was having none of it:

> I'm not sure why it is that the plaintiff believes it would be appropriate to list 250 [Rule] 404(b)witnesses. There's no way on God's green earth that I would ever allow anybody to put on 250 404(b) witnesses at trial. . . .

*Johnson v. Guevara*, No. 20-cv-4156, April 6, 2021, [Dkt. #63, at 3]. Counsel then explained that the Firm's position was that it simply would not limit the list voluntarily. A court order would be required! *Johnson v. Guevara*, 20-cv-4156, April 6, 2021, [Dkt. #63, at 3-4]. That manifested a disregard of Local Rule 37.2. Judge Ellis understandably concluded that there ought to have been no need for a court order on such a matter, nor the resulting waste of judicial resources. She felt counsel ought to have pared the list down voluntarily and, more importantly, rationally. "That's how

---

[2] It is not the first time. *Ezell v. City of Chicago*, 2020 WL 996518, at *1 (N.D. Ill. 2020).

4

litigation should work." *Johnson v. Guevara*, 20-cv-4156, April 6, 2021, [Dkt. #63, at 5]. *See also, Prince v. Kato*, 18-cv-2952, May 9, 2019, [Dkt. #113, at 4, 9] where magistrate judge Harjani said: "This is an issue in every case where we have Loevy on one side and the City on the other . . . you may get one, you may get two, you may get three, I don't know. But it is not going to be 40. It is certainly not going to be 30, 20, and probably not even ten." Unfortunately, the same philosophy that ignores Local Rule 37.2 is apparently also at work here. Despite having lost on the issue of bifurcation, the plaintiff seemingly has no intention of giving up *Monell* discovery regarding City policies, practices, and training. More than that, the plaintiffs want that discovery in the most burdensome and expensive form possible, which, of course, cuts against the whole rationale for bifurcation – and against the very philosophy underlying all the Rules of Federal Civil Procedure. *See* Rule 1. It is well to bear in mind that discovery is not a game with a prize going to the most aggressive or adroit player.

The City has produced over 1600 pages of the CPD written directives, standard operating procedures, and training materials from 1995 that provide the information plaintiffs claim they need from Rule 30(b)(6) witnesses. The individual defendant officers' training records have also been produced. Plaintiffs have deposed both defendant and non-defendant officers at length about CPD's polices, practices, and training. Two other such depositions are in the offing. Additionally, the City has proposed alternate avenues for additional discovery which the plaintiffs have refused to consider. Instead, the plaintiffs will not be satisfied without Rule 30(b)(6) testimony because, they insist, they are "legally entitled" to it. But that means locating, preparing and producing witnesses to testify about policies, practices, and procedures from 1995. The witness has to study the nearly 30-year-old materials – materials the plaintiffs have received in discovery or have turned down during Local Rule

5

37.2 negotiations – interview witnesses, and then be prepared for deposition. It's very time-consuming and very costly. And even more importantly, it is also unnecessary and, out of proportion with the needs of a bifurcated case.

Of course, I am not unaware of the nature of this case and the significance of the issues at stake. But that does not give counsel for any party in any case carte blanche to ignore the Rules governing all other civil cases and insist that their case be accorded special treatment, with the limits on discovery being decided by their demands and conducted under rules they decree because of the importance they deem should be accorded their case. "Parties are entitled to a reasonable opportunity to investigate the facts – and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994).³ Thus, in all cases, proportionality must play a significant role. Put another way, overreaching by a party seeking discovery is no virtue and should be consciously guarded against. *Cf. Claybon v. SCC Westchester Operating Co. LLC*, 2021 WL 1222 803 at *8 (N.D.Ill 2021)*; Healthgrades, Inc. V. MDx Medical, Inc.,* 2013 WL 17777576 at *5 (D.Colo. 2013).

Rule 26(b) mandates that discovery be reigned in not only based on "the importance of the issues at stake in the action" or "the amount in controversy" but also "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Proportionality, like other concepts, it is not self-defining; it requires a common sense and experiential assessment. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin.,*

---

³ It is not surprising that Judge Posner has lamented that "protracted discovery is the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000). *See, e.g., Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 901 (7th Cir. 1981)(discovery is "a runaway train"); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986)(discovery is "a monster on the loose"). Things have only gotten more difficult with the passage of time.

*Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018). Indeed, Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary noted that the addition of "proportionality" to Rule 26(b) "crystalize[d] the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id*. (emphasis added). In this instance, common sense requires the court to take heed of what plaintiffs' motion seems to have ignored, or at least pushed far into the background: Judge Kendall's bifurcation ruling. The Chief Justice also stressed that "[t]he key here is careful and realistic assessment of actual need" that may "require the active involvement of ... the federal judge to guide decisions respecting the scope of discovery." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 259 (3rd Cir. 2016).

This brings us back to Local Rule 37.2. That "active involvement" is guaranteed when one side simply will not budge, not even a little, on its demands. In those instances, the ultimate decision must, of necessity, be left to the vast discretion of the court. *Kuttner v. Zaruba,* 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013). But the judge who will be making the decision may well not have the same view of counsel, who refused any attempt at compromise. Discretion, after all, denotes the absence of hard and fast rules. *Langnes v. Green*, 282 U.S. 531, 541 (1931). Being a range, not a point, discretion allows two decision-makers – on virtually identical facts – to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *See McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), aff'd, *McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). *Accord Mejia v. Cook County, Ill*., 650 F.3d 631, 635 (7th Cir. 2011). *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996).

Thus, it behooves counsel to work things out on their own and to avoid needless rigidity. A

party who steadfastly and intransigently maintains a position without compromising – as the plaintiff has admittedly done here – could be "right" – in some abstract sense – but find itself on the losing side, and properly so, when the matter comes before the court, and the court's discretion leads it to accept the other side's "right" position. A negotiated outcome is more likely to give both sides at least a somewhat satisfactory resolution. *See, generally, Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *2 (N.D. Ill. 2016); *Bierk v. Tango Mobile, LLC*, 2021 WL 1088272, at *2 (N.D. Ill. 2021)("Is a discovery response adequate? Is a request overly broad? One judge will say yes, another will say no.").

The foregoing is, or should be, part of the discretionary decision-making that factors into every discovery dispute resolution. The main issue here is the bifurcation of plaintiff's claims against the individual officers and his *Monell* claim against the City, along with a stay of all litigation, including discovery, of that *Monell* claim. Judge Kendall's ruling has meaning, and we cannot look at the plaintiff's demands, or the refusal to budge, as though it existed in splendid isolation. To give plaintiffs *everything* they demand is effectively to ignore Judge Kendall's bifurcation ruling. But, not only *stare decisis*, common sense, and proportionality militate against giving plaintiffs the *Monell*-type discovery they claim entitlement to despite the bifurcation ruling, we are not at liberty to ignore that ruling – and neither are the plaintiffs.

Even putting common sense and proportionality aside, it has to be said that plaintiffs' brief fails to support plaintiffs' claimed "entitlement" to Rule 30(b)(6) testimony on policies and practices. It is rather telling that among the cases plaintiffs cite that supposedly show they are "entitled" to the policy and practice discovery testimony they demand, one will not find any reference to bifurcation of litigation between individual and *Monell* claims. For example, the plaintiff claims that all that

testimony on policies and procedures, so clearly relevant to a *Monell* claim that has been bifurcated out of these proceedings, is also relevant to claims against the individual defendants because their "adherence to or deviation from those policies, goes directly to the[ir] . . . state of mind in this case...." But that would make discovery here coextensive with discovery under *Monell,* which has been bifurcated. Phrased differently, relevance in this case would be coextensive with relevance in a *Monell* case. That obviously cannot be so. At least not here.

The plaintiffs rely on *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009); *Brooks v. City of Chicago*, 2015 WL 3545386, at *7 (N.D. Ill. 2015); and *Glenwood Halsted LLC v. Vill. of Glenwood*, 2014 WL 2862613, at *4 (N.D. Ill. 2014). [Dkt. #254, at 9]. The court in *Mays* did think that a violation of a public agency's rule was "relevant evidence on which the jury could have relied to conclude that [the violation] w[as]"done with an intent to harass." 575 F.3d at 650. But *Mays* was an Eighth Amendment strip search case, in which the plaintiff had to show that the search was maliciously motivated and totally without penological justification – done in a harassing – manner, making intent to harass central to the claim. 575 F.3d at 650. *See also Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004)("To win his claim, Mays had to show that the searches were conducted in a harassing manner intended to humiliate and cause psychological pain."). We have a completely different type of claim here, and intent to harass is not a necessary part of it. Moreover, there is nothing in the case to suggest that the prison's rules were not demonstrated by written evidence.

