IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LaSHAWN EZELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1049 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On June 21, 2022, the plaintiffs filed a motion to compel an expert witness deposition of Brian Sexton, who was previously deposed as a fact witness in February 2021. For the following reasons, the motion [Dkt. #330] is granted, but conditionally as explained in this Order.

Plaintiff's motion indicates that it was prompted by defendants' disclosure – a month earlier, on May 24th – of Mr. Sexton as a non-retained expert witness in their amended Rule 26(a)(2)(C) expert witness disclosures. As part of their disclosures, the defendants included a list of 15 opinions that Mr. Sexton may testify to at trial in his role as an "expert." Yet, the defendants now oppose an expert witness deposition of Mr. Sexton, claiming that his "opinions" can be found in the transcript of his earlier fact deposition testimony. This is not a persuasive objection, and the Federal Rules of Civil Procedure allow an expert to be deposed.

Questions an attorney might pose to a person as an "expert" witness may well be different than those that might be posed to the same person who initially testified as a fact witness, *Monco v. Zoltek Corp.*, 332 F.R.D. 581, 582 (N.D. Ill. 2019), for as the Seventh Circuit has stressed, "[t]here is a significant distinction between disclosing an individual as a fact witness under Rule 26(a)(1)(A) and disclosing an expert witness under Rule 26(a)(2)." *Karum Holdings LLC v. Lowe's Companies,*

*Inc.*, 895 F.3d 944, 951 (7th Cir. 2018). "Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial. [Plaintiff] should not be made to assume that each witness disclosed by the [defendants] could be an expert witness at trial." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004). There are approaches that are taken and questions that are asked when questioning "expert" witnesses that are not taken when questioning "fact" witnesses. It is simply beyond debate that the issues, and potential issues, are very different depending on the capacity in which the witness is being deposed. It is beyond doubt that if the plaintiffs did what the defendants now say that should have, namely, morph what started out as a fact deposition into an extended expert deposition, the defendants would have objected vociferously, especially given the contentious history of this case. So, really, the defendants' objection to a second deposition of Mr. Sexton – this time as an "expert" – is not well taken. Moreover, even if this were a matter involving an exercise of discretion, I choose to exercise the broad discretion I have to resolve discovery disputes, *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *In re Stericycle Sec. Litig.*, 35 F.4th 555, 571 (7th Cir. 2022); *Fields v. City of Chicago*, 981 F.3d 534, 551 (7th Cir. 2020), and grant plaintiff's motion – but with the following qualification.

There is the additional issue of the expert discovery schedule Judge Kendall set on June 13, 2022. Per Judge Kendall's Order, depositions of defendants' experts were to have been completed by July 1, 2022. [Dkt. #303]. That would specifically include the subject of this motion, Mr. Sexton, whose deposition was one of those the parties claimed they had in mind when they sought from Judge Kendall "one last extension[1] to finalize all disclosures and depositions." [Dkt. #327, Pars.

---

[1] At a status hearing on March 8, 2021, in the course of discussing a planned motion for extension to the discovery schedule at *that* time, "[t]he plaintiffs asked that I consider making [that] request, which I
(continued...)

9(d), 10]. Obviously, the instant motion, barely six pages long, ought to have been brought much sooner than a month after defendants disclosed Mr. Sexton.[2] Obviously, Mr. Sexton's counsel, could have responded to so brief and simple a motion at the hearing on June 28th, but he wanted *three weeks* to complete a response brief (an additional week was to accommodate a vacation). [Dkt. #333; 339, at 7].[3] The response brief from Mr. Sexton was not enough for the defendants, as they also took a month to file a response brief, at the last minute as is typical, sneaking it in at 10:48 p.m. on the final day, nearly six hours after close of business.[4] And neither of these were enough for the Cook

---

[1](...continued)
said I would grant, a final extension." [Dkt. #245]. Three months later, plaintiffs were joining with defendants to ask for another extension of the discovery schedule. [Dkt. #267]. And another two months after that. [Dkt. #280]. And so on [Dkt. #295], and so on [Dkt. #300], and so on. The parties keep using phrases like "one last extension" or "final extension." To paraphrase Inigo Montoya, those phrases do not mean what they think they mean.

