IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LaSHAWN EZELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1049 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On July 5, 2022, the plaintiffs filed a Motion to Compel the defendants to produce withheld documents and make their expert witness, John Black, available for a second deposition. The plaintiffs are little vague about just what it is they want but, in their motion, they claim they "are entitled to the materials and testimony concerning Mr. Black's latent print examination and conclusions" [Dkt. #336, at 3] and that "[t]hey are in particular entitled to discovery concerning the latent print examination Mr. Black conducted and to his review of Mr. Marvin's work and findings." [Dkt. #336, at 5]. For the following reasons, the plaintiffs' motion [Dkt. #336] is granted in part and denied in part.

This is the latest quarrel in this incessantly contentious discovery portion of this four-and-a-half-year-old case. It arises out of the parties' battle of latent fingerprint experts. The defendants disclosed Mr. Black as a "Certified Latent Print Examiner and an expert on fingerprints and other print-related forensic evidence" under Fed.R.Civ.P. 26(a)(2) on May 2, 2022, the latest possible day for doing so after multiple extensions. He conducted a latent print examination, and he produced a report that he titled "Crime Scene and Latent Print Examination Report." Remember that title.

Expert testimony often being what all too many think it is – *see e.g., Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 382 (7th Cir. 1986)("[E]xpert witnesses ... are often the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit. There is hardly anything, not palpably absurd on its face, that cannot now be proved by some so-called 'experts.' ") – the parties understandably identified their own experts. The plaintiffs had previously disclosed Certified Latent Print Examiner, Matthew Marvin.[1] In his report, he says he found 16 identifiable latent crime scene prints, with 7 of those belonging to the person plaintiffs consider the primary suspect in the 27-year-old murder case that gave rise to this now four-and-a-half-year-old wrongful conviction case. Mr. Marvin excluded the plaintiff as the source of any of the usable prints, but there were a number of prints he found unusable. In his report, Mr.

---

[1] The drafters of Rule 26(b)(4)(D) surely were not unaware of the long-standing concern about the partisanship of all too many "expert" witnesses and thus would not have intended the Rule's meaning to be based on their supposed impartiality. In his famous speech in 1921 to the Bar Association of the City of New York, "The Deficiencies of Trials to Reach the Heart of the Matter," Learned Hand said that the expert "inevitably or nearly, must take on the attitude of a partisan, for partisan they surely become." A year earlier, the Illinois Supreme Court lamented that expert testimony is "regarded as the most unsatisfactory part of judicial administration ... because the expert is often the hired partisan...." *Opp v. Pryor,* 294 Ill. 538, 128 N.E. 580, 583 (1920). This is a view shared by all too many judges and evidence scholars. *See e.g.* Jack Weinstein, *Improving Expert Testimony,* 20 U.Rich.L.Rev. 473, 482 (1986)("an expert can be found to testify to the truth to almost any factual theory, no matter how frivolous."); Michael H. Graham, *Expert Witness Testimony and the Federal Rules of Evidence: Insuring Assurance of Trustworthiness* (1986) Ill.L.Rev. 43, 45; 29 ("Today practicing lawyers can locate quickly and easily an expert witness to advocate nearly anything the lawyers desire."); 29 Wright and Gold, Federal Practice and Procedure, 6262 at 183 (1997); Huber, *Safety and the Second Best: The Hazards of Public Risk Management in the Courts,* 85 Colum.L.Rev. 277, 333 (1985) ("A Ph.D. can be found to swear to almost any expert proposition no matter how false or foolish."); Discovery of the Non–Testifying, "In House" Experts Under Federal Rules of Civil Procedure, supra, 58 Indiana L.J. at 606, 626 (" 'the question attorneys implicitly ask in evaluating the potential expert testimony of each party is, to paraphrase, whether my whore will be more persuasive than your whore.' "). *See also Minasian v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th Cir.1997); *Rosen v. Ciba–Geigy Corp.,* 78 F.3d 316, 319 (7th Cir.1996); *Tellabs Operations, Inc. v. Fujitsu Ltd.,* 283 F.R.D. 374, 385 -386 (N.D.Ill. 2012).