That flaw in plaintiffs' reasoning is driven home in the other two cited cases. *Brooks*, at least, was an excessive force case, and the court did hold that "Defendants' knowledge and familiarity with police department guidelines ... is relevant to their state of mind and the issue of punitive damages"

*Brooks v. City of Chicago*, 2015 WL 3545386, at *7 (N.D. Ill. 2015).[4] But, again, there is nothing in it to support the type of discovery plaintiffs want here. The court allowed the defendants to testify regarding their knowledge and familiarity with the guidelines and how that impacted their actions on the night in question, and allowed written evidence on those guidelines in as well. *Brooks*, 2015 WL 3545386, at *5, 7. *Halsted LLC v. Village of Glenwood*, 2014 WL 2862613 (N.D. Ill. 2014) was another case allowing *written* evidence on a defendant's "experience and expertise" in setting up TIFs. 2014 WL 2862613, at *4. Written evidence on policies and practices is just what defendant has provided, and offered during Rule 37.2 negotiations, but plaintiffs did not want it. The cases they cite, which aren't even *Monell*-bifurcation cases, suggest that's enough.

Plaintiffs assert that they can support a finding of intentional or deliberate misconduct by presenting evidence at trial through an expert who would testify that the defendants violated the City's own policies. But plaintiffs' research undermines any demands for Rule 30(b)(6) depositions on policies and procedures in this bifurcated case. [Dkt. #254, at 11]. While plaintiffs principally rely on *Jimenez v. City of Chicago*, 732 F.3d 710, 723 (7th Cir. 2013), there is nothing in that Opinion saying an expert needs the deposition testimony the plaintiff says he is entitled to here. The expert in that case "testified about the steps a reasonable police investigator would have taken to solve the . . . murder, as well as the information that a reasonable police investigator would have taken into account as the investigation progressed." *Id.* at 722. "He told the jury what a reasonable police investigator should have done when presented with these conflicting and/or inculpatory statements during the murder investigation." *Id.* at 723. His testimony was based, not on Rule 30(b)(6)

---

[4] A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

depositions, but on his "background and expertise," including his knowledge about the "sorts of biases may exist or sometimes influence how police investigations are conducted," how "they can influence police investigations, and how a reasonable police investigator not influenced by these factors should have conducted the investigation at issue." No. 09-cv-8081[Dkt. #266, at 2]. There was no mention of Rule 30(b)(6) testimony; there was not even a mention of departmental practices, policies, or procedures.

As before, the other cases plaintiffs cite involve not Rule 30(b)(6) testimony but training records, *Brandon v. Vill. of Maywood*, 179 F. Supp. 2d 847, 853 (N.D. Ill. 2000), or police training *materials and guidelines*, *Richman v. Sheahan*, 415 F.Supp.2d 929, 935-37 (N.D. Ill. 2006), or, similarly to the testimony in *Jimenez*, standard police practices as opposed to any specific municipal or departmental policy. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). All this adds up to the plaintiffs failing to show that, given the bifurcation of this case, the testimony they want on Topics Nos. 1(a)-(g), while perhaps tangentially relevant to plaintiffs' claims against individual officers, is out of proportion with the needs of this case and contrary to the thinking that underlay Judge Kendall's bifurcation ruling. The plaintiffs' motion to compel is denied as to Topic 1(a)-(g).

That leaves Topics 2 and 3. Topic 2 demands Rule 30(b)(6) testimony regarding the CPD's ability to trace anonymous phone calls in December 1995, and Topic 3 covers the City's efforts to locate and produce files responsive to plaintiffs' document requests in this case. While this is not *Monell* discovery, the City's objections are not persuasive. They have consisted of the "boilerplate" objections that all too often are thoughtlessly and reflexively provided as the "answers" to discovery requests. But, rote, unamplified, conclusory recitals such as unduly burdensome, overbroad, vague

11

and ambiguous are ineffectual as every court in the country has held. They are tantamount to no objections at all. In addition to the authorities cited in n. 1 *see, e.g., Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371 (11th Cir. 2009); *Zambrano v. Sparkplug Capital, LLC*, 2020 WL 1847396, at *1 (N.D. Ill. 2020); *Gevas v. Dunlop*, 2020 WL 814875, at *1 (N.D. Ill. 2020); *Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1, Pension Tr. Fund*, 2019 WL 454324, at *4 (N.D. Ill. 2019); *BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, 2017 WL 5890923, at *2 (N.D. Ill. 2017); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 2011 WL 13262362, at *3 (N.D. Ill. 2011). They are little more than a tactic to obfuscate and delay. *See generally* Gregory Jones, *General and Boilerplate Objections Curbing Routine Abuse of the Discovery Process*, 107 Ill.B.J. 24 (2019); Matthew L. Jarvey, *Boilerplate Discovery Objections: How They Are Used, Why They Are Wrong, And What We Can Do About Them*, 61 Drake L.Rev. 913 (2013).