[2] One might suppose that plaintiffs would explain the delay as due to the meet-and-confer process mandated by Local Rule 37.2. But while the plaintiffs do claim the parties conferred, [Dkt. #330, Par. 5], the plaintiffs' assertion fall far short of complying with the requirements of Local Rule 37.2. ("Where the consultation occurred, this statement shall recite, in addition, the date, time and place of such conference, and the names of all parties participating therein."). The plaintiffs do not say where the conference took place, when, or provide any names. Plaintiffs' lawyers have missed the mark on their Local Rule 37.2 certifications before. *Ezell v. City of Chicago*, No. 18 C 1049, 2021 WL 2136395, at *2 (N.D. Ill. May 26, 2021)(". . . plaintiff's motion to compel fails to comply with Local Rule 37.2 – which requires an itemization of '[w]here the consultation occurred, and the date, time and place of such conference, and the names of all parties participating therein.'").

[3] The result of that extended briefing schedule was a seemingly half-hearted response of little more than three pages; fewer pages, in fact, than the notice of filing. Accordingly, the court will not spend much time on it. While the response claimed that plaintiff treated Mr. Sexton as an expert witness "at times" during his initial deposition [Dkt. #345, at 3], it provided no examples by citation to the deposition transcript that would allow a court to assess that contention. It cited a single case which it conceded supported the plaintiff's motion. [Dkt. #345]. *See, e.g., White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[T]his court has repeatedly and consistently held that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived."). The response does state that "as an officer of the Court, Mr. Sexton will abide by whatever order this Honorable Court enters . . . ." [Dkt. #345, at 3], but the court expects all litigants and witness to abide by court orders.

[4] The defendants' response is a little better than Mr. Sexton's. The defendants say they only disclosed Mr. Sexton as an expert witness "out of an abundance of caution", that he is like a treating physician, and
(continued...)

County States Attorney which also filed a surprise response to plaintiff's eight-page motion as a non-party, and also waited until nearly the last minute, taking over five weeks to do so.[5] And, just like

---

[4](...continued)
that a second deposition would be unduly burdensome for him as a non-party. [Dkt. #348]. But, the defendants' response is unconvincing. Regardless of their motivation, the defendants surprisingly disclosed Mr. Sexton as an expert witness and, for whatever reason, waited well over a year after his deposition to do so. Surely they knew such a significant change would lead to something like this, especially given the unfortunately contentious history between these attorneys. So, whatever burdens they feel are being visited upon them are of their own doing. Moreover, the court is not convinced that Mr. Sexton is like a treating physician. *Cf. Cripe v. Henkel Corp.*, 858 F.3d 1110, 1112 (7th Cir. 2017); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013). And, while he is a non-party, he was the prosecuting attorney so he cannot be as taken aback as an ordinary non-party might be.

[5] The Cook County States Attorney wants to go so far as to strike portions of Mr. Sexton's fifteen-month-old deposition testimony under the deliberative process privilege. First, and most obviously, the Cook County States Attorney has waited far too long to claim a privilege over testimony taken over a year ago. While the States Attorney was not represented at Mr. Sexton's deposition, apparently the office was notified that he was considered an expert witness back in May. [Dkt. #346, at 2]. They did not seek to assert the privilege at that time. The States Attorney's office was surely aware of Mr. Sexton's testimony back on June 21st, but again, did not asset the privilege at that time. Instead, the States Attorney's office waited over a month, until July 27th, to do so. The briefing schedule was a deadline; it was a month long to accommodate one attorney. If privileged materials were truly at stake, The Cook County States Attorney could certainly have asserted their claim at any point after the plaintiff's motion was filed. Waiting over a month to do so hardly seems to be acting in a manner consistent with protecting any alleged confidences.

Second, and more importantly, the Cook County States Attorney's response brief does not meet the burden of establishing the privilege in this instance. The privilege covers pre-decisional communications that go into a final policy decision. *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 152–53 (1975). The opinions the States Attorney's response targets are, as the States Attorney concedes, Mr. Sexton's own mental impressions and do not reveal deliberative process communications leading up to any policy decisions of the States Attorney's Office. [Dkt. #346, at 7-8]. *See N. L. R. B.*, 421 U.S. at 151 (1975)(". . . it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decision making process are not disclosed."); *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 375 (7th Cir. 2004 ("Thus, in order to qualify for the privilege, a [communication] must be both predecisional in the sense that it is 'actually [a]ntecedent to the adoption of an agency policy," and deliberative in the sense that it is "actually ... related to the process by which policies are formulated.'") *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993)("The deliberative process extends to these pre-decisional communications—if communications such as these were exposed the candor of government staff would be tempered 'with a concern for appearances * * * to the detriment of the decision making process.'"). *See also In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998)("The central purpose of the privilege is to foster government decision making
(continued...)

that, the dream that was the July 1ˢᵗ deadline that Judge Kendall set died at the hands of multiple assailants. And, to be fair, I was one of them.