2

Black pointed out that there were a number of unusable prints that could be from "any number of people, including the Plaintiffs. In other words, given Mr. Black's opinion, the Plaintiffs cannot be excluded as potential sources of any recovered prints that are deemed not suitable for comparison." (Black's "Crime Scene and Latent Print Examination Report," at 4).

**I.**

The plaintiffs submit that by "[b]y focusing on unsuitable prints, Mr. Black's report and testimony is clearly designed to undermine Mr. Marvin's exclusion of the four Plaintiffs as the source of any of the prints recovered in the case." [Dkt. #336, at 2]. For plaintiffs, this converts Mr. Black into a rebuttal witness regarding Mr. Marvin's findings. And, so, the plaintiffs sought to question Mr. Black about any latent fingerprint examination he conducted that underlies his reported opinion, as well as his opinions regarding Mr. Marvin's report.

We have to part company with the plaintiffs at the outset regarding whether what Mr. Black said makes him a rebuttal witness, and whether plaintiffs are thus entitled to discovery into what he thought about Mr. Marvin's report and how he arrived at whatever opinions he might hold about it. No rebuttal witness is needed to state what is simply common sense. There were a certain number of prints that were unusable for comparisons or identifications. By definition, those prints could not be used – again, they were unusable – to rule out the plaintiffs as sources of all the recovered prints. This seems obvious. As Mr. Black indicated, as a result, it is within the realm of possibility that they could be the source of one of the unusable prints. That's just common sense, and neither judges nor juries are to abandon common sense in performing their tasks. *See, e.g., United States v. Montoya DeHernandez,* 473 U.S. 531, 542 (1985); *National Amusements Inc. v. Town of Dedham*, 43 F.3d 731, 743 (1st Cir. 1985). Thus, it does not undermine Mr. Marvin's opinions regarding the

3

usable prints, and it does not render Mr. Black a rebuttal witness to Mr. Marvin's findings or open up another phase of expert discovery for the plaintiffs. Fed.R.Evid. 702 advisory committee notes ( "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." (quoting Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952)).

If Mr. Black was clear about anything during his deposition, it was that in his role as testifying expert he was not asked to assess Mr. Marvin's work. Mr. Black testified that he was asked to provide opinions as to whether additional prints could have been recovered, what the presence or absence of any prints might signify, and to opine on the expert report of Mr. McCrary. (Black Deposition., at 45). When plaintiff asked Mr. Black if he was "asked as a testifying expert to comment on the opinions of Mr. Marvin," Mr. Black unequivocally replied "As a testifying expert? . . . No, ma'am." (Black Deposition., at 52:8-12). Mr. Black also testified that he had no basis to disagree with Mr. Marvin's identification of Davion Allen as one of the prints, or with any of the print exclusions Mr. Marvin made. (Black Deposition., at 125, 129-30). Finally, Mr. Black explained, time and again, that while he read Mr. Marvin's report, "[t]he review of Mr. Marvin's opinions were not the scope of [his] work." (Black Deposition., at 190:15-16; 191:21-24; 192:16-23). Time and again, plaintiffs' counsel either ignored the testimony or struggled with the dichotomy; but, clearly, counsel's questions about Mr. Black's thoughts and mental impressions of Mr. Marvin's work were out of bounds. So, plaintiffs are not entitled into any further discovery or a second deposition regarding what Mr. Black may or may not have thought about Mr. Marvin's

report. That part of plaintiffs' motion is denied. This case is no exception to the sound principle that "[a]ll good things, including discovery, must come to an end." *U.S. ex rel Taylor v. Hicks*, 513 F.3d 228, 238 (5th Cir. 2008).