After a few months, the City finally fleshed out those objections in its Response Brief. As to Topic 2, the anonymous phone call and efforts to trace it,[5] the City essentially claims that it has done enough. It says that defendant, Cassidy, was unable to trace phone calls in December 1995, explaining that Area 1 only had rotary phones at that time, and Cassidy could not recall whether there was a "star 69 feature" or whether there was any way for CPD to trace a call in 1995. They add that

---

[5] By way of background, defendant, Cassidy, received a phone call at Area 1 from a person who would not identify himself. The caller advised Cassidy that he heard Troshawn McCoy – the plaintiff here – talking about the murders plaintiff was to be convicted of and that McCoy was a student at Dunbar High School. The caller also provided McCoy's mother's name and phone number. Defendant, Cassidy, claims to have asked the person several times for his name and contact information, without success, other than a nickname, which defendant heard as "Big Wheels." There was no attempt to trace the call, but the detectives contacted Dunbar High School and confirmed that McCoy was, in fact, a student there. Detectives spoke with McCoy at school and verified his mother's name and phone number. McCoy agreed to speak with them further at Area 1, and then confessed to participating in the murders. [Dkt. #257, at 10].

defendant, Boudreau, testified the detective division at Area 1 in December 1995 did not have the ability to trace phone calls, did not have a "caller ID function," and that tracing a call was a "big deal" requiring a court order and which was all but "impossible." Citing *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015), the City concludes "there is no constitutional right to a police investigation, much less to an investigation to Plaintiffs' satisfaction."[Dkt.#257, at 10-11].

No doubt, but the plaintiffs are not advancing the type of failure to investigate claim that the court was concerned with in *Rossi*. The question here is whether evidence was fabricated. As such, a claimed anonymous phone call upon which much was based and which was not traced is a lynchpin of this case. The plaintiffs may not be entitled to *Monell*-style discovery into multiple policies and practices, but the City draws the line too narrowly. Plaintiffs are entitled to learn more about this critical (and uncomplicated) topic. And claimed vague recollections, failures to recall, or conclusory assessments that tracing a call was a "big deal" are not sufficient to satisfy the City's discovery obligations. The plaintiffs' motion is granted as to Topic 2.

Topic 3 concerns the efforts the City has made to locate the lost investigation file. Plaintiffs are correct in that Rule 30(b)(6) testimony about efforts taken to collect discovery is fairly common and often comes on the heels of an affidavit as to those efforts. Discovery in the wake of and relating to those affidavits or declarations are not uncommon and are often quite revealing. *See, e.g., Schmude v. Tricam Industries, Inc.*, 556 F.3d 624, 628 (7th Cir. 2009); *Silversun Industries, Inc. v. PPG Industries, Inc.,* 296 F.Supp.3d 936 (N.D. Ill. 2017); *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 625 (N.D. Ill. 2016); *FTC v. Advocate Health Care Network*, 162 F.Supp.3d 666, 671 (N.D. Ill. 2016); *Tellabs v. Fujitsu*, 283 F.R.D. 374, 378 (N.D. Ill. 2012).

The City's insistence that it has done enough will not suffice. And "saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010). Defense counsel has written a letter to plaintiffs' counsel about the efforts to locate the "lost" file. According to the letter, two police officers – a detective and a lieutenant – conducted what defense counsel characterized as "reasonably diligent" – whatever that may mean – searches of sixteen locations over four days. [Dkt. #257-7]. But paper is patient, as the saying goes, and a letter falls short of what plaintiffs are entitled to. What is a "reasonably diligent" search? How much effort was undertaken and time spent at these multiple locations, with one officer hitting four or five of those locations in a day, which are scattered all over the City? What was done and what was searched? One could go on. But the point is obvious. The plaintiffs' motion is granted as to Topic 3.

ENTERED: *[signature: Jeffrey Cole]*
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/26/21