So, while I am granting the plaintiff's motion based on the issues the parties have raised, plaintiffs will have to go to Judge Kendall should they seek another extension. I shall grant no more requests for additional time, and Judge Kendall might not agree to any further continuances and she would have good reason not to. The unfortunate reality is that most deadlines in this case have proved meaningless and largely ignored by the lawyers, who have combined to miss some twenty deadlines, including *eleven* discovery deadlines, almost all of which were of their own choosing. [Dkt. #53, 65, 89, 102, 107, 112, 116, 128, 150, 160, 187, 242, 250, 259, 268, 281, 288, 296, 302, 329].⁶ This latest missed deadline will make it twelve. If the lawyers were high school students expected to turn papers in on time, they would have flunked out by sophomore year. What Judge Easterbrook said in *Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 638 (7th Cir. 2006) applies here: "If these lawyers were physicians, their patients would be dead." On top of all this, they also have yet another discovery dispute [Dkt. #336, *see also* ##118, 138, 180, 227, 246, 254, 271, 330] that threatens to trash whatever new schedule, if any, might be given.⁷

---

⁵(...continued)
by protecting it from the chill of potential disclosure. . . . If Congress creates a cause of action that deliberatively exposes government decision-making to the light, the privilege's raison d'être evaporates.").

⁶ The parties have even been unable to ask for their extensions on time. Back on March 8, 2021, I ordered that one of the parties' many motions for an extension of the discovery schedule "be filed within 3 days," or by March 11th. [Dkt. # 245]. Even that motion was, in fact, filed a day late on March 12, 2021. [Dkt.#249]. I allowed it, nevertheless.

⁷ To keep things consistent, the defendants, astonishingly, have already asked for an extension for responding to *that* most recent discovery motion. [Dkt. #343]. And *another* extension was granted. They offered no excuse that is recognizable under Fed.R.Civ.P. 16(b)(4)("A schedule may be modified only for good cause and with the judge's consent."), *see also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto.*
(continued...)

As such, and based on the history of this case and the results of allowing briefing on this matter, it would very much behoove the parties and their counsel to resolve this other squabble [Dkt. #336] before the court rules. If the parties negotiate in good faith, they can each get a little of what they want. If they fail to do so and require the court's intervention, they are essentially guaranteeing that one side will get absolutely nothing. Even a small sample size of their interactions shows their track record is not stellar. *Cf. Ezell v. City of Chicago*, No. 18 C 1049, 2020 WL 996518, at *1 (N.D. Ill. Mar. 2, 2020)("Intransigence is generally an inappropriate course to pursue in discovery. But that is unfortunately what has occurred here."); *Ezell v. City of Chicago*, No. 18 C 1049, 2021 WL 2136395, at *2 (N.D. Ill. May 26, 2021)("The[ parties] simply dug in at their original position and refused to consider any alternatives."); *Mims v. City of Chicago*, No. 18 C 7192, 2021 WL 5006649, at *2 (N.D. Ill. Oct. 28, 2021)(". . . the plaintiff's offer of "dep-for-deposition" was an excellent, time-saving and judicial resource-saving compromise. But, unfortunately, it was one the defendants rejected out-of-hand . . . ."); *Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 3709187, at *2 (N.D. Ill. Aug. 20, 2021)("Since early on then, the parties figuratively have engaged in trench warfare, refusing to budge more often than not, lobbing shells at one another in the form of discovery motions and associated filings which span over 2,250 pages of discovery dispute filings."); *Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 1998448, at *1 (N.D. Ill. May 19, 2021)("Both rationality and common sense tell us that, clearly, the difference between 10 and 15 – or, more accurately 10 and 12 or 13 on one side and 15 and 12 or 13 on the other – is not likely to be outcome-determinative.

---

[7](...continued)
*Ins. Co.*, 994 F.3d 869, 878 (7th Cir. 2021)( "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment."), other than to say they "now realize they need additional time to adequately respond to all of the arguments raised by Plaintiffs." [Dkt. #343, Par. 5]. Again, I granted their motion nevertheless.

Nor should it be. It certainly is not so significant as to merit – at least on the present record – six months of arguing or misutilization of scarce judicial resources."); *Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 1978364, at *2 (N.D. Ill. May 18, 2021)("It should be pointed out that plaintiff wasted an incredible amount of time getting to a reasonable position, but it didn't matter one way or the other because the City refused to participate further in discovery or negotiations until the court ruled on its motion to bifurcate.").

It is unfortunately apparent that Judge Gettleman's entreaty – "we can do better" – cited in an earlier Opinion in this case, [Dkt. #203 at 4], has had little impact here. But counsel should not ignore the Seventh Circuit's warning – this court certainly will not – "there [has been] enough discovery here to choke a horse...." *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/3/22