## II.

More muddled is the parties' dispute regarding what exactly Mr. Black did for the defendants in terms of latent fingerprint examination. That's because as to this topic, the deposition can best be described as a mess – as all too many unfortunately are. *See, e.g., Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007)(Easterbrook, J.); *DF Activities Corp. v. Brown*, 851 F.2d 920, 923 (7th Cir. 1988)(Posner, J.)("The transcripts of depositions are often very ugly documents."); *Yost v. Carroll,* No. 20 C 5393, 2022 WL 3594643, at *5 (N.D. Ill. Aug. 23, 2022); *LM Ins. Corp. v. ACEO, Inc.,* 276 F.R.D. 592, 596 (N.D.Ill. 2011); *Specht v. Google, Inc.*, 268 F.R.D. 596, 599 (N.D. Ill. 2010). The problem here – to the extent it can be gleaned from the parties' briefs – is that defendants made the strategic decision to engage Mr. Black as both a consulting and testifying expert. As the defendants put it, they had Mr. Black "wear two hats" which necessarily would cause issues and necessarily would involve the court. The defendants are bound by that strategic decision and must bear its consequences. *Matter of Husain*, 866 F.3d 832, 835 (7th Cir. 2017)(Easterbrook, J.); *Silc v. Crossetti,* 2013 WL 3872196, 3 (N.D.Ill. 2013).

The defendants contend that Fed.R.Civ.P. 26(b)(4)(D) protects from discovery "any analysis and opinions about comparisons of the actual latent prints in this case that Black might have done as a consulting expert." Of course, as to work Mr. Black did as a testifying expert, plaintiffs are entitled "any facts or data," Fed.R.Civ.P. 26(a)(2)(B)(ii), "considered by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Sara Lee Corp. v. Kraft Foods*

5

*Inc.*, 273 F.R.D. 416, 419 (N.D. Ill. 2011)(citing Advisory Committee Notes).

The issue defendants' conscious strategy has created here is where to draw the line between Mr. Black's two roles. The defendants could have segregated their experts into non-testifying consultants and testifying experts, but they made a deliberate, conscious choice to combine both functions in the same witness. Thus blurring the otherwise clear analytical line and complicating the process. As courts continually and consistently hold, people are bound by the consequences of their choices. *Conway Family Trust v. CFPC*, 858 F.3d 463, 464 (7th Cir. 2017); *United States v. Mable*, 862 F.3d 624, 635 (7th Cir. 2017); *Walker v. Groot*, 867 F.3d 799 (7th Cir. 2017). The defendants are no exception. But the "strategy" that they chose was fraught with peril. People, including lawyers, are bound by the conscious decisions they make and lawyers and litigants are not an exception to this rule of life. *See also Advanced Ground Systems Engineering, Inc. v. RTW Industries, Inc.*, 388 F.3d 1036, 1043 (7th Cir. 2004); *Lynch, Inc. v. SamataMason, Inc.*, 279 F.3d 487, 490-92 (7th Cir. 2002).

The strategy consciously chosen puts any discussions the multi-tasked expert might have had with the attorneys at risk. It is likely to become a topic of satellite litigation, as it has here. Defendants' choice means that they have the burden of clearly differentiating where Mr. Black stopped consulting and began reporting/testifying – if they can – and that seems as though it would be an exceedingly difficult task. Any ambiguity in this area must be resolved against the defendants. *See, e.g., Sara Lee Corp.*, 273 F.R.D. at 20 ("In light of Rule 26(a)(2)(B)'s broad disclosure requirements, courts have concluded any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery."); *Morton Grove Pharms., Inc. v. Pharm. Res., Inc.*, No. 04 C 7007, 2005 WL 8179290, at *3 (N.D.

Ill. Dec. 21, 2005)("In general, any ambiguity as to the capacity in which the expert considered a particular document, or whether the expert even 'considered' a document in formulating his opinion at all, should be resolved in favor of disclosure."); *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, No. 20CV4416CSAEK, 2022 WL 1617711, at *3 (S.D.N.Y. May 23, 2022)("Additionally, any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." (quotations omitted)); *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, No. 18-63130-CIV, 2019 WL 6896299, at *4 (S.D. Fla. Dec. 18, 2019)("Disclosure is warranted when there is at least an ambiguity as to whether the materials informed the [testifying] expert's opinion."); *Yeda Rsch. & Dev. Co. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97, 113 (D.D.C. 2013)("...the scope of the privilege must be narrowly construed against the expert's proponent . . . and a court should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion, . . . ."). They have to do so to the court's satisfaction, and the court, of course, has broad discretion to unravel the mess as it sees fit. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *In re Stericycle §. Litig.*, 35 F.4th 555, 571 (7th Cir. 2022); *Fields v. City of Chicago*, 981 F.3d 534, 551 (7th Cir. 2020). They've fallen far short here.

  Seemingly aware that the case law leans against them, defendants make the head-shakingly fantastic assertion that "there is no vagueness or ambiguity surrounding Black's role as consulting versus testifying expert." [Dkt. #347, at 7]. At least it is head-shakingly fantastic when made to anyone who has undertaken the excruciating task of reading the choppy, disjointed, and confusing deposition transcript. The short answer is that the defendants are wrong; there is plenty of ambiguity regarding Mr. Black's role. The defendants' position to the contrary can be dismissed with a single

quote from Mr. Black when asked whether he reviewed fingerprints and which ones he reviewed:

> . . . at some point, I did. I just don't recall if it was in the consulting or testifying role.

(Black Deposition., at 124:1-7). If Mr. Black is unable to differentiate between his two roles, the court certainly cannot do it for him – nor should it. A lawyer's job is to make it easier for the court to rule in its favor. *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006)(Sykes, J.). The purposeful decision made by the defendant certainly has not done that.

Unfortunately, at least according to Mr. Black, it would appear that he never gave a thought to whether he was acting as a consultant or as a testifying expert:

> Q: What portion of [your fee] was on your consulting expert work as opposed to your testifying expert work?
>
> A: I've actually never thought about it that way. So I'm not exactly sure.
>
> Q: That's because you've never separated in your mind your work as consulting expert versus a testifying expert; is that fair?
>
> \* \* \*
>
> A: Well, my answer is, I typically don't make that distinction. I typically review evidence and then I give testimony, if need be, if it's required. But I don't typically separate the two.
>
> \* \* \*
>
> Q: Okay. All the work prior to the billing for the deposition, though, you did not separate or segregate your work efforts between consulting expert work and testifying expert work, correct?
>
> A: That's correct. That's not something I normally would do.

(Black Deposition., at 199:13-200:19). Again, if Mr. Black did not distinguish between consulting and testifying work, the court is not going to do it for the defendants.

Just claiming there is no ambiguity between the two roles and pointing to a couple of snippets of testimony where Mr. Black might have sounded a little surer of his roles is not sufficient. Overall, Mr. Black was all over the ballpark regarding what he did in what role. More than once,

8

he came across as either dissimulating or, more likely, being confused by his dual role and/or defense counsel's repeated objections and/or instructions. As he said, he did not separate his work into two piles. Any separation is an artificial construct forced upon him at the deposition by defense counsel. If the previous passage does not make the case for ambiguity between his two roles, then a few more examples will.

Oddly, early in his deposition, Mr. Black indicated he did not conduct any latent print examinations for his report despite its title. He said he reviewed deposition transcripts and reports and made an assessment based on that information which, he said, was not typical. (Black Deposition., at 47-48). When plaintiffs' counsel asked, "[s]o you did not conduct any latent print examinations for this case, correct?", defense counsel objected, arguing, incredibly, that there was nothing in Mr. Black's "Crime Scene and Latent Print Examination Report" about latent print examinations. As defense counsel put it: "latent print comparisons or examinations . . . [are] not the topic of his report at all, nothing in his report deals with comparisons and latent print examinations per se of the prints in this case . . . ." (Black Deposition., at 49). Leaving aside the impermissibility of counsel's behavior and comments, Mr. Black's report, it is well to recall, is called a "Crime Scene and *Latent Print Examination Report*." (emphasis added). Defense counsel went on to say that "whether he did or didn't, what he thought about them if he did, why he didn't if he did not. Those are all mental impressions, et cetera, in his role as consulting expert." Whether Mr. Black conducted a latent print examination for the case – that's what the question was – is not a "mental impression." Either he did or he didn't. And even a lawyer intent on obstruction knows the difference between a mental impression and conducting a finger print – or any other kind of – examination.

Not long after that exchange, Mr. Black testified that, in his capacity as a testifying expert, he *did not* conduct any latent print examinations. (Black Deposition., at 60:20-23). Mr. Black also said he *did not* review any TIF files in his capacity as testifying expert. (Black Deposition., at 61:14-18). But, as we later learned, Mr. Black was either confused by defense counsel's objections and instructions or was lying, as he testified that he *did* conduct latent print examinations in his role as testifying expert. (Black Deposition., at 121:3-123: 24). Defense counsel went on to say that "whether he did or didn't, what he thought about them if he did, why he didn't if he did not. Those are all mental impressions, et cetera, in his role as consulting expert." Whether Mr. Black conducted a latent print examination for the case is not a "mental impression." Either he did or he didn't. And anyone who suggests otherwise is, it must be concluded, would appear to be bent on obstruction.

Mr. Black had to eventually concede what anyone with any common sense would know: he most certainly did conduct latent print examinations in his role a testifying expert in order to prepare a report dealing with a "Crime Scene and Latent Print Examination." (Black Deposition., at 121-22, 123-24). Again, this would seem to be a matter of common sense but, at times, the counsel appeared to be operating in a realm of their own. Review of controversies like the present one does not require – indeed does not permit – that we abandon common sense. *Cf. United States v. Montoya de Hernanez*, 473 U.S. 531, 542 (1985); *Vargas-Harrison v. Racine Unified School District*, 272 F.3d 964, 971 (7th Cir. 2001)("Categorical judgments based on experience and common sense play an important in all areas of law.").

A while later, plaintiffs' counsel asked Mr. Black if he conducted a forensic examination of any fingerprint or other physical evidence in this case. Defense counsel objected and instructed

10

Mr. Black to answer only in his role as testifying expert and not in his role as consulting expert.[2] The objection was of no consequence, because Mr. Black conceded that "[a]s [he] answered earlier, with regards to [his] role a testifying expert, [he] did look at some fingerprint evidence" and that he "consider[ed] any examination of fingerprint evidence to be a forensic examination." (Black Deposition., at 170:9-12; 171:15-16). So, again, Mr. Black conceded he did do a latent print forensic examination for his Latent Print Examination Report.

Just after that, plaintiffs' counsel asked Mr. Black if he "utilize[d] any of the information [he] learned as a – during [his] work as a consulting expert to inform [his] opinions as a testifying expert?" (Black Deposition., at 172:4-7). Here, the deposition really went off the rails. Defense counsel instructed Mr. Black "to think carefully, about whether [he] can answer that question." (Black Deposition., at 172:8-10). If that wasn't a veiled "instruction" not to answer, it is difficult to imagine what is. In any event, a heated exchange predictably then erupted, with defense counsel claiming he was not making speaking objections – he clearly did – and that he was not instructing the witness– he clearly was. The fact that the message to the witness may have been somewhat oblique or veiled did not change the essential nature of what counsel was doing. We cannot blink reality. There was a lengthy, and predictable exchange between the lawyers about whether the answer to the question was privileged or not. (Black Deposition., at 172:11-176:13). But, eventually, after sitting through the lawyers' drama, the best Mr. Black could do was to say he "d[id] not believe" any of his work as a consultant informed any of his opinions as a testifying expert. (Black Deposition., at 176:16-177:1). Apart from the seeming impossibility that that was a truthful

---

[2] In other contexts, the impossibility of performing what, in effect, would a "prefrontal lobotomy on [one's]self" has been observed. *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1205 (7th Cir.1987). It would seem that that, in effect, was what Mr. Black was being asked to do.

and responsive answer, Mr. Black obviously did not know for sure and couldn't say for sure. Unfortunately, ambiguity and claimed uncertainty seem to be in vogue at this deposition.

Moreover, materials reviewed or generated by an expert must be disclosed, "regardless of whether the expert[ ] actually rel[ies] on the material as a basis for [his or her] opinions." *In re Complaint. Money Ctr., Inc., Equip. Lease Litig.*, 248 F.R.D. 532, 537 (N.D. Ohio 2008); *§ v. Reyes*, No. C 06-04435 CRB, 2007 WL 963422 *1 (N.D.Cal. March 30, 2007). Not only does that seem eminently fair, but it best accords with the undeviating principle that trial by ambush will no longer be tolerated. *See, e.g.,* the discussion in *Saltzman v. Fullerton Metals Co.*, 761 F.2d 647, 651, n. 4 (7th Cir. 1981); *Physicians Health Source, Inc. v. Allscripts Health Sols. Inc.*, 2017 WL 2406143, *12 (N.D.Ill. 2017); *Jackson v. N'Genuity*, 2011 WL 1134302 at *1 (N.D.Ill. 2011). Experts are deemed to have considered materials even when they have testified, under oath, that they did not consider the materials in forming their opinions. *See, e.g., Complaint. Money Ctr.*, 248 F.R.D. at 537; *Euclid Chem. Co.*, 2007 WL 1560277 at *3; *Monsanto*, 214 F.R.D. at 547; *Western Resources, Inc.*, 2002 WL 181494 at *9. Only "materials generated or considered *uniquely* in the expert's role as consultant" are beyond discovery. *Sara Lee Corp.*, 273 F.R.D. at 419-420; *Traverse v. Gutierrez Co.*, No. CV 18-10175-DJC, 2020 WL 9602037, at *5 (D. Mass. Apr. 10, 2020). There is nothing in Mr. Black's testimony or defendants' response brief that shows, without any ambiguity, where such a line might be drawn.

The actual or feigned confusion continued as Mr. Black testified that he looked at six latent prints to determine whether there was one unsuitable impression. He also said he looked at other fingerprints, but not in the context of his report. (Black Deposition., at 172:4-7). When plaintiffs' counsel asked Mr. Black to confirm that the "sum total" of print examination he did with respect to

any opinions he rendered was the six latent prints, Mr. Black said "[y]es, sir." But defense counsel said that was a misstatement of his testimony. (Black Deposition., at 179:4-15). It's unclear how, but in defense counsel's defense, the testimony was at times so muddled it would be hard to say what Mr. Black was testifying to regarding delineation of his two roles – which, it bears repeating – were purposely chosen to reside in one person.

Similarly, there was no clear time frame when Mr. Black donned one hat or doffed another. For example, as far as the print suitability assessments he made for his role as testifying expert, he said:

> Some of those assessments would have been made early on after the initial retainer, to my recollection. And I believe I looked at those again during the preparation of the report, which would have been much more recently.

(Black Deposition., at 236:23-237:19). As far as Mr. Black could recall, he made some initial assessments during the first part of his engagement by defense counsel. (Black Deposition., at 237:8-14). Defense counsel made yet another objection during this line of testimony, purportedly because it dealt with his work as a consultant. But, again, Mr. Black testified that he made some of the initial assessments that went into his expert witness report at the initial stages of his retainer. So, one can easily see how difficult – if not impossible – it was for Mr. Black to separate one role from the other. *See Yeda Rsch. & Dev. Co. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97, 115 (D.D.C. 2013)("Even a . . . highly educated [expert] cannot be expected to draw a mental line in the sand between information gleaned" as a consultant and as a testifying expert).

Mr. Black clearly did not separate intimately related work into neat and tidy categories which he labeled consulting work and testifying work. In all likelihood he could not have done so. What Justice Cardozo said in another context applies perfectly here: "Discrimination so subtle is a feat

13

beyond the compass of ordinary minds.*" Shepard v. United States*, 290 U.S. 96, 104 (1933). *See* n. 2. *Cf. Fleming Sales Co. v. Bailey*, 611 F. Supp. 507, 514 (N.D. Ill. 1985)(Shadur, J.)(compartmentalization of information learned "would force a [person] to perform a prefrontal lobotomy on himself or herself."). Accordingly, the plaintiffs are entitled to discovery regarding Mr. Black's latent print examination, within the bounds of Fed.R.Civ.P. 26(b)(4)(C). That part of plaintiffs' motion is granted.

## CONCLUSION

The plaintiffs' Motion to Compel [Dtk. 336] is granted in part and denied in part as explained in the Opinion above.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/29/22