# EXHIBIT 53

Deposition of Michael Malone

Chicago Police Department Fingerprint Examiner

Taken November 9, 2021



# Transcript of Michael Malone

**Date:** November 9, 2021
**Case:** Ezell, et al. -v- City of Chicago, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

Transcript of Michael Malone
Conducted on November 9, 2021

**Page 1**

```
 1        IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                EASTERN DIVISION
   LASHAWN EZELL,              )
 3                            )
          Plaintiff,          ) Case No. 18 CV 01049
 4                            )
          vs.                 )
 5                            )
   CITY OF CHICAGO, et al.,   )
 6                            )
          Defendants.         )
 7   _____  )
   LAROD STYLES,              ) Case No. 18 CV 01053
 8                            )
          Plaintiff,          ) Consolidated with
 9                            ) Ezell v City
          vs.                 )
10                            ) 18 CV 1049
   CITY OF CHICAGO, et al.    )
11                            )
          Defendants,         )
12   _____  )
   CHARLES JOHNSON,           ) Case No. 18 CV 01062
13                            )
          Plaintiff,          ) Consolidated with
14                            ) Ezell v City
          vs.                 )
15                            ) 18 CV 1049
   CITY OF CHICAGO, et al.    )
16                            )
          Defendants,         )
17   _____  )
   TROSHAWN McCOY,            ) Case No. 18 CV 01068
18                            )
          Plaintiff,          ) Consolidated with
19                            ) Ezell v City
          vs.                 )
20                            ) 18 CV 1049
   CITY OF CHICAGO, et al.    )
21                            )
          Defendants.         )
22
23
24
```

**Page 2**

```
 1        DEPOSITION OF MICHAEL MALONE

 2            Conducted virtually

 3         Tuesday, November 9, 2021

 4              10:00 a.m. CST

 5

 6   (Proceedings ended at 2:18 p.m. CST )

 7   Reporter:  Angela C. Loisi, CSR, RPR, FCRR
     License No.:  084-004571
 8   APPEARING REMOTELY FROM COOK COUNTY, ILLINOIS
     JOB NO. 406491
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

**Page 3**

```
 1   REMOTE APPEARANCES:

 2      LOEVY & LOEVY

 3         BY:  MS. KATIE ROCHE

 4      311 North Aberdeen Street, 3rd Floor

 5      Chicago, Illinois 60607

 6      (312) 243-5900

 7      Katie@loevy.com

 8         Representing Lashawn Ezell &

 9         Charles Johnson;

10

11      THE SOTOS LAW FIRM, P.C.

12         BY:  MS. CARSON W. CANONIE

13      141 West Jackson Boulevard, Suite 1240 A

14      Chicago, Illinois 60604

15      (630) 735-3300

16      Ccanonie@sotoslaw.com

17         Representing the City of Chicago;

18

19

20

21

22

23

24
```

**Page 4**

```
 1   REMOTE APPEARANCES CONTINUED:

 2      RODERICK & SOLANGE MacARTHUR JUSTICE CENTER

 3         BY:  MS. NOOR TARABISHY

 4             MS. CZARINA MORGAN

 5             MS. ALEXA VAN BRUNT

 6      160 East Grand Avenue, 6th Floor

 7      Chicago, Illinois 60611

 8      (312) 503-1271

 9      Noor.tarabishy@macarthurjustice.org

10         Representing Charles Johnson;

11

12      ERICKSON & OPPENHEIMER, LTD.

13         BY:  MR. JON NEULEIB

14      223 West Jackson Boulevard, Suite 200

15      Chicago, Illinois 60606

16      (312) 327-3370

17      Jon@colawus.com

18         Representing Troshawn McCoy;

19

20

21

22

23

24
```

Transcript of Michael Malone
Conducted on November 9, 2021

---

5

```
1   REMOTE APPEARANCES CONTINUED:
2       COTSIRILOS, TIGHE, STREICKER, POULOS &
3       CAMPBELL, LTD.
4           BY:  MR. MICHAEL MAIONE
5       33 North Dearborn Street, Suite 600
6       Chicago, Illinois 60602
7       (312) 263-0345
8       Mmaione@cotsiriloslaw.com
9           Representing Larod Styles;
10
11  ROCK FUSCO & CONNELLY, LLC
12      BY:  MS. KATIE BARBER
13      321 North Clark Street
14      Chicago, Illinois 60654
15      (312) 494-1000
16      Cbarber@rfclaw.com
17          Representing Individual Defendant
18          Officers;
19
20
21
22
23
24
```

---

7

```
1                   I N D E X
2
3   WITNESS:  MICHAEL MALONE              PAGE
4   Examination by Ms. Tarabishy          10
5   Examination by Ms. Canonie           186
6
7               E X H I B I T S
8
9   MICHAEL MALONE                       PAGE
10  Exhibit No. 336                      148
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

---

6

```
1   REMOTE APPEARANCES CONTINUED:
2       HINSHAW & CULBERTSON, LLP
3           BY:  MS. ESTHER CHOI
4       151 North Franklin Street, Suite 2500
5       Chicago, Illinois 60606
6       (312) 704-3000
7       Echoi@hinshawlaw.com
8           Representing Alesia.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

---

8

```
1       THE VIDEOGRAPHER:  Here begins Disc
2   Number 1 in the videotaped deposition of
3   Michael Malone in the matter of Ezell, et al.,
4   v. City of Chicago, et al., in the United
5   States District Court for the Northern
6   District of Illinois Eastern Division.
7       Case Number 18 CV 01049 consolidated
8   with 18 CV 01053, and 18 CV 01062, and
9   18 CV 01068.
10      Today's date is November 9, 2021.  The
11  time on the video monitor is 10:08.  The
12  videographer today is Jodie Dineen,
13  representing Planet Depos.  This video
14  deposition is taking place remotely.
15      Would counsel please identify
16  themselves and state whom they represent?
17      MS. TARABISHY:  Noor Tarabishy for
18  Plaintiff Charles Johnson.
19      MS. VAN BRUNT:  Alexa Van Brunt also
20  for Charles Johnson.
21      MS. ROCHE:  Katie Roche on behalf of
22  Plaintiff Lashawn Ezell and Charles Johnson.
23      MR. NEULEIB:  Jon Neuleib on behalf of
24  Plaintiff Troshawn McCoy.
```

Transcript of Michael Malone
Conducted on November 9, 2021

---

9

1      (Indiscernible simultaneous
2         colloquy.)
3      MR. MAIONE:  Michael Maione on behalf
4  of Plaintiff Larod Styles.
5      MS. CANONIE:  Carson Canonie on behalf
6  of Defendant City of Chicago.
7      MS. KATIE BARBER:  Katie Barber for
8  the defendant officers.
9      MS. CHOI:  Esther Choi for defendant
10 Alesia.
11     THE COURT REPORTER:  And could you --
12     THE VIDEOGRAPHER:  The court --
13     THE COURT REPORTER:  -- raise your
14 right hand.
15     THE VIDEOGRAPHER:  The court reporter
16 today is Angela Loisi representing Planet
17 Depos.  Will the reporter please swear in the
18 witness?
19        (Witness sworn.)
20 WHEREUPON:
21        MICHAEL MALONE,
22 called as a witness herein, having been
23 first duly sworn, was examined and testified
24 as follows:

---

10

1          EXAMINATION
2  BY MS. TARABISHY:
3      Q.  Good morning, Mr. Malone.  My name is
4  Noor Tarabishy.  I'm one of the plaintiffs
5  for -- I'm one of the attorneys for Plaintiff
6  Charles Johnson in this case.
7          Would you please state your name for
8  the record?
9      A.  Michael Malone.
10     Q.  Before we get started, I'd like to go
11 over some ground rules with you.  You are
12 under oath today, just as if you were
13 testifying in court, but without the judge and
14 jury.  Do you understand that?
15     A.  Yes.
16     Q.  We are conducting the deposition
17 remotely today.  Do you understand that you
18 must still testify truthfully as if we were in
19 the same room?
20     A.  Yes.
21     Q.  We have a court reporter recording
22 this deposition, so you must answer questions
23 clearly and unambiguously as opposed to
24 nodding your head, nodding or shaking your

---

11

1  head.  Do you understand that?
2      A.  Yes.
3      Q.  Make sure you understand each question
4  before you answer.  If you don't understand a
5  question I ask, please let me know and I'll
6  rephrase.  If you answer, I will assume that
7  you understood my question, okay?
8      A.  Yes, mm-hmm.
9      Q.  And let me know if you're having
10 technical difficulties or having trouble
11 hearing me, okay?
12     A.  Okay.
13     Q.  Your attorney or other attorneys might
14 make objections.  But as you can see, there's
15 no judge to rule on these objections.  So
16 after pausing to let the objection get stated
17 for the record, you can go ahead and answer
18 the question, okay?
19     A.  Okay.
20     Q.  Let me know if you need a break at any
21 time, but we just can't take a break with a
22 question pending.
23     A.  Okay.
24     Q.  Are you under a doctor's care for any

---

12

1  illness that would affect your ability to
2  testify?
3      A.  No.
4      Q.  Are you taking any medications that
5  would affect your ability to testify?
6      A.  No.
7      Q.  Is there any reason whatsoever that
8  you cannot give full and accurate testimony
9  today?
10     A.  No.
11     Q.  Have you ever given a deposition
12 before?
13     A.  Yes.
14     Q.  How many times?
15     A.  Once.
16     Q.  And when was that?
17     A.  Approximately 1994 or '95.  I'm not
18 exactly sure.  I can't recall exactly when.
19     Q.  What was your involvement in that
20 case?
21     A.  My wife at that time was -- was
22 employed by the Chicago Park District, and I
23 don't recall the -- the specifics of
24 why -- you know, what the case exactly

---

Transcript of Michael Malone
Conducted on November 9, 2021

4 (13 to 16)

13

1 involved, but...
2    Q. Were you a party to that lawsuit?
3    **A. No.**
4    Q. And you're being represented by an
5 attorney today in this deposition; correct?
6    **A. Yes.**
7    Q. Who is that attorney?
8    **A. Carson Canonie.**
9       MS. CANONIE: Good job.
10 BY MS. TARABISHY:
11    Q. What, if anything, did you do to
12 prepare for this deposition?
13    **A. I spoke with Ms. Canonie.**
14    Q. How many times?
15    **A. Twice.**
16    Q. How long was each meeting or call?
17    **A. Approximately two hours or so.**
18    Q. For each?
19    **A. Yes.**
20    Q. Who else was present?
21    **A. At the first one there were -- there**
22 **was another person present, but I don't recall**
23 **who.**
24       MS. CANONIE: I can -- it was Dan

14

1 McGinnis [phonetic] from our office.
2 BY MS. TARABISHY:
3    Q. And at the other?
4    **A. Just me and Ms. Canonie.**
5    Q. Did you review any documents to
6 prepare?
7    **A. Yes, yes.**
8    Q. What were those documents?
9    **A. Those were exhibits of photos of**
10 **latent impressions.**
11    Q. Did you author or sign any of those
12 documents that you reviewed?
13    **A. I had markings on -- on some of them,**
14 **yes.**
15    Q. Did you review any photographs?
16    **A. Yes.**
17    Q. Do you remember what those were?
18    **A. Photos of -- of latent impressions.**
19    Q. Any court documents or transcripts?
20    **A. No.**
21    Q. How well do you remember this case
22 before you met with your attorney or reviewed
23 the documents?
24       MS. CANONIE: Objection; form.

15

1 BY MS. TARABISHY:
2    Q. The case that brings us here today on
3 the matter of Charles Johnson, how well did
4 you remember your involvement in Charles
5 Johnson's postconviction fingerprint
6 re-examination before you met with Ms. Canonie
7 or reviewed the documents?
8       MS. CANONIE: Objection; form,
9 foundation.
10       You can answer.
11       THE WITNESS: I didn't remember much
12 about it at all, other than I worked on the
13 case.
14 BY MS. TARABISHY:
15    Q. And did your reviewing the documents
16 help refresh your recollection as to the work
17 that you did on the case?
18    **A. Yes.**
19    Q. What did you remember about the case
20 before?
21       I know you said it's not much, but
22 what was your recollection about the case?
23       MS. CANONIE: Objection; form.
24       THE WITNESS: Just that I worked on

16

1 that particular case.
2 BY MS. TARABISHY:
3    Q. Did you discuss this lawsuit with
4 anyone other than your attorneys?
5    **A. No.**
6    Q. Are you currently employed?
7    **A. Yes.**
8    Q. Where?
9    **A. City of Chicago Police Department.**
10    Q. And what is your job title?
11    **A. Fingerprint technician.**
12    Q. The same position that you held in
13 2009?
14    **A. No.**
15    Q. So what are your current job duties?
16    **A. Basically to compare the prints**
17 **of -- from subjects who are booked in the**
18 **various Chicago police district lockups, and**
19 **compare their prints through the -- in the**
20 **AFIS system as to -- as to prints that the**
21 **AFIS system generates to compare those prints**
22 **as to whether that subject has or has not been**
23 **arrested based on his fingerprints.**
24    Q. And how does that differ from the

**17**

1  position that you held in 2009?
2       What was your position in 2009?
3       MS. CANONIE: Objection; form.
4       You can answer.
5       THE WITNESS: I was a latent print
6  examiner at that time, and I compared
7  fingerprints, latent prints
8  for -- from -- as -- which was evidence from
9  crime scenes to prints of the fingerprint
10 cards of suspects and/or submitted the
11 fingerprints to AFIS, and compared the AFIS
12 candidate list to the unknown fingerprints.
13      THE COURT REPORTER: I'm sorry. Are
14 you saying "AFIS"?
15      THE WITNESS: I'm sorry?
16      THE COURT REPORTER: Are you saying
17 AFIS, fingerprints to AFIS?
18      THE WITNESS: AFIS, yes.
19 BY MS. TARABISHY:
20   Q.  AFIS, A-I- -- A-F-I-S --
21   **A.  Yes.**
22   Q.  -- correct?
23   **A.  Yes.**
24   Q.  And in your current position, you are

**18**

1  not comparing prints recovered from a crime
2  scene to known standards or entering them
3  through AFIS. Did I understand that
4  correctly?
5       MS. CANONIE: Objection; form.
6  BY MS. TARABISHY:
7    Q.  You can go ahead and answer.
8    **A.  Yes, that's correct. Yes.**
9    Q.  What year -- you previous -- you're
10 still working for the Chicago Police
11 Department; correct?
12   **A.  Yes.**
13   Q.  What year did you join?
14   **A.  Well, I originally, as a latent print**
15 **examiner, I retired from that job in 2019.**
16 **And then I was just recently reemployed in**
17 **September of this year. So...**
18   Q.  What year did you originally join the
19 Chicago Police Department the first time you
20 were employed by the City of Chicago?
21   **A.  Yes, 1991.**
22   Q.  Can you walk us through the different
23 positions that you held at the Chicago Police
24 Department and the relative -- roughly the

**19**

1  dates for each position?
2    **A.  Upon employment I -- I entered the**
3  **police academy, and in May of 1991, and then**
4  **in approximate -- about October of 1991, I was**
5  **assigned to the 4th District for field**
6  **training, was a field training officer. And I**
7  **was in the 4th District in patrol until**
8  **approximately sometime in 1992 where I was**
9  **transferred to the 22nd District, and I**
10 **remained in the 22nd District in patrol and**
11 **the gang tactical unit until 2002 when I**
12 **joined the -- the latent print unit, and I**
13 **remained there until I retired in -- yes,**
14 **2019, January.**
15   Q.  Why did you retire in 2019 from the
16 latent print unit?
17      MS. CANONIE: Objection; form.
18      THE WITNESS: Oh, yeah, I was just
19 ready to retire.
20 BY MS. TARABISHY:
21   Q.  Why did you come back in September
22 of 2021?
23   **A.  Oh, I just happened to hear about the**
24 **availability of the job, which -- which is,**

**20**

1  **you know, somewhat similar to the job that I**
2  **had before involving comparison of**
3  **fingerprints. So I thought I'd be comfortable**
4  **doing it and just applied for it.**
5    Q.  Did you receive any training prior to
6  becoming a latent print examiner?
7    **A.  Yes.**
8    Q.  What was that training?
9       MS. CANONIE: Objection; form.
10      You can answer.
11      THE WITNESS: I was trying to -- at
12 the Chicago police academy by a retired
13 fingerprint expert, or retired latent print
14 examiner who was considered a fingerprint
15 expert. And the pattern recognition,
16 fingerprint pattern-type recognition in the
17 analysis, and -- analysis of fingerprint,
18 comparison of fingerprints, and the valuation
19 of -- of fingerprints.
20 BY MS. TARABISHY:
21   Q.  Who was the fingerprint expert that
22 you trained with?
23   **A.  Beatrice Patterson was one of them,**
24 **and also, a John Lesniak.**

Transcript of Michael Malone
Conducted on November 9, 2021

21

1    Q.  How long was that training?
2    **A.  Approximately three months.**
3    Q.  And after the training concluded, did
4  you then resume your position as a latent
5  print examiner?
6       MS. CANONIE:  Objection; form.
7       THE WITNESS:  Yes.
8  BY MS. TARABISHY:
9    Q.  Was there a period of time when you
10 were working under supervision of a -- an
11 experienced examiner and apprenticeship of
12 type?
13   **A.  Yes.**
14   Q.  How long was that period?
15   **A.  Approximately one year.**
16   Q.  Did you have to take a test in order
17 to become a latent print examiner?
18   **A.  Yes.**
19   Q.  Did you take that prior to starting
20 the training or after you finished the
21 training?
22   **A.  No, prior to starting the training.**
23   Q.  Can you describe that test?
24   **A.  Yeah.  They gave us a small study**

22

1  **guide, and the test consisted of some history**
2  **of fingerprints, some pattern type**
3  **recognition, and some portion of -- of Henry**
4  **Classification System.**
5       THE COURT REPORTER:  I'm sorry.  What
6  was it, Henry classification?
7       THE WITNESS:  Yeah.  The use of the
8  Henry Classification System.  That's about it
9  that I recall.
10 BY MS. TARABISHY:
11   Q.  And did you have to take a periodic
12 proficiency test throughout your employment as
13 a latent print examiner?
14      MS. CANONIE:  Objection; form,
15 foundation.
16      THE WITNESS:  Could you repeat that
17 one again?
18 BY MS. TARABISHY:
19   Q.  Yes.
20   Did you have to take any periodic
21 examinations when you were a latent print
22 examiner?
23      MS. CANONIE:  Objection; foundation.
24      THE WITNESS:  We took some proficiency

23

1  tests, yes.
2  BY MS. TARABISHY:
3    Q.  Was that a requirement in order to
4  continue to hold your position as a latent
5  print examiner?
6       MS. CANONIE:  Objection; form.
7  BY MS. TARABISHY:
8    Q.  Were these required --
9    **A.  Not to my knowledge.**
10   Q.  Yes?
11   **A.  Yes, yes, yes.**
12   Q.  What did these proficiency tests look
13 like?
14   **A.  They were comparisons of latent prints**
15 **to known prints.**
16   Q.  Did you receive any training in the
17 development of fingerprints?
18      MS. CANONIE:  Objection; form.
19      THE WITNESS:  No.
20 BY MS. TARABISHY:
21   Q.  Are you familiar with different
22 fingerprint development methods?
23      MS. CANONIE:  Objection; form.
24      THE WITNESS:  Somewhat, yes.

24

1  BY MS. TARABISHY:
2    Q.  Do you have any knowledge about which
3  method is appropriate for certain surfaces?
4       MS. CANONIE:  Objection; form.
5       THE WITNESS:  That, I don't recall.
6  BY MS. TARABISHY:
7    Q.  Have you received any type of
8  certification as a latent print examiner?
9    **A.  Yes.**
10   Q.  What is that certification called?
11   **A.  I was a certified latent print**
12 **examiner, certified by the --**
13   Q.  Go ahead.  I'm sorry.
14   **A.  Certified by the International**
15 **Association For Identification.**
16   Q.  When did you receive the
17 certification?
18   **A.  The first time, I can't recall**
19 **exactly, but I believe it was 2013 maybe or**
20 **2012, but I'm not -- you know, I'm not sure**
21 **exactly.**
22   Q.  Do you still hold that certification?
23   **A.  Yes.**
24   Q.  Did you have to take a test to get the

25

1  certification?
2      A.  Yes.
3      Q.  Was it -- was this a one-time test or
4  something you needed to retake to maintain the
5  certification?
6      A.  You take it the first time, and then
7  to recertify you have to take it again after,
8  I believe four or five years.
9      Q.  And what did that test look like?
10     A.  The original test consisted of
11 questions about the history behind
12 fingerprinting, the use of the Henry
13 Classification System, pattern type
14 recognition, and definitions of terms of -- in
15 the latent field, latent print field, and
16 comparisons of latent prints to known prints.
17     Q.  You mentioned the Henry Classification
18 System.  What is that?
19     A.  That is a form of classifying
20 fingerprints to put them in an organized card
21 filing system.
22     Q.  What was -- you said your job title in
23 2009 was a latent print examiner; correct?
24     A.  Yes.

26

1      Q.  What were your responsibilities in
2  that role?
3      A.  To analyze prints, unknown prints from
4  crime scenes, evaluate their -- their
5  usefulness for comparisons or entry into the
6  AFIS system, and to compare prints, unknown
7  prints against the prints of known subjects,
8  either suspects or elimination prints, and to
9  enter prints into the AFIS system to generate
10 a candidate list to find possible matches.
11     Q.  How many cases did you work on per
12 year?
13     A.  Oh, I can't say exactly.  I can't
14 recall.  Give you an approximate number...
15     Q.  Approximate number would be good.
16     A.  It -- well, it would have been
17 hundreds, but I would say in the area of
18 approximately 200 or -- approximately.
19     Q.  And each one of these cases could
20 entail multiple fingerprint examinations;
21 correct?
22         MS. CANONIE:  Objection; form, calls
23 for speculation.
24         THE WITNESS:  Yes.

27

1  BY MS. TARABISHY:
2      Q.  So in a given year, fair to say that
3  you would have conducted around 1,000 or more
4  fingerprint examinations?
5          MS. CANONIE:  Objection; form, calls
6  for speculation.
7          THE WITNESS:  Yes, that's possible.
8  Yes.
9  BY MS. TARABISHY:
10     Q.  Who was your supervisor in 2009?
11     A.  Carey Simon.
12     Q.  What was his job title?
13     A.  Latent print -- latent print unit
14 supervisor.
15     Q.  Was it Mr. Simon who would give you a
16 case assignment in 2009?
17     A.  Yes.  Generally, yes.
18     Q.  Have you ever received any awards or
19 recognition for your work as a latent print
20 examiner at the Chicago Police Department?
21     A.  Yes.
22     Q.  What were these?
23     A.  There were several, but I can't recall
24 any in -- in particular.

28

1      Q.  Do you know how many?
2      A.  I would say maybe around -- between
3  five and ten at least, approximately.
4      Q.  What was the reason you got any of
5  these awards or recognitions?
6          MS. CANONIE:  Objection; form.
7          THE WITNESS:  Usually the -- for
8  identifying a suspect who was usually
9  prosecuted and found guilty in that particular
10 case.
11 BY MS. TARABISHY:
12     Q.  Who presented an award or recognition
13 to you?
14         MS. CANONIE:  Objection; form,
15 foundation.
16         THE WITNESS:  Usually they were given
17 to me by the supervising sergeant.
18 BY MS. TARABISHY:
19     Q.  In 2009, was it part of your
20 responsibility to work on postconviction cases
21 as well as active cases?
22         MS. CANONIE:  Objection; form,
23 foundation.
24         THE WITNESS:  Yes, if I was assigned

Transcript of Michael Malone
Conducted on November 9, 2021

29

1  such a case.
2  BY MS. TARABISHY:
3      Q.  Throughout your work at the latent
4  print unit, how many postconviction cases did
5  you work on?
6          MS. CANONIE:  Object to form; calls
7  for speculation.
8          THE WITNESS:  I -- well, I don't
9  recall.
10 BY MS. TARABISHY:
11     Q.  Was it more than five?
12         MS. CANONIE:  Objection.  Same
13 objection.
14         THE WITNESS:  I don't -- I don't think
15 so.  I don't think it would have been, but I
16 don't recall.
17 BY MS. TARABISHY:
18     Q.  Do you recall that the Charles Johnson
19 case was a postconviction case, you were
20 reexamining prints that were generally
21 examined at that time of the criminal trial;
22 correct?
23         MS. CANONIE:  Objection; foundation.
24         THE WITNESS:  Could you repeat that

30

1  one again?  I'm sorry.
2  BY MS. TARABISHY:
3      Q.  You recall that the work you did for
4  this case, the Charles Johnson matter, was a
5  postconviction case; right?
6          MS. CANONIE:  Objection; form,
7  foundation.
8          THE WITNESS:  At that time I -- I
9  don't know whether I was aware of that or not.
10 I don't believe that I was, but I don't recall
11 exactly.
12 BY MS. TARABISHY:
13     Q.  Did you work on -- but you are aware
14 of that today; right?
15     A.  Yes, mm-hmm.
16     Q.  Did you work on any other
17 postconviction cases, other than the Charles
18 Johnson matter?
19         MS. CANONIE:  Objection; asked and
20 answered.
21         THE WITNESS:  I don't recall.
22 BY MS. TARABISHY:
23     Q.  So it is possible that you have worked
24 on other postconviction cases other than this

31

1  one?
2          MS. CANONIE:  Objection; calls for
3  speculation.
4          THE WITNESS:  It's possible, yes.
5  BY MS. TARABISHY:
6      Q.  Have you testified in court in a role
7  as a latent print examiner?
8      A.  Yes.
9      Q.  How many times over the course of your
10 career?
11     A.  I believe about 15 approximately, at
12 least.
13     Q.  And have you qualified as an expert to
14 testify in court in the field of latent print
15 examination?
16         MS. CANONIE:  Objection; form,
17 foundation.
18         THE WITNESS:  Yes.
19 BY MS. TARABISHY:
20     Q.  Have you ever failed to qualify as an
21 expert in the field of latent print
22 examination at any time when you were called
23 to testify in court?
24         MS. CANONIE:  Objection; form.

32

1          THE WITNESS:  No, no.
2  BY MS. TARABISHY:
3      Q.  Before we get into the details of the
4  latent print examination that you did in this
5  case, I'd like to go over some of the terms
6  used within the latent print unit to make sure
7  we're on the same page.  Okay?
8          MS. CANONIE:  Noor, he would -- can we
9  have a quick break?  He wants to grab some --
10 or I can just pour him some water.
11         MS. TARABISHY:  You would like to take
12 a break?
13         MS. CANONIE:  After he answers this
14 question, he needs some water, and I need to
15 get it for him.
16         MS. TARABISHY:  Yeah, of course.
17         THE WITNESS:  Okay.  I'm sorry.  Can
18 you repeat that, then?  I'm sorry.
19 BY MS. TARABISHY:
20     Q.  I was just saying that before I ask
21 you in detail about the work you did in this
22 case, we're going to go over some terminology
23 to make sure we're on the same page, okay?
24     A.  Okay.

Transcript of Michael Malone
Conducted on November 9, 2021

33

1      MS. TARABISHY:  We'll take a short
2  five-minute break.
3      THE VIDEOGRAPHER:  Going off the
4  record at 10:36.
5          (Whereupon, a recess was
6          had.)
7      THE VIDEOGRAPHER:  We are back on the
8  record at 10:37.
9  BY MS. TARABISHY:
10   Q.  What is a latent print?
11   **A.  A latent print is -- is a --**
12  **impression of the friction ridge skin on**
13  **the -- on the sides of the finger, of the**
14  **palms that is found on the surface and**
15  **recovered -- left on the surface by chance and**
16  **recovered by the process of either dusting or**
17  **photography or the chemicals and preserved as**
18  **evidence.**
19   Q.  You said it would be left on the
20  surface by chance.  So a latent print is not
21  left every time someone touches a surface; is
22  that right?
23      MS. CANONIE:  Objection;
24  mischaracterizes the prior testimony, also,

34

1  form.
2      THE WITNESS:  Yes, correct.
3  BY MS. TARABISHY:
4   Q.  What are the factors that impact
5  whether a latent print impression is going to
6  be left after somebody touches a surface?
7      MS. CANONIE:  Objection; form,
8  foundation.
9      THE WITNESS:  Factors such as
10  substance on the fingers, whether the fingers
11  are dry or not, or -- or how heavy the
12  pressure is that they may touch a surface
13  with.
14  BY MS. TARABISHY:
15   Q.  So how would each of these factors
16  that you mentioned affect whether a print -- a
17  latent print would be left on the surface?
18      MS. CANONIE:  Objection; form --
19  objection; form, foundation.  Sorry, Noor.
20      MS. TARABISHY:  No problem.
21      THE WITNESS:  It can affect whether
22  the -- just whether as to not the print
23  would -- would be able to be lifted or
24  photographed clearly or the impression itself

35

1  would be left clear enough to be usable
2  evidence.
3  BY MS. TARABISHY:
4   Q.  How long can a latent print remain on
5  the surface?
6      MS. CANONIE:  Objection; form,
7  foundation, calls for speculation.
8      THE WITNESS:  I -- I can't say that
9  or -- or I don't know.
10  BY MS. TARABISHY:
11   Q.  In your experience, what factors would
12  impact the length of time that a print may
13  remain on a surface?
14      MS. CANONIE:  Objection; form,
15  foundation, calls for speculation.
16      THE WITNESS:  Yeah, I don't -- I don't
17  recall all that -- that information.
18  BY MS. TARABISHY:
19   Q.  What is an "impression"?
20      MS. CANONIE:  Objection; form.
21      THE WITNESS:  An impression, I don't
22  quite understand that.
23  BY MS. TARABISHY:
24   Q.  Have you used the term "latent print

36

1  impression" in your work as a latent print
2  examiner?
3      MS. CANONIE:  Objection; form,
4  foundation.
5      THE WITNESS:  When you -- "impression"
6  as in relation to a fingerprint is impression
7  of the finger- -- of the fingerprint or
8  friction ridge skin itself.
9      THE COURT REPORTER:  "Friction ridge
10  skin"?
11      Did you say "friction ridge skin"?
12      THE WITNESS:  Yes, yes, yes, I did.
13  Uh-huh.
14  BY MS. TARABISHY:
15   Q.  Can you explain what that means?
16      MS. CANONIE:  Objection; form.
17  BY MS. TARABISHY:
18   Q.  Or the difference between a "latent
19  print" and an "impression"?
20      MS. CANONIE:  Objection; form.
21      THE WITNESS:  Oh, no, there's
22  no -- there's -- difference, I don't
23  understand that question.
24

Transcript of Michael Malone
Conducted on November 9, 2021

10 (37 to 40)

37

1  BY MS. TARABISHY:
2    Q.  What is an "impression"?  I'm not sure
3  I understood you the first time you answered.
4  If you could, explain that further, please.
5       MS. CANONIE:  Objection; form; asked
6  and answered.  Please answer.
7       THE WITNESS:  Oh, well, when you say
8  "an impression," an impression of what?
9  BY MS. TARABISHY:
10   Q.  An impression of a print or is that
11 not a term you use at all, I guess.
12   **A.  Not this term "impression" by itself,**
13 **not a --**
14   Q.  What is a "lift"?
15      MS. CANONIE:  Objection; form.
16      THE WITNESS:  A "lift" is usually a
17 piece of adhesive that is laid over an
18 impression after it is usually dusted
19 and -- to capture the print and lift it and
20 seal it.
21 BY MS. TARABISHY:
22   Q.  So you just said that is laid over an
23 impression; correct?
24   **A.  Yes.**

38

1       MS. CANONIE:  Objection;
2  mischaracterizes the testimony.
3  BY MS. TARABISHY:
4    Q.  So the impression would be what you
5  visually see after you process the surface for
6  prints; is that correct?
7       MS. CANONIE:  Objection; form.
8          (Indiscernible simultaneous
9             colloquy.)
10 BY MS. TARABISHY:
11   Q.  Would you call that an impression?
12      MS. CANONIE:  Objection; form,
13 foundation, mischaracterizes prior testimony.
14      THE WITNESS:  Repeat that again,
15 please.
16      MS. TARABISHY:  Could the court
17 reporter read back the question?  I forgot
18 what it was.
19      THE COURT REPORTER:  Sure.  Please
20 stand by.
21         (The requested testimony
22            was read back.)
23      THE WITNESS:  Well, I don't -- I
24 didn't process surfaces for prints.

39

1  BY MS. TARABISHY:
2    Q.  Yeah.  I don't mean you personally,
3  I'm sorry.  I mean after the fingerprint
4  technician is processing the surface for
5  prints, what you see on that surface in the
6  shape of ridges you would call that an
7  impression?
8       MS. CANONIE:  Objection; form,
9  foundation.
10      THE WITNESS:  Yes.
11 BY MS. TARABISHY:
12   Q.  And what is a "negative"?
13      MS. CANONIE:  Objection; form.
14      THE WITNESS:  A negative -- negative
15 as far -- in relationship to what?
16 BY MS. TARABISHY:
17   Q.  To a medium that you're examining
18 from -- your fingerprints from as an examiner,
19 not a negative result.
20   **A.  A negative photograph, which could be**
21 **submitted with impressions on it.**
22   Q.  And what is a "tracing"?
23      MS. CANONIE:  Objection; form.
24      THE WITNESS:  A tracing is a -- that's

40

1  tracing of an enlarged finger -- impression,
2  fingerprint impression, that photograph
3  enlarged, and then a piece of tracing paper is
4  laid over it, and the -- the path of the
5  ridges would be traced, and then the tracing
6  itself could -- would be a tracing of the
7  impression, could be entered into the AFIS
8  system.
9  BY MS. TARABISHY:
10   Q.  What is the "AFIS system"?
11   **A.  AFIS is the automated fingerprint**
12 **identification system.**
13   Q.  What does that mean?
14      MS. CANONIE:  Objection; form.
15 BY MS. TARABISHY:
16   Q.  Do you use that system?
17   **A.  The AFIS system searches fingerprints**
18 **and compares them against a database of**
19 **fingerprints, and generates end-of-day lists**
20 **of subjects that could be compared against the**
21 **original unknown print that was searched.**
22   Q.  To your knowledge, what year did AFIS
23 first became [sic] available to the Chicago
24 Police Department?

Transcript of Michael Malone
Conducted on November 9, 2021

41

1  MS. CANONIE: Objection; calls for
2  speculation.
3  THE WITNESS: I don't know. I don't
4  recall exactly when.
5  BY MS. TARABISHY:
6  Q. Was it available throughout your
7  tenure at the latent print unit?
8  MS. CANONIE: Objection; form.
9  THE WITNESS: Yes.
10  BY MS. TARABISHY:
11  Q. For the questions that I'm going to
12  ask you now, I'm not asking about a specific
13  case, just your general practice as a latent
14  print examiner in the latent print unit.
15  Okay?
16  **A. Okay.**
17  Q. How did you usually get a case
18  assignment?
19  MS. CANONIE: Object to form,
20  foundation.
21  THE WITNESS: Usually -- usually you
22  would -- after you finished one case, you
23  would -- if you're going to the case file roll
24  then take the next -- take the next case in

42

1  chronological order by report number.
2  BY MS. TARABISHY:
3  Q. Were there instances where a
4  supervisor assigned a case to you as opposed
5  to you picking up the next available case in
6  chronological order?
7  MS. CANONIE: Objection; form,
8  foundation.
9  THE WITNESS: Yes.
10  BY MS. TARABISHY:
11  Q. What would the reason for that be?
12  MS. CANONIE: Objection; form,
13  foundation, calls for speculation.
14  THE WITNESS: There could be various
15  reasons. There could be various reasons.
16  BY MS. TARABISHY:
17  Q. Like what?
18  MS. CANONIE: Objection; form.
19  THE WITNESS: Such as -- such as a
20  request from a State's attorney, or a request
21  because the detective may have had someone in
22  custody.
23  BY MS. TARABISHY:
24  Q. So those requests would not go in the

43

1  normal case files where you were picking up
2  your next assignment usually?
3  MS. CANONIE: Object to form.
4  THE WITNESS: They could or they -- or
5  they -- or the supervisor could assign them.
6  BY MS. TARABISHY:
7  Q. What is typically included in the case
8  file, what material --
9  MS. CANONIE: Objection; form.
10  BY MS. TARABISHY:
11  Q. -- is available to you?
12  MS. CANONIE: Objection; form,
13  foundation.
14  THE WITNESS: What was the last part
15  of that?
16  BY MS. TARABISHY:
17  Q. What material is available to you in
18  the case file?
19  MS. CANONIE: Object to form.
20  Objection; form.
21  THE WITNESS: The latent print
22  evidence is usually in the envelope inside the
23  file, and the -- usually the crime scene
24  processing report is included.

44

1  BY MS. TARABISHY:
2  Q. So if you receive a case file with a
3  suspect's fingerprints and prints recovered
4  from the crime scene, how would you begin
5  working on that case?
6  What would your first step be?
7  MS. CANONIE: Objection; form,
8  foundation, calls for speculation.
9  THE WITNESS: To analyze the -- the
10  latent print evidence as to its suitability.
11  BY MS. TARABISHY:
12  Q. Suitability for what?
13  MS. CANONIE: Objection; form.
14  THE WITNESS: For comparison.
15  BY MS. TARABISHY:
16  Q. What does it mean for a print to be
17  suitable for comparison?
18  MS. CANONIE: Objection; form.
19  THE WITNESS: That -- that would
20  include the analysis or the -- their clarity,
21  and you observe any impressions on -- on the
22  lifts, for instance, and are they clear and
23  usable.
24

Transcript of Michael Malone
Conducted on November 9, 2021

45

1  BY MS. TARABISHY:
2     Q.  If you determined that the prints are
3  suitable for comparison, what is your next
4  step?
5        MS. CANONIE:  Objection; form,
6  foundation, incomplete hypothetical.
7        THE WITNESS:  To either compare them
8  to any -- if there are any elimination prints
9  to be compare to -- to compare them against,
10 or if there are any known suspects to be -- to
11 compare them against.  Or either -- or either
12 enter them into the AFIS system as a search of
13 an unknown print to try -- to try to identify
14 the prints.
15 BY MS. TARABISHY:
16    Q.  You used the term "elimination print."
17 What does that mean?
18        MS. CANONIE:  Objection;
19 mischaracterizes the testimony.
20 BY MS. TARABISHY:
21    Q.  Can you explain --
22    A.  Elimination --
23    Q.  I'm so sorry, Mr. Malone.
24        MS. TARABISHY:  Can you explain the

46

1  basis for your objection, Carson?
2        MS. CANONIE:  Yeah.  No.  That
3  objection -- I apologize.  I withdraw the
4  objection.
5  BY MS. TARABISHY:
6     Q.  Go ahead, Mr. Malone.
7     A.  Elimination prints, usually prints of
8  the victim themselves or of the persons
9  that -- that may have been known to -- to be
10 at the location of the particular crime scene
11 and whose fingerprints might be on any -- any
12 particular, specific objects that may have
13 been -- that the prints were lifted from.
14    Q.  So you would compare the latent prints
15 from the crime scene to those elimination
16 prints; correct?
17        MS. CANONIE:  Objection; form.
18        THE WITNESS:  Yes.
19 BY MS. TARABISHY:
20    Q.  And you would also compare them to any
21 suspect prints that you were provided?
22        MS. CANONIE:  Objection; form.
23        THE WITNESS:  Yes.
24

47

1  BY MS. TARABISHY:
2     Q.  And if after the comparison to the
3  suspect prints, you still could not make an
4  identification, you would then move to the
5  AFIS steps; is that correct?
6        MS. CANONIE:  Objection; form.
7        THE WITNESS:  Yes.  If they were AFIS
8  suitable.
9  BY MS. TARABISHY:
10    Q.  What does it mean for the prints to be
11 AFIS suitable?
12    A.  Well, a lot of times in latent prints
13 you have partial, small, partial impressions.
14 And if you didn't have enough of an impression
15 that you deemed was -- was worthy or worth
16 entering into AFIS, say, for instance, a
17 fingerprint that didn't have a -- couldn't
18 tell what pattern type it was because it was
19 only a small, partial impression --
20 impression, you may -- it -- it would be at
21 your discretion or your experience as to
22 whether you would enter such an impression
23 into AFIS.
24    Q.  So such a print could still be usable

48

1  for comparison, but not for entry into AFIS?
2        MS. CANONIE:  Objection; form.
3        THE WITNESS:  Yes.
4  BY MS. TARABISHY:
5     Q.  Have you used the term "suitable for
6  identification" in your work as a latent print
7  examiner?
8     A.  Yes.
9     Q.  Is that the same as "suitable for
10 comparison"?
11    A.  Yes.  Usually, yes.
12    Q.  The process that you described where
13 you begin by comparing the latent print
14 evidence to the elimination prints and suspect
15 prints, was that the standard practice for
16 latent print examiners during your time at the
17 latent print unit?
18        MS. CANONIE:  Objection; form.
19        THE WITNESS:  Yes.
20 BY MS. TARABISHY:
21    Q.  And to your knowledge, this was also
22 standard practice of the latent print unit in
23 1995 when this case originated?
24        MS. CANONIE:  Objection; form,

Transcript of Michael Malone

13 (49 to 52)

Conducted on November 9, 2021

---

49

1 foundation, calls for speculation.
2        THE WITNESS:  No, I don't -- I
3 couldn't say.  I don't know.
4 BY MS. TARABISHY:
5    Q.  This remains the practice of the
6 latent print unit today?
7        MS. CANONIE:  Objection; form,
8 foundation, calls for speculation.
9        THE WITNESS:  I don't know.
10 BY MS. TARABISHY:
11    Q.  If the print isn't suitable for AFIS,
12 what would your next step be?
13        MS. CANONIE:  Objection; form,
14 incomplete hypothetical.
15        THE WITNESS:  At that point it would
16 need to be unidentified, and a -- usually a
17 report would be generated at that point as to,
18 you know, no identification.
19 BY MS. TARABISHY:
20    Q.  Who would you submit that report to?
21        MS. CANONIE:  Objection; form,
22 foundation.
23        THE WITNESS:  My supervisor.
24

---

50

1 BY MS. TARABISHY:
2    Q.  What is the reason for submission to
3 your supervisor?
4    **A.  Approval of the report.**
5    Q.  And after your supervisor approves the
6 report, does he give it back to you or do you
7 know where it goes to next?
8        MS. CANONIE:  Objection; form.
9        THE WITNESS:  It goes in -- the paper
10 copy goes in the case jacket.
11 BY MS. TARABISHY:
12    Q.  And what is the "case jacket"?
13    **A.  Sending the case file, it's just a big**
14 **envelope with the evidence and any related**
15 **reports inside the envelope.**
16    Q.  If you make an identification, was it
17 the latent print unit's policy that you would
18 have another latent print examiner look at the
19 prints that you examined?
20        MS. CANONIE:  Objection; form,
21 foundation, incomplete hypothetical.
22        THE WITNESS:  Yes.
23 BY MS. TARABISHY:
24    Q.  Can you -- would that be called

---

51

1 corroborating your work?
2        MS. CANONIE:  Objection; form.
3        THE WITNESS:  Yes.
4 BY MS. TARABISHY:
5    Q.  Can you explain the process for
6 corroboration?
7    **A.  Yes.  If you make an identification,**
8    **another qualified latent examiner would --**
9    **would analyze and compare the prints, and come**
10 **to his conclusion as to whether he's -- he**
11 **agrees with the findings of the original**
12 **examiner.**
13    Q.  And the corroboration policy was only
14 for identifications; is that right?
15        MS. CANONIE:  Objection; form,
16 foundation, mischaracterizes the testimony.
17        THE WITNESS:  Yes.
18 BY MS. TARABISHY:
19    Q.  So if you were not able to make an
20 identification, no other examiner would look
21 at the evidence to see if they reach a
22 different conclusion; is that right?
23        MS. CANONIE:  Objection; form,
24 foundation, calls for speculation.

---

52

1        THE WITNESS:  Yes.
2 BY MS. TARABISHY:
3    Q.  If the second examiner does not concur
4 with your findings, what is the next step?
5    **A.  It would either -- the -- we would**
6    **notify the supervisor, and he -- and he would**
7    **make a determination as to the next step.**
8    Q.  So would the supervisor examine the
9 evidence himself or herself to determine who
10 is correct?
11        MS. CANONIE:  Objection; form,
12 foundation, calls for speculation, incomplete
13 hypothetical.
14        THE WITNESS:  Well, I couldn't say
15 because it's never happened with me.
16 BY MS. TARABISHY:
17    Q.  So for every identification that you
18 submitted your- -- for corroboration, the
19 second examiner concurred with your findings?
20        MS. CANONIE:  Objection; form.
21        THE WITNESS:  Yes.  That I recall,
22 yes.
23 BY MS. TARABISHY:
24    Q.  After that happens -- after the second

---

53

1  examiner looks at the evidence, would you
2  write a report summarizing the identification?
3      **A. Yes.**
4      Q. And you would submit the report to
5  your supervisor?
6      MS. CANONIE: Objection; form,
7  foundation.
8      THE WITNESS: Yes.
9  BY MS. TARABISHY:
10     Q. Would you make any notations on the
11 latent print lift itself to indicate that you
12 made an identification?
13     MS. CANONIE: Objection; form,
14 foundation.
15     THE WITNESS: Yes.
16 BY MS. TARABISHY:
17     Q. And would the second examiner also
18 make a notation on the evidence itself?
19     MS. CANONIE: Objection; form,
20 foundation.
21     THE WITNESS: Yes.
22 BY MS. TARABISHY:
23     Q. You would typically initial and date?
24     MS. CANONIE: Objection; form.

54

1      THE WITNESS: That would be a part of
2  it, yes.
3  BY MS. TARABISHY:
4      Q. Would you also date and initial the
5  known standard that you compared the latent
6  print evidence to?
7      MS. CANONIE: Objection; form,
8  foundation.
9      THE WITNESS: No.
10 BY MS. TARABISHY:
11     Q. After an examination is concluded in
12 2009, how would the detective -- would the
13 detectives working the case be notified, to
14 your knowledge?
15     MS. CANONIE: Objection. Objection;
16 form, calls for speculation.
17     THE WITNESS: That question -- would
18 you repeat that question again?
19 BY MS. TARABISHY:
20     Q. Sure.
21     After you conclude working on -- on a
22 case, do you have any knowledge about what is
23 the notification process for the detectives or
24 the prosecutors working the case?

55

1      MS. CANONIE: Objection; form.
2      THE WITNESS: Yes, yes, the detectives
3  division would be notified through the report
4  system, and State's attorneys would be
5  notified through phone calls.
6  BY MS. TARABISHY:
7      Q. Would the detectives receive copies of
8  the reports generated by latent print
9  examiners?
10     MS. CANONIE: Objection; form, calls
11 for speculation.
12     THE WITNESS: Yes. They would be able
13 to pull up the reports themselves in the
14 system, the computer system.
15 BY MS. TARABISHY:
16     Q. Would they be notified if there was an
17 identification?
18     MS. CANONIE: Object to form and
19 foundation. Can we just have -- you may have
20 already clarified this, but can you -- we just
21 get some clarification on the time period
22 you're talking about?
23     MS. TARABISHY: Yes, sorry.
24

56

1  BY MS. TARABISHY:
2      Q. I'm asking you 2009. If you make an
3  identification, would the detectives be
4  notified of that identification?
5      MS. CANONIE: Objection; form,
6  foundation.
7          (Indiscernible simultaneous
8           colloquy.)
9      THE COURT REPORTER: I'm sorry. I
10 didn't get you, Katie.
11     MS. BARBER: I'm just objecting that
12 the question is vague.
13 BY MS. TARABISHY:
14     Q. You said yes, Mr. Malone?
15     **A. Yes. They would be notified, yes.**
16     Q. Would they be notified if after you
17 concluded your examination you were not able
18 to make an identification?
19     MS. CANONIE: Objection; form,
20 incomplete -- calls for speculation,
21 incomplete hypothetical.
22     THE WITNESS: Yes, they would -- they
23 would be notified through the report, yeah, of
24 whether it was ident or an unident. Either

Transcript of Michael Malone
15 (57 to 60)
Conducted on November 9, 2021

57

1 way, yes.
2 BY MS. TARABISHY:
3    Q. I'm going to ask you now about the
4 work you did in the case that brings us here
5 today, the State of Illinois versus Charles
6 Johnson, okay?
7    **A. Okay.**
8    Q. Do you remember receiving an
9 assignment from your supervisor to conduct a
10 fingerprint examination in this case in 2009?
11       MS. CANONIE: Objection; form,
12 foundation.
13       THE WITNESS: Yeah. I remember being
14 assigned to work on the case.
15 BY MS. TARABISHY:
16    Q. Who assigned you to work on the case?
17    **A. Carey Simon.**
18    Q. Before you received this case
19 assignment, did you know anything about the
20 underlying crime?
21       MS. CANONIE: Objection; form.
22       THE WITNESS: No.
23 BY MS. TARABISHY:
24    Q. About any of the individuals that were

58

1 charged with it?
2       MS. CANONIE: Objection; form.
3       THE WITNESS: No.
4 BY MS. TARABISHY:
5    Q. Had you read anything about the case
6 in the news?
7    **A. No.**
8    Q. Do you recall that -- a case involved
9 a double homicide at a car dealership in
10 Chicago in 1995?
11       MS. CANONIE: Objection; form,
12 foundation.
13       THE WITNESS: Yes.
14 BY MS. TARABISHY:
15    Q. When -- when your supervisor Carey
16 Simon assigned you to work on this fingerprint
17 examination, did he tell you why he was giving
18 you the assignment?
19       MS. CANONIE: Objection; form.
20       THE WITNESS: No, other than I was
21 available to work on it.
22 BY MS. TARABISHY:
23    Q. Did he assign any other examiner to
24 work on the case with you?

59

1       MS. CANONIE: Objection; form.
2       THE WITNESS: No, he didn't at that
3 time, no.
4 BY MS. TARABISHY:
5    Q. Did he assign another supervisor at a
6 later -- sorry. Another examiner at a later
7 time?
8       MS. CANONIE: Objection; form,
9 foundation.
10       THE WITNESS: No, not that
11 I -- I'm -- I recall.
12 BY MS. TARABISHY:
13    Q. What did Mr. Simon tell you about the
14 case when he assigned it to you?
15       MS. CANONIE: Objection; form.
16 BY MS. TARABISHY:
17    Q. I'm sorry?
18       THE WITNESS: I don't recall.
19       MS. TARABISHY: Ms. Canonie, can you
20 explain the basis for that objection.
21       MS. CANONIE: Vague.
22       MS. TARABISHY: What did Mr. Simon
23 tell him about this case?
24       MS. CANONIE: Yes. He's testified

60

1 that he doesn't recall. He just recalls that
2 he was assigned.
3 BY MS. TARABISHY:
4    Q. Go ahead, Mr. Malone.
5    **A. I don't recall.**
6    Q. What materials did you receive when
7 you received this case assignment?
8    **A. Court order along with the case**
9 **jacket.**
10    Q. That's it, the court order and case
11 jacket?
12    **A. That I recall.**
13    Q. Do you remember how many case jackets
14 there were?
15    **A. No.**
16    Q. What was inside the case jacket?
17       MS. CANONIE: Objection; form,
18 foundation.
19       THE WITNESS: Generally in the -- it
20 would have been the case -- any related crime
21 scene processing report and the actual either
22 lifts -- and the lift.
23 BY MS. TARABISHY:
24    Q. Were there any known standards in that

Transcript of Michael Malone
Conducted on November 9, 2021

61

1  case jacket than print cards?
2  **A. Not that I recall.**
3      Q. And what about that court order, do
4  you remember its contents?
5      MS. CANONIE: Object to form.
6      THE WITNESS: Not -- not in detail,
7  no.
8      MS. TARABISHY: Would the tech please
9  pull up exhibit titled, "January 2009 court
10 order"?
11     THE TECHNICIAN: One moment, please.
12     MS. CANONIE: Noor, I've -- since it's
13 printed, I'm going to hand it to him so he can
14 see better.
15     MS. TARABISHY: Yeah, of course.
16 That's fine.
17     For the record, this is a three-page
18 PDF document consecutively Bates stamped City
19 20535 through 20537. It was previously marked
20 at the deposition of Carey Simon as
21 Exhibit 212.
22 BY MS. TARABISHY:
23     Q. Do you recognize this document,
24 Mr. Malone?

62

1  **A. Yes.**
2      Q. What is it?
3  **A. The court order to perform the request**
4  **that -- assignment or -- or to follow the**
5  **orders set forth in this court order.**
6      Q. Do you remember what -- the process
7  that was set in that court order for the
8  re-examination of the fingerprints?
9      MS. CANONIE: Object; form,
10 foundation.
11     THE WITNESS: Only to -- as I -- as I
12 read it.
13 BY MS. TARABISHY:
14     Q. I'll give you a couple minutes to read
15 through that order, the three pages.
16 **A. Okay.**
17     **Okay.**
18     Q. Are you finished reviewing the court
19 order?
20 **A. Yes, yes, mm-hmm.**
21     Q. Does reading this court order refresh
22 your recollection as to the number of latent
23 lift prints in this case?
24 **A. Yes.**

63

1      Q. There was a total of 14 prints in the
2  custody of the State's attorney's office; is
3  that correct?
4      Looking at paragraph number 1, page 1.
5  **A. Yes, mm-hmm.**
6      Q. There was -- those were eight prints
7  from trial Exhibit 28; yes?
8  **A. Exhibit 28, yes, mm-hmm.**
9      Q. And six prints from trial Exhibit 60?
10 **A. Yes.**
11     Q. Looking at the second page,
12 paragraph 5.
13     MS. TARABISHY: If the tech could
14 also -- thank you.
15 BY MS. TARABISHY:
16     Q. There were also nine prints from
17 stickers in the possession of the latent print
18 unit; correct?
19     MS. CANONIE: Objection; form,
20 foundation, document speaks for itself.
21     THE WITNESS: Yes.
22 BY MS. TARABISHY:
23     Q. Those were under inventory number
24 1584551?

64

1      MS. CANONIE: Objection; form,
2  document speaks for itself.
3      THE WITNESS: Well, I don't know if
4  this is a typo, but it reads the inventory
5  number for the set of prints -- print pictures
6  is IR number, what -- I mean, it's an IR
7  number. I believe it must be a typo, yeah.
8  BY MS. TARABISHY:
9      Q. Why are you saying it's a typo?
10 **A. Oh, well, you -- inventory wouldn't**
11 **be -- have an IR number in the -- the letters**
12 **IR and then the number. It simply would**
13 **have -- if it was an inventory number, we**
14 **usually have "ID" and "in" abbreviated and**
15 **then the number symbol, but...**
16     Q. Do you know what an IR number might
17 be?
18     MS. CANONIE: Objection; form.
19     THE WITNESS: Yes, IR number is an
20 arrest -- arrest record of an individual.
21 BY MS. TARABISHY:
22     Q. What was the role of the latent print
23 unit under this court order?
24     MS. CANONIE: Objection; form,

65

1  document speaks for itself.
2       THE WITNESS: To perform these duties
3  listed in the court order.
4  BY MS. TARABISHY:
5    Q. And what were those duties?
6       MS. CANONIE: Objection; form, the
7  document speaks for itself.
8       THE WITNESS: As listed in the
9  different paragraphs to scan the prints, then
10 to send them to Ken Moses, and once we receive
11 them back -- we receive the tracings back from
12 Ken Moses who searched them in AFIS and then
13 to send the candidate list to Mr. Moses, yes.
14 BY MS. TARABISHY:
15   Q. Were you responsible for scanning the
16 prints specified in the court order to prep
17 them to be sent to Mr. Ken Moses?
18      MS. CANONIE: Objection; form.
19      THE WITNESS: I don't recall, but I
20 don't think I was the one that scanned them
21 in. I don't recall.
22 BY MS. TARABISHY:
23   Q. You don't recall that you were the one
24 who made the scans ordered in this court

66

1  order?
2    A. I don't recall if I was the one that
3  scanned them.
4    Q. So it is possible that it was you, it
5  is possible that it was someone else; right?
6    A. Yeah, it's possible. I don't recall.
7       MS. BARBER: Noor, whenever you get --
8  it doesn't have to be right now, but whenever
9  you get to a reasonable time for a breaking
10 point, if we could have a short bathroom
11 break, that'd be great.
12      MS. TARABISHY: Yeah, of course. It
13 actually would be a good time. I'm about to
14 open into a new section. So how long would
15 you want a break to be, like ten, 15 minutes?
16      MS. BARBER: Five minutes would be
17 great.
18      MS. TARABISHY: Okay. We'll take a
19 ten-minute break, then.
20      THE VIDEOGRAPHER: We are going off
21 the record at 11:17.
22         (Whereupon, a recess was
23            had.)
24      THE VIDEOGRAPHER: We are back on the

67

1  record at 11:28.
2  BY MS. TARABISHY:
3    Q. Before we took a break, Mr. Malone, we
4  were talking about that court order for the
5  re-examination of fingerprints, and how the
6  latent print unit sends scans to
7  Mr. Ken Moses. Do you remember that?
8    A. Yes, mm-hmm.
9    Q. And that court order specified that
10 Mr. Moses was going to make tracings of those
11 fingerprints; correct?
12      MS. CANONIE: Objection; form,
13 document speaks for itself.
14      THE WITNESS: Yes.
15 BY MS. TARABISHY:
16   Q. And after he would trace the prints,
17 he would send them back to the latent print
18 unit; correct?
19   A. Yes.
20   Q. Did the latent print unit at some
21 point receive those tracings from Mr. Moses?
22   A. Yes.
23   Q. Do you remember how many tracings you
24 received?

68

1    A. I'd have to look at the --
2    Q. Would the --
3    A. -- document.
4    Q. Okay.
5       MS. TARABISHY: Pull up
6  exhibit titled, "June 2009 report."
7       THE TECHNICIAN: One moment.
8       MS. CANONIE: Noor, which date is this
9  one?
10      MS. TARABISHY: I'm sorry. I didn't
11 hear you. That's the correct document, the
12 one that's on the screen, if you can see it.
13      MS. CANONIE: Okay. Thanks.
14      MS. TARABISHY: This is a two-page PDF
15 Bates stamped City 20581, 20582 previously
16 marked at the deposition of Gary Simon as
17 Exhibit 214. Do you recognize this document?
18      THE WITNESS: Yes.
19 BY MS. TARABISHY:
20   Q. And what is it?
21   A. This is a report of the tracings that
22 were received from Kenneth Moses.
23      MS. TARABISHY: Would the tech please
24 go to the second page?

Transcript of Michael Malone
Conducted on November 9, 2021

69

1 BY MS. TARABISHY:
2    Q.  Do you see your signature anywhere in
3 this document?
4    A.  Yes.
5    Q.  And it is in the lower right corner of
6 the second page where it says, "examined by a
7 latent print examiner, Michael Malone"?
8    A.  Yes.
9    Q.  Do you know a latent print examiner by
10 the name of Joseph Calvo?
11   A.  Yes.
12   Q.  Are you familiar with his signature?
13   A.  Yes.
14   Q.  And do you see it anywhere in this
15 document?
16   A.  Yes.
17   Q.  And it's under your signature, also on
18 the lower right corner of the report?
19   A.  Yes.
20   Q.  I'll also give you a couple of minutes
21 to look over this two-page report, and let me
22 know when you're done, okay?
23   A.  Okay.
24      Okay.

70

1    Q.  Can you go back to the first page,
2 please?
3    A.  Yeah.
4    Q.  Does reading this report refresh your
5 recollection as to the number of tracings that
6 the latent print unit received from
7 Mr. Ken Moses?
8    A.  Yes.
9    Q.  You received 13 tracings; correct?
10   A.  Yes.
11   Q.  And those tracings were numbered 1A,
12 1B, 2A, 5A, 7A, 8A, 8C, 11-2, 12-2, 13A, 14A,
13 14B and 15B; correct?
14   A.  Yes.
15   Q.  And the corresponding lifts and
16 negatives were numbered in the same way?
17      MS. CANONIE:  Objection; form.
18 BY MS. TARABISHY:
19   Q.  What I mean is tracing 1A would
20 correspond to a latent lift or negative 1A and
21 so on?
22   A.  Oh, yes.
23   Q.  The tracings indicated the pattern
24 type for access and orientation; correct?

71

1    A.  Yes.
2    Q.  Can you explain what each of
3 terms -- these terms mean, starting with the
4 "pattern type"?
5    A.  Yes.  The "pattern type" being as to
6 whether the pattern type was an arch, a loop
7 or a whorl.  The CORE and access, which means
8 for -- meaning the approximate center of the
9 impression of the print, and its orientation
10 would indicate what -- usually by an arrow
11 which direction would be facing up.
12   Q.  What is the importance of indicating
13 this information about each latent print, the
14 pattern type, or access and orientation?
15      MS. CANONIE:  Objection; form.
16 BY MS. TARABISHY:
17   Q.  You can answer.
18   A.  These are parameters that you would
19 indicate you -- when you search the
20 print -- upon searching the print in the AFIS
21 system.
22   Q.  You would enter those parameters when
23 you were conducting the AFIS search?
24   A.  Yes.

72

1    Q.  After you received the tracings from
2 Mr. Moses, the next step was to enter those
3 into AFIS; correct?
4      MS. CANONIE:  Objection; form.
5      THE WITNESS:  Yes.
6 BY MS. TARABISHY:
7    Q.  Did you submit the tracings to be
8 searched in AFIS?
9    A.  Yes.
10   Q.  Can you walk us through the process of
11 submitting tracing into AFIS?
12   A.  Yes.  The tracings were captured at
13 the AFIS terminal by placing the tracing on
14 the screen, and you would capture it with
15 the -- with a photo, a camera that was
16 attached to the -- to the machine, and it
17 would capture an image of the tracing.  And
18 that image would be -- would go into the AFIS
19 system, along with the -- entering the
20 parameters of the pattern type CORE and access
21 and orientation, and it would be for -- for a
22 search in the AFIS database.
23   Q.  And if you had a palm print, not a
24 fingerprint, would you be able to enter that

Transcript of Michael Malone
Conducted on November 9, 2021

73

1 into AFIS?
2      MS. CANONIE: Objection; foundation,
3 form.
4      THE WITNESS: Yes.
5 BY MS. TARABISHY:
6      Q. Is this the same database for
7 fingerprints or is there a separate database
8 for palm prints?
9      **A. Separate database.**
10      Q. And what is that database called?
11      **A. The automated palm print**
12 **identification system or APIS, A-P-I-S.**
13      MS. TARABISHY: Would the tech please
14 pull up exhibit titled, "tracing 1-A"?
15      THE TECHNICIAN: One moment, please.
16 BY MS. TARABISHY:
17      Q. This is a three-page PDF consecutively
18 Bates stamped City 20590 through 20592
19 previously marked at the deposition of Gary
20 Simon as Exhibit 215.
21      Do you have the exhibit with you,
22 Mr. Malone?
23      **A. Yes.**
24      Q. Do you recognize the screen shots in

74

1 this exhibit?
2      **A. Yes.**
3      Q. What are they?
4      **A. Candidate lists generated by the AFIS**
5 **system.**
6      Q. Looking at the first page, City 20590.
7 At the top of the page it says "terminal ID."
8 What is that?
9      **A. That's the number of the particular**
10 **terminal that we used for AFIS.**
11      Q. And by "terminal," you mean the
12 computer that had the AFIS database?
13      **A. Yes.**
14      Q. So there's a unique ID for every
15 computer that is connected to the AFIS
16 database?
17      **A. I don't recall specifically.**
18      Q. Next to that it says "operator ID."
19 What does that mean?
20      **A. That would have been my -- my, what's**
21 **called PC number, my individual, you know,**
22 **identification number when using the**
23 **computers.**
24      Q. So every latent print examiner of the

75

1 latent print unit had his or her unique
2 operator ID to use on this terminal?
3      MS. CANONIE: Objection; form.
4      THE WITNESS: Yes.
5 BY MS. TARABISHY:
6      Q. The image on the left is tracing 1A
7 created by Ken Moses; correct?
8      **A. Yeah.**
9      Q. What is the image on the right?
10      **A. That would be the fingerprint of the**
11 **number one candidate.**
12      Q. Let's go through the table at the
13 bottom of the page. The first column to the
14 left says "rank." What does that mean?
15      **A. AFIS gives a ranking. We -- it has**
16 **ten candidates. We -- and it would rank those**
17 **in a numbered order.**
18      Q. It would rank them in the order of
19 which is most likely to be a match according
20 to its own algorithm; is that correct?
21      MS. CANONIE: Objection; form,
22 mischaracterizes testimony.
23 BY MS. TARABISHY:
24      Q. You can answer.

76

1      **A. I'm sorry. Repeat that one again for**
2 **me.**
3      Q. It would rank them in order of which
4 is most likely to be a match, according to
5 AFIS's algorithm?
6      **A. Oh, generally, yes. Mm-hmm.**
7      Q. The next column says "decision." Is
8 this entered by the latent print examiner
9 after you conduct the comparison?
10      **A. Yes.**
11      MS. CANONIE: Objection; form.
12      THE WITNESS: Yes.
13 BY MS. TARABISHY:
14      Q. The fourth column says "hit fingers."
15 Does this mean which finger is a possible
16 match?
17      **A. Yes.**
18      Q. And that's generated by AFIS?
19      **A. Yes.**
20      Q. How are fingers numbered?
21      Which one is finger number one?
22      **A. Beginning with the -- the right thumb**
23 **is finger -- finger number one. And then the**
24 **other fingers of the right hand, right index,**

Transcript of Michael Malone
Conducted on November 9, 2021

77

1 number two; the right middle is number three;
2 the -- the right index -- I mean, right ring
3 finger is number four; and the right little
4 finger is number five; and then the left
5 number six; and the left index is number
6 seven; left middle is number eight; left ring
7 is number nine; and the left little finger is
8 number ten.
9     Q.  The column for hit fingers has numbers
10 that are greater than ten.  Do you see that?
11     A.  Yes.
12     Q.  Do you have an explanation for this?
13     A.  Yes.  Like, if the number is greater
14 than ten, it -- it's because the -- AFIS is
15 also using not just the -- the ten fingers in
16 the ten boxes on a fingerprint card, it also
17 uses the simultaneous prints that are
18 usually -- that are underneath the -- the ten
19 fingers on a fingerprint card.
20     Q.  And what do you mean by the
21 "simultaneous prints"?
22     A.  Oh, underneath it, the block
23 ten -- ten fingers, the first five on the top
24 row, the second six through ten on the bottom

78

1 row, and then on the standard print card,
2 underneath that, the person taking the prints
3 would do what's called a simultaneous
4 impression where he would take fingers on the
5 right hand, fingers two through five, and he
6 would just press -- put those fingers together
7 and press them down in that -- in that
8 particular box, which is labeled "simultaneous
9 impression."
10     And -- and he would take the
11 individual thumb and just press them down, the
12 box next to that, and he would do the same
13 thing with the left hand.
14     And those -- those -- those -- and
15 those are also numbered in -- by AFIS.
16     Q.  So number 11 would be which
17 simultaneous print?
18     A.  Well, it would be -- it would be the
19 number one finger below at the bottom of the
20 print card, below the ten fingers of the
21 thumbs, which is -- which is just called a
22 plain impression of the number one finger, and
23 AFIS records that as number 11.
24     Q.  What is "score (R)" in the next column

79

1 to the right?
2     A.  You said "score (R)"?
3     Q.  Mm-hmm?
4     A.  Well, "score" is -- is the
5 number -- is a -- AFIS gives the
6 candidate -- each candidate a score.  What the
7 "R" stands for, I don't recall, but...
8     Q.  Fair to say that the higher the score
9 the more likely there's a match according to
10 AFIS's algorithm?
11     MS. CANONIE:  Objection; form.
12     THE WITNESS:  Yes.
13 BY MS. TARABISHY:
14     Q.  And then second-to-last column from
15 the right "quality (S)," and next to that to
16 the left there's "quality (R)."  Do you know
17 what that stands for?
18     MS. CANONIE:  Objection; form.
19     THE WITNESS:  Yeah, I don't -- I don't
20 quite recall all of that.
21 BY MS. TARABISHY:
22     Q.  Underneath the table it says on the
23 bottom "Enhanced-B" on the first page.  Do you
24 see that?

80

1     A.  The bottom, yes.  Mm-hmm.
2     Q.  And what does that mean?
3     A.  "Enhanced-B" was a -- was a separate
4 algorithm search.  Besides doing the standard
5 search, and then -- or the enhanced search in
6 Enhanced-A, which is a separate algorithm
7 search, and there's Enhanced-B, so -- which is
8 another separate algorithm search.
9     Q.  Do you know the difference between the
10 three algorithms?
11     A.  Generally, my -- my recollection was
12 that the Enhanced-A and Enhanced-B in the AFIS
13 system adjusted the CORE and access in search
14 of the print with a slightly different core
15 and access.  But I -- but that's about all I
16 remember, not exactly as much detail.
17     Q.  So this first page shows a search run
18 with Enhancement-B; correct?
19     A.  Yes.
20     MS. TARABISHY:  Can you go to the next
21 page, please?
22     THE WITNESS:  Yeah.
23 BY MS. TARABISHY:
24     Q.  The second page shows the same search

Transcript of Michael Malone
Conducted on November 9, 2021

81

1   run with Enhancement-A; correct?
2     **A. Yes.**
3     Q. And the last page shows the same
4   search run with the standard algorithm?
5     **A. Yes.**
6     Q. What would be the reason that a latent
7   print examiner would run the same print using
8   the three different algorithms?
9         MS. CANONIE: Objection; form,
10  foundation.
11        THE WITNESS: Usually -- usually if
12  you didn't get a hit in the standard
13  algorithm, then you would search it again in
14  either Enhanced-A or Enhanced-B or both, if
15  you didn't get a hit in -- in whichever one
16  you searched first.
17  BY MS. TARABISHY:
18    Q. Does AFIS generate a list of ten
19  candidates for every search that you run?
20    **A. No. It can vary. As latent print**
21  **examiners, you can ask for more candidates or**
22  **less candidates.**
23    Q. If you're using this list and you want
24  to do a manual comparison of the ten

82

1   candidates, would you start with the prints
2   belonging to the person identified in the
3   first row with rank number one?
4         MS. CANONIE: Objection; form.
5         THE WITNESS: Yes.
6   BY MS. TARABISHY:
7     Q. And if this doesn't result in a hit,
8   you would then move on to the next candidate?
9     **A. Yes.**
10    Q. And if you go through the list and do
11  not make an identification, how do you report
12  this outcome?
13        MS. CANONIE: Objection; form,
14  incomplete hypothetical.
15        THE WITNESS: You report it as a
16  no-hit AFIS system.
17  BY MS. TARABISHY:
18    Q. For each of the 13 tracings that
19  Mr. Moses created, you ran an AFIS search;
20  correct?
21    **A. I don't recall exactly. I'd have**
22  **to -- I don't recall.**
23    Q. The screen shots that we're looking at
24  are the results of the search for tracing 1A;

83

1   correct?
2     **A. Yes.**
3     Q. And based on that court order that we
4   read, the latent print unit was to enter
5   Mr. Moses's tracings into AFIS; correct?
6         MS. CANONIE: Objection; form. This
7   document speaks for itself.
8         THE WITNESS: Yes.
9   BY MS. TARABISHY:
10    Q. So for each of those tracings, you
11  entered into AFIS; correct?
12        MS. CANONIE: Objection; form, asked
13  and answered.
14        THE WITNESS: I believe we would have
15  followed the court order, yes.
16        MS. TARABISHY: You can take down the
17  exhibit. Thank you.
18  BY MS. TARABISHY:
19    Q. And for each of these searches, AFIS
20  generated a list of ten candidates like the
21  one we just looked at?
22        MS. CANONIE: Objection; form,
23  foundation.
24        THE WITNESS: I believe we had ten

84

1   candidates for each search, yes.
2   BY MS. TARABISHY:
3     Q. Following that court order, you had
4   then obtained the fingerprint standards for
5   each of the candidates?
6     **A. No.**
7     Q. What did you do with the AFIS result
8   that you got for each tracing?
9     **A. If we compared the fingerprint**
10  **standard of the number one candidate, and if**
11  **it was a hit, then that would have been the**
12  **only fingerprint candidate standard that we**
13  **would -- would need.**
14    Q. Did you conduct that comparison before
15  sending documents to Mr. Moses for his own
16  examination?
17    **A. I'm sorry. Can you repeat that one?**
18    Q. Did you conduct a manual comparison
19  before you sent documents to Mr. Moses for his
20  own examination?
21        MS. CANONIE: Objection; form,
22  foundation. I'm sorry. I'm just going to
23  take his. We're not looking at the exhibits.
24  I'm going to have him remove the exhibits from

Transcript of Michael Malone
Conducted on November 9, 2021

---

85

1  in front of him so he's able to answer.
2      MS. TARABISHY:  Yep.
3      THE WITNESS:  Yeah, I don't recall
4  exactly the exact order of that process.
5      MS. TARABISHY:  Can we look again at
6  the court order exhibit, please?
7      THE TECHNICIAN:  One moment.
8      MS. CANONIE:  When they take it off
9  the screen, flip it over so that you won't...
10     MS. TARABISHY:  Yeah, that's
11 the -- page 2, please.
12 BY MS. TARABISHY:
13     Q.  And looking at paragraph number 7,
14 Mr. Malone.
15     A.  Yes.
16     MS. CANONIE:  What's the Bates Number
17 of this page?  Just make sure that we're...
18     MS. TARABISHY:  Sure.  City 20536.
19 BY MS. TARABISHY:
20     Q.  Have you read it?
21     A.  Oh, yes.  Mm-hmm.
22     Q.  Does this refresh your recollection as
23 to whether you sent Mr. Moses the fingerprint
24 cards for the candidate generated in the AFIS

86

1  search?
2      A.  Yes.  I believe we would have complied
3  with the order, but I -- I don't recall
4  exactly.
5      Q.  You don't have an independent memory
6  of doing that, but you would have complied
7  with a court order; correct?
8      A.  Yes.
9      MS. TARABISHY:  You can take down the
10 exhibit.  Thank you.
11 BY MS. TARABISHY:
12     Q.  When you run these AFIS searches, you
13 conducted an independent examination of each
14 of the tracings and the AFIS candidates to
15 determine if there is a match; correct?
16     MS. CANONIE:  Objection; form.
17     THE WITNESS:  No, we -- I didn't go
18 through all the candidates, no.
19 BY MS. TARABISHY:
20     Q.  You would stop going through the
21 candidates once you get a match; correct?
22     A.  Yes.
23     Q.  And a latent -- a second latent print
24 examiner at the latent print unit corroborated

87

1  your findings when you made an identification;
2  correct?
3      A.  Yes.
4      Q.  What was the name of the examiner who
5  corroborated your identifications?
6      A.  Joseph Calvo --
7      Q.  Did you ask Joseph Calvo to
8  corroborate your identifications in this case?
9      A.  Yes.
10     Q.  Why did you choose Joseph Calvo for
11 this task?
12     A.  I can't recall exactly, but probably
13 whether he was -- who -- whether he was
14 available at the time.
15     Q.  Do you know what year Mr. Calvo joined
16 the latent print unit?
17     MS. CANONIE:  Objection; form, calls
18 for speculation.
19     THE WITNESS:  No, I don't recall.
20 BY MS. TARABISHY:
21     Q.  What is your opinion of Joseph Calvo's
22 ability as a latent print examiner?
23     MS. CANONIE:  Objection; form.
24     THE WITNESS:  Well, a qualified latent

88

1  print examiner, qualified and trained latent
2  print examiner.
3  BY MS. TARABISHY:
4      Q.  Would you say he is highly skilled?
5      A.  Yes.
6      Q.  Are you highly confident in his work?
7      MS. CANONIE:  Objection; form.
8      THE WITNESS:  Yes.
9      MS. TARABISHY:  Can we look at
10 Exhibit 214 again, please, the June 2009
11 report?
12     THE TECHNICIAN:  One moment.
13 BY MS. TARABISHY:
14     Q.  So, again, this is Bates Number City
15 20581 to 20582.
16     I'd like to go over each of the
17 identifications that were made by you and
18 Mr. Calvo in this case.  Starting with the
19 results for tracing number 12-2.  Do you see
20 the bottom of page 1?
21     A.  Yes.
22     Q.  11578726 is the inventory number for
23 the lifts that were impounded by the State's
24 Attorney's Office; correct?

Transcript of Michael Malone
Conducted on November 9, 2021

89

1      MS. CANONIE:  Objection; form.
2      THE WITNESS:  Yes.
3 BY MS. TARABISHY:
4    Q.  And this report indicates that 12-2 is
5 a ridge impression recovered from the hood of
6 a green Pontiac Bonneville on the sales lot;
7 correct?
8    **A.  Yeah.**
9    Q.  You ran an AFIS search for lift
10 tracing number 12-2; correct?
11    **A.  Yes.**
12    Q.  And you conducted subsequent manual
13 comparison?
14      MS. CANONIE:  Objection; form.
15      THE WITNESS:  Yes.
16 BY MS. TARABISHY:
17    Q.  This resulted in identifying lift
18 number 12-2 to the fingerprint standard
19 bearing the name Davion Allen, IR number
20 1170632.  SID number 39123760; correct?
21    **A.  Yes.**
22    Q.  Latent print examiner Joseph Calvo
23 independently conducted a manual comparison;
24 correct?

90

1      MS. CANONIE:  Objection; form.
2      THE WITNESS:  Yes.
3 BY MS. TARABISHY:
4    Q.  And he concurred with your findings?
5    **A.  Yeah.**
6    Q.  Meaning latent print 12-2 is a search
7 match to Davion Allen?
8    **A.  Yes.**
9    Q.  We'll going over the same questions
10 for the next lift, number 13A.  First
11 paragraph of the second page.
12    **A.  Yes.**
13    Q.  This has the same inventory number,
14 11578726 as one of the 14 lifts received from
15 the State's Attorneys Office; correct?
16    **A.  Yes.**
17    Q.  Lift 13A was recovered from the fender
18 of a green Pontiac Bonneville on the sales
19 lot; correct?
20    **A.  Yes.**
21    Q.  13A is a palm print?
22      MS. CANONIE:  Object- --
23      THE WITNESS:  Yeah.
24      MS. CANONIE:  Objection; form,

91

1 document speaks for itself.
2      THE WITNESS:  Yes.
3 BY MS. TARABISHY:
4    Q.  You run an AFIS search for lift
5 tracing number 13A?
6    **A.  Yes.**
7    Q.  You conducted subsequent manual
8 comparison?
9      MS. CANONIE:  Objection; form.
10      THE WITNESS:  Yes.
11 BY MS. TARABISHY:
12    Q.  This resulted in identifying lift
13 number 13A to the palm print standard bearing
14 the name Davion Allen, IR number 1170632, SID
15 number 39123760?
16      MS. CANONIE:  Objection; form.
17      THE WITNESS:  Yes.
18 BY MS. TARABISHY:
19    Q.  Latent print examiner Joseph Calvo
20 independently conducted a comparison?
21      MS. CANONIE:  Form.
22      THE WITNESS:  Yes.
23 BY MS. TARABISHY:
24    Q.  And he concurred with your findings?

92

1    **A.  Yes.**
2    Q.  Meaning latent print 13A is a certain
3 match to Davion Allen?
4      MS. CANONIE:  Objection; form.
5      THE WITNESS:  Yes.
6 BY MS. TARABISHY:
7    Q.  Next is 14B.  Again, same inventory
8 number, 11578726; yes?
9    **A.  Yes.**
10    Q.  Recovered from driver's side front
11 fender of green Pontiac Bonneville on sales
12 lot?
13    **A.  Yes.**
14    Q.  14B is also a palm print?
15      MS. CANONIE:  Objection; form,
16 document speaks for -- report speaks for
17 itself.
18      THE WITNESS:  Yes.
19 BY MS. TARABISHY:
20    Q.  You run an AFIS search for lift
21 tracing number 14B?
22      MS. CANONIE:  Objection; form.
23 Document speaks for itself.
24      THE WITNESS:  Yeah.

Transcript of Michael Malone
Conducted on November 9, 2021

24 (93 to 96)

93

1 BY MS. TARABISHY:
2     Q.  And then you conducted manual
3 comparison?
4         MS. CANONIE:  Form.
5         THE WITNESS:  Yes.
6 BY MS. TARABISHY:
7     Q.  Your comparison resulted in
8 identifying lift number 14B to the palm print
9 standard bearing the name Davion Allen IR
10 number 1170632, SID number 39123760?
11        MS. CANONIE:  Objection; form.
12        THE WITNESS:  Yes.
13 BY MS. TARABISHY:
14    Q.  Latent print examiner Joseph Calvo
15 independently conducted a comparison?
16        MS. CANONIE:  Objection; form.
17        THE WITNESS:  Yes.
18 BY MS. TARABISHY:
19    Q.  And he concurred with your findings?
20    **A.  Yes.**
21    Q.  Meaning, latent print 14B was a
22 certain match to Davion Allen?
23        MS. CANONIE:  Objection; form.
24        THE WITNESS:  Yes.

94

1 BY MS. TARABISHY:
2     Q.  Next is 15B.  Same inventory number,
3 11578726; right?
4         MS. CANONIE:  Objection; form,
5 document speaks for itself.
6         THE WITNESS:  Yes.
7 BY MS. TARABISHY:
8     Q.  Recovered from passenger front
9 exterior door latch on 1990 dual [phonetic]
10 Pontiac, license plate DL5521?
11        MS. CANONIE:  Objection; form,
12 document speaks for itself.
13        THE WITNESS:  Yes.
14 BY MS. TARABISHY:
15    Q.  You ran an AFIS search for lift
16 tracing number 15B?
17    **A.  Yes.**
18    Q.  And you conducted a manual comparison?
19    **A.  Yes.**
20    Q.  This resulted in identifying lift
21 number 15B to the fingerprint standard bearing
22 the name Lamont Campbell, IR number 1015321,
23 SID number 32699760; correct?
24    **A.  Yes.**

95

1     Q.  Latent print examiner Joseph Calvo
2 independently conducted a direct comparison?
3         MS. CANONIE:  Objection; form.
4         THE WITNESS:  Yes.
5 BY MS. TARABISHY:
6     Q.  And he concurred with your findings?
7     **A.  Yes.**
8     Q.  Meaning latent print 15B was a certain
9 match to Lamont Campbell?
10        MS. CANONIE:  Objection; form.
11        THE WITNESS:  Yes.
12        MS. TARABISHY:  You can take down this
13 exhibit, and please pull up exhibit titled,
14 "envelop of lifts."  This was previously
15 marked at the deposition of Dennis Stankus as
16 Exhibit 94.
17        (Indiscernible).
18        THE WITNESS:  This is -- I'll look
19 at --
20        THE COURT REPORTER:  I can't hear --
21        MS. TARABISHY:  I think we might need
22 the colored versions, because the markings on
23 the lift are in different colors, and that was
24 the way I was going to ask him to identify

96

1 the --
2         MS. CANONIE:  Yes.  So I was just
3 going to see if your -- is your exhibit --
4         MS. TARABISHY:  In color.
5         MS. CANONIE:  -- colored?
6         MS. TARABISHY:  Yeah.
7         MS. CANONIE:  Is it?  Okay.  I have it
8 printed out for the colored version as well.
9 Just give me one second.  Let me see that.
10        Noor, what is the Bates range of this
11 exhibit?
12        MS. TARABISHY:  20716 through 20729,
13 14 page --
14        MS. CANONIE:  Thank you.
15        We now have the colored version,
16 thanks.
17        MS. TARABISHY:  Thank you.
18 BY MS. TARABISHY:
19    Q.  Looking at page 2, Bates Number City
20 20717.  Do you recognize the envelope on
21 page 2, Mr. Malone?
22    **A.  Yeah.**
23    Q.  What is it?
24    **A.  That is one of the envelopes**

Transcript of Michael Malone
Conducted on November 9, 2021

25 (97 to 100)

97

1  with -- which would have contained the lift as
2  marked.
3      Q.  It has the case number for the double
4  homicide investigation Z594269; right?
5      A.  Yes.
6      Q.  And it contains eight lifts total,
7  four from 1992 Pontiac Illinois license
8  DL5521, and four from green Pontiac Bonneville
9  in lot?
10     A.  Yes.
11     Q.  And these are Joseph Calvo's initials
12 and star number; correct?
13     A.  Yes.
14         MS. CANONIE:  Objection; form,
15 document speaks for itself.
16         THE WITNESS:  Yes.
17 BY MS. TARABISHY:
18     Q.  Let's look at page 3, Bates Number
19 City 20718.  Would this be the other side of
20 the envelope?
21     A.  Yes.  It should be, yes.
22     Q.  And that's a list of the identified
23 prints contained in the envelope?
24     A.  Yes.

98

1      Q.  For Davion Allen we have left and
2  right palm, and finger number seven,
3  impression from green Pontiac Bonneville on
4  sales lot; correct?
5          MS. CANONIE:  Objection; form,
6  document speaks for itself.
7          THE WITNESS:  Yeah.
8  BY MS. TARABISHY:
9      Q.  And for Lemont Campbell, finger number
10 one impression on '92 Pontiac at 2417 West
11 70th Street; correct?
12         MS. CANONIE:  Objection; form,
13 document speaks for itself.
14         THE WITNESS:  Yes.
15 BY MS. TARABISHY:
16     Q.  Next to each identification there is
17 "MM" and "JC."  That indicates that you and
18 Joseph Calvo made the identification; correct?
19     A.  Yes.
20     Q.  And the dates June 15, 2009, would
21 that be the dates that you made the
22 identification?
23         MS. CANONIE:  Objection; form,
24 foundation.

99

1          THE WITNESS:  Yes.
2  BY MS. TARABISHY:
3      Q.  Joseph Calvo wrote this?
4          MS. CANONIE:  Objection; form, calls
5  for speculation.
6          THE WITNESS:  Yes.
7  BY MS. TARABISHY:
8      Q.  And, again, in the lower right are his
9  initials and star number?
10     A.  Yes.
11     Q.  And let's go to page 6 of the PDF
12 document, Bates Number City 20721.  And if you
13 can, zoom into the upper half, please.  Do you
14 recognize this, Mr. Malone?
15     A.  Yes.
16     Q.  And what is it?
17         MS. CANONIE:  Okay.  Yeah.  Okay.
18         THE WITNESS:  Those are the latent
19 lifts.
20 BY MS. TARABISHY:
21     Q.  Let's start with the lift at the top.
22 Do you see the small sticker in the upper left
23 corner?
24     A.  Yes.

100

1      Q.  And in your experience, who would have
2  created and placed that sticker on the lift?
3          MS. CANONIE:  Objection; form, calls
4  for speculation, incomplete hypothetical.
5          THE WITNESS:  It -- the evidence
6  technician.
7  BY MS. TARABISHY:
8      Q.  What is the purpose of doing that?
9          MS. CANONIE:  Objection; form,
10 foundation.
11         THE WITNESS:  To label -- no -- to
12 tell -- to notate where he recovered the --
13 this lift and these prints from.
14 BY MS. TARABISHY:
15     Q.  The sticker has the case number for
16 the double homicide investigation.  Again,
17 V594269; right?
18         MS. CANONIE:  Objection; form,
19 foundation.
20         THE WITNESS:  Yes.
21 BY MS. TARABISHY:
22     Q.  And it says [as read]:
23             "Homicide, December 4,
24             1994.  7004 South

Transcript of Michael Malone
Conducted on November 9, 2021

26 (101 to 104)

---

101

1           Western."
2      Do you see that?
3   **A. Yes.**
4      Q. Driver side front fender of green
5   Pontiac Bonneville on sales lot?
6   **A. Yes.**
7      Q. So this describes the origin of the
8   latent print lift on this slide?
9   **A. Yes.**
10     Q. Do you see the writing in blue?
11  **A. Yes.**
12     Q. Is this your handwriting?
13  **A. Yes.**
14     Q. Can you read what it says, please?
15  **A. Yes. [As read]:**
16  **        "IDENT right palm. Davion**
17  **        Allen. IR number 1170632,**
18  **        15, June '09."**
19  **     My initials, my star number, and**
20  **14A-B, and "right palm," and my initials with**
21  **Joe Calvo's initials, initials under mine.**
22     Q. Where it says 14A-B, does that
23  indicate this lift contains latent prints 14A
24  and 14B?

---

102

1         MS. CANONIE: Objection; form.
2         THE WITNESS: I -- yes, to the best of
3   my recollection.
4   BY MS. TARABISHY:
5      Q. Your initials on this lift indicate
6   that you made an identification; correct?
7   **A. Yes.**
8      Q. Joseph Calvo's initials indicate that
9   he corroborated your identification?
10  **A. Yes.**
11     Q. So lift 14B was independently examined
12  by you and Joseph Calvo; correct?
13  **A. Yes.**
14     Q. And both of you reached the conclusion
15  that the latent print on this lift matches
16  Davion Allen's right palm?
17  **A. Yes.**
18     Q. Was it the practice of the latent
19  print unit in 2009 for examiners to summarize
20  the identification made on the lift itself in
21  the manner that you and Mr. Calvo did?
22        MS. CANONIE: Objection; form.
23        THE WITNESS: Yes.
24

---

103

1   BY MS. TARABISHY:
2      Q. And for the examiners to place their
3   initials on the lift after making or
4   corroborating an identification?
5   **A. Yes.**
6      Q. Would a latent print examiner make any
7   notations on the lift if no identification was
8   made?
9         MS. CANONIE: Objection; form,
10  foundation, incomplete hypothetical, calls for
11  speculation.
12  BY MS. TARABISHY:
13     Q. You can answer.
14  **A. Oh, yes. In some -- some instances,**
15  **yes.**
16     Q. What would you -- would you indicate
17  on the lift that no identification was made?
18        MS. CANONIE: Objection; form.
19        THE WITNESS: No. You would -- you
20  may put the word "open" either with some kind
21  of an arrow indicating the location of the
22  print on the lift.
23  BY MS. TARABISHY:
24     Q. "Open" means an unidentified print?

---

104

1   **A. Yes, an open unidentified impression,**
2   **a print, yes.**
3      Q. Let's look at the slide on the bottom
4   of the page. I'll read again what's on the
5   right sticker [as read]:
6         "Z594269, homicide.
7         December 4, 1995. 7004
8         South Western. Fender of
9         a green Pontiac Bonneville
10        on sales lot."
11     This describes the origin of the
12  latent print lift; correct?
13        MS. CANONIE: Objection; form,
14  foundation, document speaks for itself.
15        THE WITNESS: Yes.
16  BY MS. TARABISHY:
17     Q. And the writing in blue is, again,
18  your handwriting; correct?
19  **A. Yes.**
20     Q. It says [as read]:
21        "Identified left palm
22        Davion Allen, IR number
23        1170632, June 15, 2009."
24     And then it has your initials and star

---

Transcript of Michael Malone
Conducted on November 9, 2021

27 (105 to 108)

105

1    number; correct?
2        MS. CANONIE: Objection; document
3    speaks for itself.
4        THE WITNESS: Yes.
5    BY MS. TARABISHY:
6        Q. Then it says "13A"?
7        A. Yes.
8        Q. So the lift here is numbered 13A?
9        A. Yes.
10       Q. So we're at the middle, it says left
11   palm; right?
12           Next to your initials?
13       A. Yes, yes.
14       Q. And this indicates that you made an
15   identification?
16       A. Yes.
17       Q. And then it has "JC" for Joseph Calvo?
18       A. Yes.
19       Q. Which indicates he corroborated the
20   identification?
21       A. Yes.
22       Q. So lift 13A was independently examined
23   by you and Joseph Calvo?
24       MS. CANONIE: Objection; form.

106

1        THE WITNESS: Yes.
2    BY MS. TARABISHY:
3        Q. And both of you reached the conclusion
4    that latent print 13A matches Davion Allen's
5    left palm?
6        MS. CANONIE: Form.
7        THE WITNESS: Yes.
8    BY MS. TARABISHY:
9        Q. Let's go down to page 10 of the PDF
10   file, please. Bates Number City 20725, and
11   we'll go through the same questions.
12           Are you on page 10?
13       A. Yes.
14       Q. And the white sticker in the
15   upper-left corner says [as read]:
16           "Z594269. Homicide,
17           December 4, 1995, 7004
18           South Western. Hood of
19           vehicle, green Pontiac
20           Bonneville on sales lot."
21       This describes the origin of the
22   latent print on this lift; correct?
23       MS. CANONIE: Objection; form,
24   document speaks for itself.

107

1        THE WITNESS: Yes.
2    BY MS. TARABISHY:
3        Q. And the writing in blue is yours;
4    correct?
5        A. Yes.
6        Q. In the upper right corner it says,
7    "12-2"?
8        A. Yes.
9        Q. This is the lift number?
10       MS. CANONIE: Objection; form.
11       THE WITNESS: Yes.
12   BY MS. TARABISHY:
13       Q. Then it says [as read]:
14           "Identified finger number
15           seven, Davion Allen. IR
16           number 1176032, 15, June,
17           2009."
18       Correct?
19       A. Yes.
20       Q. And then it has your initials and star
21   number?
22       A. Yes.
23       Q. And toward the bottom it says in blue,
24   again, the number seven?

108

1        A. Yes.
2        Q. Which finger is that?
3        A. Number seven is the left index finger.
4        Q. Then the initials "MM" indicating you
5    made this identification; correct?
6        A. Yes.
7        Q. And the initials "JC," indicating
8    Joseph Calvo corroborated the identification?
9        A. Yes.
10       Q. Lift 12-2 was independently examined
11   by you and Joseph Calvo; correct?
12       MS. CANONIE: Objection; form.
13       THE WITNESS: Yes.
14   BY MS. TARABISHY:
15       Q. And both of you reached the conclusion
16   that latent print 12-2 matches Davion Allen's
17   left index finger?
18       MS. CANONIE: Form.
19       THE WITNESS: Yes.
20   BY MS. TARABISHY:
21       Q. I have one more page to go over in
22   this exhibit, page 13 of the PDF file, Bates
23   Number City 20728.
24       A. Yes.

Transcript of Michael Malone
Conducted on November 9, 2021

28 (109 to 112)

---

109

1    Q.  The white sticker says [as read]:
2        "Z594269, homicide,
3        December 4, 1995, 7004
4        South Western.  Passenger
5        front exterior door latch,
6        '92 Pontiac.  License
7        number DL5521 at 2417 West
8        70th Street.
9        This is the origin of a latent print
10 on this lift; correct?
11       MS. CANONIE:  Objection; form,
12 document speaks for itself.
13       THE WITNESS:  Yes.
14 BY MS. TARABISHY:
15    Q.  And the writing in blue is your
16 handwriting; correct?
17    **A.  Yes.**
18    Q.  In the upper right corner it says
19 "15B," do you see that?
20    **A.  Yes.**
21    Q.  This is lift number 15B?
22    **A.  Yes.**
23    Q.  And vertically along the right side of
24 this -- of the lift we have the following in

---

110

1 blue [as read]:
2        "Identified finger number
3        one, Lamont Campbell, IR
4        number 101532115,
5        June 2009."
6        Right?
7    **A.  Yes.**
8    Q.  And these are your initials?
9    **A.  Yes.**
10    Q.  And star number?
11    **A.  Yes.**
12    Q.  To the left of the lift it says
13 "number one."  Which finger is that?
14    **A.  The right thumb.**
15    Q.  And then your initials, "MM"?
16    **A.  Yes.**
17    Q.  This indicates that you made the
18 identification?
19    **A.  Yes.**
20    Q.  And then the initials "JC"?
21    **A.  Yes.**
22    Q.  And this indicates that Joseph Calvo
23 corroborated your identification?
24    **A.  Yes.**

---

111

1    Q.  So lift 15B was independently examined
2 by you and Joseph Calvo?
3        MS. CANONIE:  Objection form.
4        THE WITNESS:  Yes.
5 BY MS. TARABISHY:
6    Q.  And both of you reached the conclusion
7 that the latent print 15B matches Lamont
8 Campbell's right thumb?
9        MS. CANONIE:  Object to form.
10       THE WITNESS:  Yes.
11       MS. TARABISHY:  You can take down this
12 exhibit.  And please pull up Exhibit 214,
13 again, the June 2019 report.
14       Pull up the first page, please, Bates
15 Number City 20581.
16 BY MS. TARABISHY:
17    Q.  Looking at the second-to-last
18 paragraph, 1584551 was the inventory number
19 for the nine negatives that were in the latent
20 print unit's possession.  Those were referred
21 in the court order that we looked at earlier;
22 correct?
23       MS. CANONIE:  Objection; form.
24       THE WITNESS:  Yes.

---

112

1 BY MS. TARABISHY:
2    Q.  Latent print 1A was recovered from a
3 black and orange sticker?
4    **A.  Yes.**
5    Q.  Do you have any knowledge about the
6 method used to develop this print back in '95?
7        MS. CANONIE:  Objection; form.
8        THE WITNESS:  No.
9 BY MS. TARABISHY:
10    Q.  You ran an AFIS search for latent
11 print number 1A; correct?
12    **A.  Yes.**
13    Q.  Then you conducted a manual
14 comparison?
15       MS. CANONIE:  Objection; form.
16       THE WITNESS:  Yes.
17 BY MS. TARABISHY:
18    Q.  This resulted in identifying latent
19 print number 1A to the fingerprint standard
20 bearing the name Davion Allen, IR number
21 1170632, SID number 39123760; correct?
22    **A.  Yes.**
23    Q.  Latent print examiner Joseph Calvo
24 independently conducted a comparison?

---

Transcript of Michael Malone
Conducted on November 9, 2021

113

1    MS. CANONIE: Objection; form.
2    THE WITNESS: Yes.
3 BY MS. TARABISHY:
4    Q. And he concurred with your findings?
5    **A. Yes.**
6    Q. Meaning latent print 1A is a certain
7 match to Davion Allen?
8    MS. CANONIE: Objection; form.
9    THE WITNESS: Yeah.
10 BY MS. TARABISHY:
11    Q. Let's go to the next page, please.
12    **A. Yes.**
13    Q. Toward the end of the report it says
14 [as read]:
15        "The open sortable latent
16         impressions recording
17         under lift tracing numbers
18         1B, 2A, 5A, 7A, 8A, 8C,
19         11-2, 14A were submitted
20         to AFIS/APIS with negative
21         results."
22    Can you explain what this means?
23    **A. Yes. That -- yes, these are the**
24 **impressions on those -- on those particular**

114

1 **lifts or tracings were submitted to AFIS or**
2 **APIS, if they were palm prints, AFIS if they**
3 **were fingerprints, with negative results,**
4 **meaning there was not a match with respect to**
5 **the candidate list supplied to AFIS from AFIS.**
6    Q. For these latent impressions that did
7 not result in an AFIS hit, did you conduct any
8 direct comparisons to known standards?
9    MS. CANONIE: Objection; form.
10 BY MS. TARABISHY:
11    Q. Other than the ones generated by AFIS?
12    MS. CANONIE: Objection; form.
13    THE WITNESS: They would have been
14 compared to the print standards of the -- the
15 individuals listed above. There were -- that
16 were identified through AFIS.
17 BY MS. TARABISHY:
18    Q. So you would have compared each of
19 these latent impressions to Davion Allen and
20 Lamont Campbell?
21    **A. Yes.**
22    Q. Did you also compare each of these to
23 the known standards for the two victims in
24 this case?

115

1    MS. CANONIE: Objection; form,
2 foundation.
3    THE WITNESS: If we had their
4 elimination print standards we would have.
5 BY MS. TARABISHY:
6    Q. But you do not have an independent
7 memory of doing that?
8    **A. No. Not exactly, no.**
9    Q. Mr. Moses did not send tracings of all
10 the latent prints that you scanned and sent to
11 him; correct?
12    MS. CANONIE: Objection; form,
13 foundation.
14    THE WITNESS: I don't recall.
15 BY MS. TARABISHY:
16    Q. In the court order that we looked at
17 there were 14 lifts and nine negatives;
18 correct?
19    **A. Fourteen lifts and nine negatives.**
20 **Oh, yes. Uh-huh.**
21    Q. And this report indicates that you
22 received 13 tracings from Mr. Moses?
23    **A. Yes.**
24    Q. Does that indicate to you that there

116

1 were some latent prints for which Mr. Moses
2 did not send back a tracing?
3    **A. Is that -- that's -- yes, that's**
4 **possible, yes.**
5    Q. For the latent impressions that
6 Mr. Moses did not trace, did you conduct any
7 examination to determine if those prints were
8 suitable for comparison or suitable for AFIS?
9    MS. CANONIE: Objection; form.
10    THE WITNESS: Yes. We would have
11 examined all the prints, yes.
12 BY MS. TARABISHY:
13    Q. Would you -- would you have ran a
14 report indicating which prints you determined
15 were suitable for comparison or suitable for
16 AFIS?
17    MS. CANONIE: Objection; form,
18 incomplete -- calls for speculation,
19 incomplete hypothetical.
20    THE WITNESS: I do not recall that.
21 BY MS. TARABISHY:
22    Q. You've already identified for us your
23 signature at the bottom of this page. Did you
24 author this report?

117

1    A.  Yes.
2    Q.  And your signature indicates that this
3  report is true and accurate to the best of
4  your knowledge; correct?
5    A.  Yes.
6    Q.  And that you followed proper
7  procedures in your examination?
8       MS. CANONIE:  Objection; form.
9       THE WITNESS:  Yes.
10 BY MS. TARABISHY:
11   Q.  And that you are highly confident of
12 the identifications that you made?
13   A.  Yes.
14   Q.  What is your degree of confidence in
15 these identifications?
16      MS. CANONIE:  Objection; form.
17      THE WITNESS:  Yes, I'm confident and
18 100 percent sure that the identifications made
19 were true.
20 BY MS. TARABISHY:
21   Q.  This report is dated June 15, 2009.
22 Do you see that?
23   A.  Yes.
24   Q.  And that was the same dates on the

118

1  blue markings on the lifts that we just looked
2  at in the previous exhibit; correct?
3    A.  I don't recall.  I would have to look
4  back at those, but...
5    Q.  You can look back if you want to,
6  if...
7    A.  Yes, mm-hmm.
8    Q.  So June 15, 2009, was the day that you
9  made all of these identifications?
10   A.  Oh.
11      MS. CANONIE:  Objection; form.
12      THE WITNESS:  I'd have to look through
13 them, refresh my memory.
14      Yes.
15      MS. TARABISHY:  You can take down this
16 exhibit.  Thank you.
17 BY MS. TARABISHY:
18   Q.  Did you receive a report of the
19 findings made by fingerprint expert Ken Moses?
20      MS. CANONIE:  Objection; form.
21      THE WITNESS:  I believe -- I believe
22 so, yes.  I believe we received the report
23 from Mr. Moses.
24

119

1  BY MS. TARABISHY:
2    Q.  Do you remember when you received that
3  report?
4    A.  No.
5       MS. TARABISHY:  Would you please pull
6  up exhibit titled, "June 2009 addendum."  This
7  was previously marked as Exhibit 216 at the
8  deposition of Gary Simon, and this is a 1-page
9  PDF Bates stamped City 20583.
10      MS. CANONIE:  One second.  I'm not
11 seeing...
12      THE WITNESS:  You just have to enlarge
13 it.
14      MS. CANONIE:  Can you enlarge it and
15 we can read it off -- oh, I found it.  Here it
16 is.
17      THE WITNESS:  Oh, okay.  They enlarged
18 it.  Okay.
19      MS. CANONIE:  Thank you.
20      THE WITNESS:  All right.
21      Okay.  Yes.
22 BY MS. TARABISHY:
23   Q.  Do you recognize this document?
24   A.  Yes.

120

1    Q.  And what is it?
2    A.  A report summarizing defense expert
3  Kenneth Moses's findings.
4    Q.  This document is summarizing Ken
5  Moses's findings, is that what you said?
6    A.  Yes.
7    Q.  I'll give you a minute just to read
8  through this first paragraph.
9    A.  Yes, mm-hmm.  Okay.
10   Q.  Do you see your signature anywhere in
11 this document?
12   A.  Yes.
13      MS. TARABISHY:  Can you scroll down,
14 please to the signature area?  Thank you.
15 BY MS. TARABISHY:
16   Q.  And that's above the line where it
17 says [as read]:
18      "Examined by latent print
19       examiner Michael Malone,
20       Star number 10389"?
21   A.  Yes.
22   Q.  Do you see Joseph Calvo's signature on
23 this document?
24   A.  Yes.

Transcript of Michael Malone
Conducted on November 9, 2021

31 (121 to 124)

121

1    Q.  And that's under your own signature;
2  correct?
3    **A.  Yes.**
4    Q.  Can you read the date on this
5  document?
6      MS. TARABISHY:  If you can, go back
7  up, please.
8      THE WITNESS:  Yes.  23, June 2009.
9  BY MS. TARABISHY:
10   Q.  And does reading this document refresh
11 your recollection on when the latent print
12 unit received the report of findings by
13 Mr. Moses?
14   **A.  Yes.**
15   Q.  When was that?
16   **A.  23, June 2009.**
17   Q.  Is that the date of the report or the
18 date of -- if you can, read the first sentence
19 of the report itself?
20   **A.  Yes.  [As read]:**
21       **"On 18, June 2009, the**
22       **Chicago Police Department,**
23       **the latent unit, received**
24       **a report from professor**

122

1       **Steven A. Drizen**
2       **summarizing defense expert**
3       **Kenneth R Moses's**
4       **findings."**
5    Q.  So you received Mr. Moses's findings
6  on June 18th; correct?
7    **A.  Yes.**
8    Q.  And this was three days after you and
9  Mr. Calvo made your identifications; correct?
10   **A.  You said three days?**
11     MS. CANONIE:  Objection.
12 BY MS. TARABISHY:
13   Q.  Yes.  The documents we looked at
14 before, you dated your identifications
15 June 15, 2009.  And this document indicates
16 that you received Mr. Moses's report on
17 June 19 of 2009.
18     MS. CANONIE:  I'm going to object to
19 the form because not all identifications are
20 in that exhibit.
21     THE WITNESS:  15, June 2009 was
22 correct, three days after, yeah.
23 BY MS. TARABISHY:
24   Q.  So Ken Moses independently found the

123

1  same matches as you and Mr. Calvo?
2      MS. CANONIE:  Objection; form,
3  foundation.
4      THE WITNESS:  I'm sorry.  I don't
5  understand that question.  Could you repeat
6  that one, please?
7  BY MS. TARABISHY:
8    Q.  Sure.
9      Ken Moses independently found the same
10 matches that you and Mr. Calvo did; correct?
11     MS. CANONIE:  Objection; form,
12 foundation.
13     THE WITNESS:  Well, that isn't
14 indicated.  I -- we sent him our -- the result
15 of our findings and -- and unless he didn't
16 agree with it or something, we had no
17 indication other than this report.
18 BY MS. TARABISHY:
19   Q.  According to this report, Mr. Moses's
20 own report included the five identifications
21 that were made by you and Mr. Calvo; correct?
22     MS. CANONIE:  [Inaudible].
23     THE COURT REPORTER:  I'm sorry?  I
24 didn't hear you, Ms. Canonie.

124

1      MS. CANONIE:  I said have him read.
2  He's confused on what you're asking.
3      THE WITNESS:  Yes.  An additional
4  identification was included on report with his
5  findings, yes.
6  BY MS. TARABISHY:
7    Q.  And this additional identification was
8  made from lift tracing number 7A, ridge
9  impression from green sticker luxury car;
10 correct?
11   **A.  Yes.**
12   Q.  And it identified Khaled Ibrahim, one
13 of the victims in this case; correct?
14   **A.  Yes.**
15   Q.  After receiving this additional
16 identification and Mr. Moses's report, did you
17 and Joseph Calvo conduct an independent
18 examination of lift tracing number 7A?
19   **A.  Yes.**
20   Q.  And you verified the identification of
21 Khaled Ibrahim?
22   **A.  Yes.**
23     MS. TARABISHY:  We're done with this
24 exhibit.  Thank you.

Transcript of Michael Malone
Conducted on November 9, 2021

32 (125 to 128)

125

1    Could we take a quick ten-minute
2 break, please?
3    THE VIDEOGRAPHER: We are going off
4 the record at 12:37.
5    (Whereupon, a recess was
6    had.)
7    THE VIDEOGRAPHER: We are back on the
8 record at 12:53.
9 BY MS. TARABISHY:
10    Q. Mr. Malone, you said that when you
11 received this case assignment you were given a
12 court order and a case jacket; correct?
13    A. Yes.
14    Q. And that case jacket contained crime
15 scene processing reports, lifts, and
16 negatives; correct?
17    MS. CANONIE: Objection; form,
18 mischaracterizes the testimony.
19    THE WITNESS: Yes.
20 BY MS. TARABISHY:
21    Q. Did you look at that material in that
22 case jacket before you started your work on
23 this case?
24    MS. CANONIE: Objection; form.

126

1    THE WITNESS: I'm sorry. What was
2 that? Can you repeat that one, please?
3 BY MS. TARABISHY:
4    Q. Did you review the materials in the
5 case jacket before you started your own work
6 on the case?
7    MS. CANONIE: Objection; form.
8    THE WITNESS: Yes.
9 BY MS. TARABISHY:
10    Q. You did so to determine what work was
11 done on the case before it was handed to you?
12    MS. CANONIE: Objection; form,
13 foundation.
14    THE WITNESS: No.
15 BY MS. TARABISHY:
16    Q. So what is the reason you looked
17 through the material in the case jacket?
18    A. Just to see what material was
19 involved, what we were -- I had to work with.
20    Q. Did you look at what identifications
21 were made at that time of the original case in
22 1995?
23    A. That would have been on the case
24 jacket. So I probably would have noticed it.

127

1    Q. So the case jacket itself has some
2 writing on it. Is that what you're saying?
3    A. Yes, it would have --
4    Q. And -- and you reviewed that writing
5 as part of your initial review of the case
6 material?
7    MS. CANONIE: Objection; form,
8 mischaracterizes prior testimony.
9    THE WITNESS: Yes. I would have
10 reviewed -- or looked at the jacket.
11    MS. TARABISHY: Let's pull up
12 exhibit titled, "envelope of negatives"
13 previously marked as Exhibit 217 at the
14 deposition of Carey Simon.
15    MS. CANONIE: Noor, one second. I'm
16 going to the -- do you want the colored
17 version as well?
18    MS. TARABISHY: Yes, please.
19 BY MS. TARABISHY:
20    Q. This is a 15-page PDF consecutively
21 Bates stamped City 20766 through 20780.
22    MS. TARABISHY: Can we zoom in a
23 little bit, please? Thank you.
24    MS. CANONIE: 20766 to 20780?

128

1    MS. TARABISHY: Yes.
2 BY MS. TARABISHY:
3    Q. Do you recognize this envelope on the
4 first page?
5    A. Yes.
6    Q. And what is it?
7    A. The envelope which we would have made
8 for the nine negatives.
9    Q. It has the case number for the double
10 homicide investigation is Z594269; correct?
11    MS. CANONIE: Objection; foundation.
12    THE WITNESS: Yes.
13 BY MS. TARABISHY:
14    Q. And it contains nine negatives from
15 stickers?
16    A. Yes.
17    Q. It indicates that two of these
18 negatives are duplicates?
19    A. Yes.
20    Q. And what does that mean?
21    A. Two of them would have been, you know,
22 the same.
23    Q. So they would have been identical
24 images of the same print?

129

1    A.  Yes.
2        MS. TARABISHY:  Can you scroll down a
3    little bit, please?
4    BY MS. TARABISHY:
5    Q.  At the bottom of the envelope these
6    are Joseph Calvo's initials and star number.
7    A.  Yes.
8        MS. TARABISHY:  Let's go to page 7 of
9    the exhibit, Bates Number City 20772.
10   BY MS. TARABISHY:
11   Q.  At the bottom of --
12   A.  Yes.
13   Q.  -- the negative it says in blue
14   "1A-B"?
15   A.  Yes.
16   Q.  So this negative contains latent
17   prints numbered 1A and 1B?
18   A.  Yes.
19   Q.  And there's a small sticker
20   identifying the negative.  Do you see that?
21   A.  There are two small stickers.  Which
22   one are you --
23   Q.  I'm sorry.
24   A.  -- referring to?

130

1    Q.  The one in the lower portion that says
2    December 5, 1995.
3    A.  Yes, mm-hmm.
4    Q.  And it says [as read]:
5        "Homicide Z594269.
6         Inventory number 1584551,
7         black and orange sticker."
8    A.  Yes.
9    Q.  So the print on this negative came
10   from a black and orange sticker?
11       MS. CANONIE:  Objection; form,
12   document speaks for itself.
13       THE WITNESS:  Yes.
14   BY MS. TARABISHY:
15   Q.  Can you see the writing in the lower
16   portion and in the margin in a purple or blue
17   ink?
18   A.  Yes, mm-hmm.
19   Q.  Did you write this?
20   A.  Yes.  In the blue ink, yes.
21   Q.  There's a half circle in the lower
22   portion of the negative with "1A" written
23   above it.  Do you see that next to the white
24   X --

131

1        (Indiscernible simultaneous
2         colloquy.)
3    BY MS. TARABISHY:
4    Q.  Just under the white X?
5    A.  Yes.
6    Q.  What does this half circle indicate?
7    A.  That's impress- -- the
8    impression marked 1A.
9    Q.  So this half circle surrounds the
10   impression 1A?
11   A.  Yes.
12   Q.  Right above that half circle it has
13   the number "1" and then we have your initials.
14   Do you see that?
15   A.  Yes.
16   Q.  The number 1 means this is the right
17   thumb?
18   A.  Yes.
19   Q.  And your initials here indicate you
20   made the identification?
21   A.  Yes.
22   Q.  And under that are Joseph Calvo's
23   initials?
24   A.  Yes.

132

1    Q.  Which indicates that he corroborated
2    your identification?
3    A.  Yes.
4    Q.  At the bottom there's some more
5    writing in the blue ink, it says [as read]:
6        "Identified finger number
7         one, Davion Allen.  IR
8         number 1170632, 15,
9         June 2009."
10       Do you see that?
11   A.  I see it in red ink.  I see it, yes.
12   Q.  Yeah.  Then it's your initials;
13   correct?
14   A.  Yes.
15   Q.  And your star number?
16   A.  Yes.
17   Q.  So negative number 1A was
18   independently examined by you and Joseph
19   Calvo?
20       MS. CANONIE:  Objection; form.
21       THE WITNESS:  Yes.
22   BY MS. TARABISHY:
23   Q.  And both of you reached the conclusion
24   that latent print 1A matches Davion Allen's

Transcript of Michael Malone
Conducted on November 9, 2021

133

1  right thumb?
2      MS. CANONIE:  Objection; form.
3      THE WITNESS:  Yes.
4  BY MS. TARABISHY:
5      Q.  Do you see the yellow Post-it note in
6  the upper left corner?
7      MS. TARABISHY:  If you can zoom out,
8  please.
9      THE WITNESS:  Yes.
10 BY MS. TARABISHY:
11     Q.  Do you know who created the Post-it
12 note?
13     **A.  I did.**
14     Q.  And what is the reason that you did
15 that?
16     **A.  Just to notate it.**
17     Q.  So on that yellow Post-it note you
18 indicate that for latent print 1A you had an
19 AFIS system hit for Davion Allen's finger
20 number one; correct?
21     **A.  Yes.**
22     Q.  But for latent print 1B, there was no
23 hit; correct?
24     **A.  Yes.**

134

1      Q.  It says "CPD, ISP"?
2      **A.  Yes.**
3      Q.  What does that mean?
4      **A.  That there was no hit in the Chicago**
5  **Police Department's fingerprint database**
6  **or -- and no hit in the Illinois State Police**
7  **fingerprint database.**
8      Q.  So as a latent print examiner in 2009,
9  you had access to the database for the Chicago
10 Police Department, and for the Illinois State
11 Police; correct?
12     **A.  Yes.**
13     Q.  Did you have access to search any
14 other databases?
15     **A.  No.**
16     Q.  Let's go down to page 13 of the PDF,
17 please.  Bates Number City 20778.
18     This would be negative number 7A;
19 correct?
20     **A.  Yes.**
21     Q.  And the small sticker says [as read]:
22         "Five, December '95, G/V
23          homicide Z594269.
24          Inventory 1584551.  Green

135

1          sticker luxury car."
2      Correct?
3      **A.  Yes.**
4      Q.  So the print on this negative came
5  from a green sticker that said "luxury car"?
6      MS. CANONIE:  Objection; form,
7  document speaks for itself.
8      THE WITNESS:  Yes.
9  BY MS. TARABISHY:
10     Q.  In blue -- the writing in blue is your
11 handwriting; correct?
12     **A.  Yes.**
13     Q.  And it says [as read]:
14         "Identified finger number
15          seven, Khaled Ibrahim,
16          victim.  SID number
17          31778620, 23, June 2009."
18     Right?
19     **A.  Yes.**
20     Q.  Then the initials "MM" and the star
21 number 10389; right?
22     **A.  Yes.**
23     Q.  These are your initials?
24     **A.  Yes.**

136

1      Q.  And your star number?
2      **A.  Yes.**
3      Q.  This indicates that you identified the
4  print on this negative as belonging to Khaled
5  Ibrahim's left index finger; correct?
6      **A.  Yes.**
7      Q.  You see the initials "JC" in slightly
8  darker ink underneath your own initials?
9      **A.  Yeah.**
10     Q.  And this indicates Joseph Calvo
11 corroborated your identification?
12     **A.  Yes.**
13     Q.  So negative number 7A was
14 independently examined by you and Joseph
15 Calvo?
16     MS. CANONIE:  Objection; form.
17     THE WITNESS:  Yes.
18 BY MS. TARABISHY:
19     Q.  And both of you reached the conclusion
20 that latent print 7A matches Khaled Ibrahim's
21 left fing-- index finger?
22     MS. CANONIE:  Objection; form.
23     THE WITNESS:  Yes.
24     MS. TARABISHY:  Let's go back to

Transcript of Michael Malone
Conducted on November 9, 2021

35 (137 to 140)

137

1  page 2 of the PDF Bates Number City 20767.
2        THE WITNESS: Yeah.
3  BY MS. TARABISHY:
4      Q. This would be the other side of the
5  envelope containing the negatives; correct?
6        MS. CANONIE: Objection; form.
7        THE WITNESS: Yes.
8  BY MS. TARABISHY:
9      Q. And it contains a list of the
10 identified prints contained in the envelope;
11 correct?
12       MS. CANONIE: Objection; form,
13 foundation.
14       THE WITNESS: Yes.
15 BY MS. TARABISHY:
16     Q. Next to the top two identifications
17 there is an "MM/JC?" Do you see that?
18     A. Oh, yes, uh-huh.
19     Q. And that indicates that you and Joseph
20 Calvo made these two identifications; correct?
21     A. Yes.
22     Q. The dates indicate that Khaled Ibrahim
23 identification was made on June 23, 2009?
24     A. Yes.

138

1      Q. And for Davion Allen on June 15, 2009?
2      A. Yes.
3      Q. Joseph Calvo wrote this?
4        MS. CANONIE: Objection; form,
5  foundation, calls for speculation.
6        THE WITNESS: Yes.
7  BY MS. TARABISHY:
8      Q. And in the bottom are his initials and
9  star number?
10     A. Yes.
11     Q. Do you notice any inaccuracies in the
12 recording of these two identifications?
13       MS. CANONIE: Objection; form.
14       THE WITNESS: No.
15 BY MS. TARABISHY:
16     Q. So in the negatives that we just
17 looked at, Davion Allen's print was on a black
18 and orange sticker. Do you remember that or
19 do you want us to go back to that page, that
20 would be --
21     A. Go back --
22     Q. -- page 7.
23       Do you see, it says, in your writing,
24 "Davion Allen," and the little sticker says,

139

1  "black and orange sticker"; correct?
2      A. 307.
3        MS. CANONIE: Can we have the Bates
4  Number, please?
5        THE WITNESS: The Bates Number.
6        MS. TARABISHY: Of course. The Bates
7  Number -- can you scroll down a little bit so
8  I can see the Bates Number?
9        20772.
10       THE WITNESS: All right. Yes. And
11 the question again?
12 BY MS. TARABISHY:
13     Q. So just reviewing that, the print on
14 this page, 1A, matched Davion Allen and came
15 from a black and orange sticker; correct?
16       MS. CANONIE: Objection; form,
17 foundation. He didn't put the white sticker
18 on.
19 BY MS. TARABISHY:
20     Q. Yes, you can answer, Mr. Malone.
21     A. The white sticker says "black and
22 orange sticker."
23     Q. Okay.
24     A. Black sticker.

140

1      Q. Okay. That's my question.
2        And then if you go to page 13, Bates
3  Number City 20778, that's the Khaled Ibrahim
4  identification, correct, for latent print 7A?
5        MS. CANONIE: Objection; form.
6        THE WITNESS: Yes.
7  BY MS. TARABISHY:
8      Q. And the white sticker that identifies
9  the origin says "luxury" -- "green sticker
10 luxury car." Do you see that?
11     A. Yes.
12     Q. Okay. Now, let's go back to page 2,
13 please. Bates Number City 20767. Here it
14 says "Khaled Ibrahim, victim" on black and
15 orange sticker, and "Davion Allen" on green
16 luxury car sticker. Do you see that?
17     A. Yeah.
18     Q. Do you see that this is the opposite
19 of what was on the negatives themselves?
20       MS. CANONIE: Objection; form.
21       THE WITNESS: I'd have to put them
22 side by side and -- and look at that again.
23 So if I could have those numbers again, I'd
24 have to do that.

Transcript of Michael Malone
Conducted on November 9, 2021

36 (141 to 144)

141

1    MS. TARABISHY:  Page --
2    THE WITNESS:  Going back and forth.
3 BY MS. TARABISHY:
4    Q.  -- 13?
5    **A.  I'm sorry?**
6    Q.  Page 7 -- 7 and 13 of the exhibit that
7 you have in your hands, had the --
8    **A.  The Bates Numbers?**
9    **And the Bates Numbers?**
10   Q.  City 20772, and City 20778.
11   **A.  Okay.  I have them side by side now.**
12   Q.  And my question is:  The location for
13 each negative, that's recorded on the negative
14 itself.  It's the opposite of what's recorded
15 on the envelope we just looked at.
16   So the negative says Davion Allen's
17 print was on the black and orange sticker, and
18 Khaled Ibrahim on the green luxury car
19 sticker, and it says the opposite on the
20 envelope on page 2.
21   MS. CANONIE:  Objection; form.
22   THE WITNESS:  Yes, I see that.
23 BY MS. TARABISHY:
24   Q.  And do you notice a discrepancy?

142

1    MS. CANONIE:  Objection; form.
2    THE WITNESS:  Okay.  Yes.  I notice
3 that.
4 BY MS. TARABISHY:
5    Q.  Do you have an explanation for this?
6    MS. CANONIE:  Objection; form,
7 foundation.
8    THE WITNESS:  No.
9 BY MS. TARABISHY:
10   Q.  It would just be a recording error on
11 the envelope?
12   MS. CANONIE:  Objection; form.
13   THE WITNESS:  It's possible.
14   MS. TARABISHY:  Okay.  We're done with
15 that exhibit.  You can take it down.  Thank
16 you.
17   And if you can, pull up exhibit
18 titled, "arrest cards." This was previously
19 marked as Exhibit 218, the deposition of Carey
20 Simon.
21 BY MS. TARABISHY:
22   Q.  This is a five-page PDF consecutively
23 Bates stamped City 20685 [sic] through 20662.
24   Do you have the document with you?

143

1    **A.  Yes.**
2    Q.  Looking at the first -- I'm sorry.
3    **A.  The number is different because the**
4 **Bates Number is a little different.**
5    MS. CANONIE:  Okay.  Let me see it.
6    (Indiscernible simultaneous
7       colloquy.)
8    MS. TARABISHY:  20658 through 20662.
9    MS. CANONIE:  Okay.
10   THE WITNESS:  You said "85" at first.
11 Okay.
12   MS. TARABISHY:  I might have misspoke.
13 Sorry.
14   THE WITNESS:  I got it.  I have it,
15 yes.
16 BY MS. TARABISHY:
17   Q.  So looking at the first page, Bates
18 Number City 20685 [sic], can you describe what
19 this document is?
20   **A.  That's an arrest card of -- for -- of**
21 **Khaled Ibrahim.**
22   Q.  Do you see your initials on this
23 document?
24   **A.  Yes.**

144

1    Q.  And do you see Mr. Calvo's initials?
2    **A.  Yes.**
3    Q.  And both of your initials are in the
4 box showing Khaled Ibrahim's left index
5 fingerprint; correct?
6    **A.  Yes.**
7    Q.  And the initials on this arrest card
8 confirm that you and Joseph Calvo made an
9 identification to Khaled Ibrahim's left index?
10   **A.  Yes.**
11   MS. TARABISHY:  Can you go to the next
12 page, Bates Number City 20659.
13 BY MS. TARABISHY:
14   Q.  Can you describe what this document
15 is?
16   **A.  Arrest card of Davion Allen.**
17   Q.  Do you see your initials?
18   **A.  Yes.**
19   Q.  And do you see Mr. Calvo's initials?
20   **A.  Yes.**
21   Q.  Both of your initials appear in two
22 boxes; correct?
23   **A.  Yes.**
24   Q.  And that's for the box showing Davion

Transcript of Michael Malone
Conducted on November 9, 2021

37 (145 to 148)

145

1  Allen's right thumb print, and his left index;
2  correct?
3      **A.  Yes.**
4      Q.  The initials on this arrest card
5  confirm that you and Joseph Calvo made an
6  identification to Davion Allen's left index
7  and right thumb; correct?
8      **A.  Yes.**
9      Q.  Let's go to the next page, please.
10 Bates Number City 20660.  Can you describe
11 what this document is?
12     **A.  Yes.  The palm print of Davion Allen.**
13     Q.  And do you see your initials?
14     **A.  Yes.**
15     Q.  And Mr. Calvo's?
16     **A.  Yes.**
17     Q.  The initials on this document confirm
18 that you and Calvo made an identification to
19 Davion Allen's left palm?
20     MS. CANONIE:  Objection; form.
21     THE WITNESS:  Yes.
22 BY MS. TARABISHY:
23     Q.  Same questions for the next page,
24 Bates Number City 20661.

146

1      MS. TARABISHY:  The next page, please.
2      THE WITNESS:  Yes.
3  BY MS. TARABISHY:
4      Q.  Can you describe what this document
5  is?
6      **A.  The palm card of Davion Allen**
7  **representing the right palm.**
8      Q.  And do you see your initials?
9      **A.  Yes.**
10     Q.  And Joseph Calvo's?
11     **A.  Yes.**
12     Q.  The initials on this document confirm
13 that you and Joseph Calvo made an
14 identification to Davion Allen's right palm;
15 correct?
16     **A.  Yes.**
17     Q.  Moving on to the last page, Bates
18 Number City 20662, can you describe what this
19 document is?
20     **A.  The arrest print card of Lamont**
21 **Campbell.**
22     Q.  And do you see your initials?
23     **A.  Yes.**
24     Q.  And Mr. Calvo's?

147

1      A.  Yes.
2      Q.  And those appear in the box for Lamont
3  Campbell's right thumb; correct?
4      **A.  Yes.**
5      Q.  And these initials confirmed that you
6  and Mr. Calvo made an identification to Lamont
7  Campbell's right thumb; correct?
8      **A.  Yes.**
9      MS. TARABISHY:  You can take down the
10 exhibit.  Thank you.
11 BY MS. TARABISHY:
12     Q.  After you concluded your work on the
13 Charles Johnson case, did you record your
14 findings on a case jacket?
15     MS. CANONIE:  Objection; form.
16     THE WITNESS:  I -- I don't recall if I
17 recorded it on the case jacket.
18     MS. TARABISHY:  Would the tech please
19 pull up an exhibit entitled, "latent print
20 evidence, evidence envelope."  And this we
21 will mark as Exhibit 336.
22 (Whereupon, Deposition
23 Exhibit No. 336 was
24 electronically introduced

148

1              for identification and
2              provided to the court
3              reporter.)
4  BY MS. TARABISHY:
5      Q.  And this is an eight-page PDF.  It is
6  a group exhibit with Bates stamp City 20781,
7  20782, 20714, 20715, 20751, 20752, 20768, and
8  20764.
9      MS. CANONIE:  Can you repeat them for
10 the color version?
11     MS. TARABISHY:  Up --
12     MS. CANONIE:  I have 822.
13     MS. TARABISHY:  I'm sorry.  I didn't
14 get that.  The first one is 20781.
15     MS. CANONIE:  But they're not -- and
16 then what are the -- this isn't a consecutive
17 Bates stamp?
18     MS. TARABISHY:  No, it isn't.  No,
19 it's not.  It was one PDF, but it's a group
20 exhibit.  Do you want me to read all the Bates
21 stamps again?
22     MS. CANONIE:  Yes.
23     MS. TARABISHY:  20781, 20782, 20714,
24 20715, 20751, 20752, 20763 and 20764.

Transcript of Michael Malone
Conducted on November 9, 2021

38 (149 to 152)

149

1    And can you zoom in, please?
2        THE WITNESS: All right. Okay. I
3 have them.
4 BY MS. TARABISHY:
5    Q. Looking at the first page, City 20781,
6 is this your handwriting?
7    **A. Some of it is, yes.**
8    Q. And this is what you referred to in
9 the latent print unit as a case jacket?
10   **A. Yes.**
11   Q. Which parts of the writing on this
12 case jacket are your handwriting?
13   **A. In the red on the top -- top of the**
14 **AF- -- the word "AFIS hit," in the -- in the**
15 **left -- in the right hand at the top,**
16 **right-hand corner, that information with the**
17 **RD number, and that -- that particular area**
18 **there. And the block of information below**
19 **that looks like mine, and the other**
20 **information on the left looks like the**
21 **handwriting of Joseph Calvo.**
22   Q. Okay. So the RD number at the top is
23 Z594269; correct?
24   **A. Yes.**

150

1    Q. And that was the RD number we looked
2 at for the double homicide investigation, yes?
3    **A. Yes, yes.**
4    Q. On the right side of the envelope it
5 says, "jacket number four." Do you see that?
6    **A. Yes.**
7    Q. Is that your handwriting?
8    **A. Yes.**
9    Q. So this indicates that there are
10 jackets with the numbers 1 through 3
11 associated with -- with this case, RD number
12 Z594269; correct?
13       MS. CANONIE: Objection; form,
14 foundation, calls for speculation.
15       THE WITNESS: Yes.
16 BY MS. TARABISHY:
17   Q. And those would be the case jackets
18 that you reviewed when you were assigned to do
19 the work of reexamining the fingerprints in
20 this case; correct?
21       MS. CANONIE: Objection; form,
22 foundation.
23       THE WITNESS: Yes.
24

151

1 BY MS. TARABISHY:
2    Q. And based on your years of experience
3 as a latent print examiner in the latent print
4 unit, you were able to understand the
5 notations that were made on the original case
6 jacket; correct?
7        MS. CANONIE: Objection; form,
8 foundation, incomplete hypothetical.
9        THE WITNESS: Yes.
10 BY MS. TARABISHY:
11   Q. Let's go to page 3 of the PDF, please,
12 Bates Number City 20714. The RD number at the
13 top is again Z594269. Same number for
14 the -- for case jacket number four; correct?
15   **A. Yes.**
16   Q. And do you see the numbers 1995 in the
17 right?
18   **A. Yes.**
19   Q. And under that someone wrote, "three
20 jackets"?
21   **A. Yes.**
22   Q. And in the middle of the right portion
23 it says, "part A"?
24   **A. Yes.**

152

1    Q. So this indicates that this is the
2 first of the three case jackets?
3        MS. CANONIE: Objection; form,
4 foundation.
5        THE WITNESS: I don't recall what part
6 A would have meant exactly.
7        MS. TARABISHY: Can we go to page 5 of
8 the PDF, please, Bates Number City 20751.
9 BY MS. TARABISHY:
10   Q. Same RD number in the upper right
11 corner, Z594269; correct?
12   **A. Yes.**
13   Q. And again, we have the year 1995, and
14 a notation that says, "three jackets"?
15   **A. Yes.**
16   Q. And this one says, "part B." Do you
17 see that?
18   **A. Yes.**
19   Q. So do you take this to mean this would
20 be the second of the three jackets?
21       MS. CANONIE: Objection; form,
22 foundation.
23       THE WITNESS: Yeah. Again, I don't
24 recall how they labeled the individual parts

Transcript of Michael Malone
Conducted on November 9, 2021

153

1 or jackets.
2 BY MS. TARABISHY:
3    Q.  Okay.
4    **A.  Exactly, no.**
5    Q.  Let's go back to the first page,
6 please.  City 20781.
7    **A.  Yes.**
8    Q.  What did you place inside this case
9 jacket?
10   **A.  The -- the information pertaining to**
11 **the -- the -- the identification listed on the**
12 **front of the jacket.**
13   Q.  And what information would that be,
14 reports that you created?
15       MS. CANONIE:  Objection; form.
16       THE WITNESS:  Yes.
17 BY MS. TARABISHY:
18   Q.  And the latent print lifts on which
19 you indicated your identifications?
20       MS. CANONIE:  Objection; form,
21 foundation.
22       THE WITNESS:  Yes.
23 BY MS. TARABISHY:
24   Q.  And the negatives on which you also

154

1 made an identification?
2        MS. CANONIE:  Objection; form,
3 foundation, mischaracterizes prior testimony.
4        THE WITNESS:  Yes.
5 BY MS. TARABISHY:
6    Q.  And on that case jacket you summarized
7 the identifications that you made in this
8 case; correct?
9        MS. CANONIE:  Objection; form,
10 foundation, mischaracterizes prior testimony.
11       THE WITNESS:  Yeah.  Indications that
12 indicated on the front of this case jacket,
13 yes.
14 BY MS. TARABISHY:
15   Q.  So was it the policy of examiners in
16 the latent print unit to record their
17 identifications on the case jackets?
18       MS. CANONIE:  Objection; form.
19       THE WITNESS:  Yes.
20 BY MS. TARABISHY:
21   Q.  So on the left part of the case jacket
22 at the top it indicates that the examination
23 was requested by a court order.  Do you see
24 that; correct?

155

1    **A.  Yes.**
2    Q.  And then it has the name of the
3 suspect as "Davion Allen"?
4    **A.  Yes.**
5    Q.  For the names of evidence technicians
6 it says "Stankus" and "Karalow."  Do you see
7 that?
8    **A.  Yes.**
9    Q.  And in red it says [as read]:
10       "Additional E.T.-SEE CSP
11       report."
12 Correct?
13   **A.  Yes.**
14   Q.  Does this refer to the crime scene
15 processing reports from the original
16 investigation in 1995?
17       MS. CANONIE:  Objection; form,
18 foundation, calls for speculation.
19       THE WITNESS:  Yeah.  I don't -- I
20 don't recall.
21 BY MS. TARABISHY:
22   Q.  Where would you get the names of the
23 evidence technicians to record on the case
24 jacket?

156

1        MS. CANONIE:  Objection; form.
2        THE WITNESS:  From the crime scene
3 processing report and the lift tags.
4 BY MS. TARABISHY:
5    Q.  And the location of the latent prints
6 lift, where would you get this information?
7    **A.  From the lift tags and the crime scene**
8 **processing report.**
9    Q.  Going through the remainder of the
10 information on this case jacket, it records
11 the four identifications that were made to
12 Davion Allen's prints and the locations for
13 each; correct?
14       MS. CANONIE:  Objection; form,
15 document speaks for itself.
16       THE WITNESS:  Yes.
17 BY MS. TARABISHY:
18   Q.  So it says, "right thumb print," and
19 that was found on a black and orange sticker,
20 number 1A; correct?
21   **A.  I'm trying to locate that one.**
22   Q.  Where -- under the suspect's name,
23 Davion Allen.
24   **A.  The top left?**

Transcript of Michael Malone
Conducted on November 9, 2021

157

1    Q.  Yes.  Sorry.  Above his name.  I have
2  ridge impression from black and orange
3  sticker, and under that --
4    A.  Yes, I --
5        (Indiscernible simultaneous
6          colloquy.)
7  BY MS. TARABISHY:
8    Q.  -- name, mm-hmm, right thumb print on
9  black and orange sticker, number 1A in
10 parentheses; correct?
11   A.  Yes.
12   Q.  And then in the middle portion we have
13 the numbers 2, 3, and 4, continuing the
14 identification for Davion Allen; correct?
15       MS. CANONIE:  Objection; form,
16 document speaks for itself.
17       THE WITNESS:  Yes.
18 BY MS. TARABISHY:
19   Q.  Left index print found on hood of
20 green Pontiac Bonneville, lift number 12-2;
21 correct?
22       MS. CANONIE:  Form, document speaks
23 for itself.
24       THE WITNESS:  Yes.

158

1  BY MS. TARABISHY:
2    Q.  For number 3 we have the left palm
3  print found on fender of green Pontiac
4  Bonneville, lift number 13A; correct?
5        MS. CANONIE:  Objection; form,
6  document speaks for itself.
7        THE WITNESS:  This is kind of small.
8        MS. CANONIE:  Can you zoom in?
9        THE WITNESS:  Yeah.  Zoom in, yes.
10 BY MS. TARABISHY:
11   Q.  Can you see this?
12   A.  No, we're at number 2 or number 3?
13       MS. TARABISHY:  Three.
14       THE WITNESS:  Oh, 3, okay.
15 BY MS. TARABISHY:
16   Q.  Left palm print found on fender of
17 green Pontiac Bonneville, lift number 13A?
18   A.  Yes.
19   Q.  Yes?
20   A.  Uh-huh.
21   Q.  And for number 4 we have the right
22 palm print of Davion Allen found on driver's
23 side, front fender of green Pontiac
24 Bonneville, number 14B; correct?

159

1    A.  Yes.
2    Q.  Under that we have -- if you can
3  scroll down, please, recording another
4  identification that you and Mr. Calvo made,
5  and we have the name of the suspect as Lamont
6  Campbell; correct?
7    A.  Yes.
8    Q.  And it indicates that Lamont
9  Campbell's right thumb was found on passenger
10 front exterior door latch, on 1992 Pontiac
11 license plate DL5521; correct?
12       MS. CANONIE:  Objection; form,
13 document speaks for itself.
14       THE WITNESS:  Yes, yes, mm-hmm.
15 BY MS. TARABISHY:
16   Q.  Okay.  Let's look at the right side of
17 the jacket, please.
18       MS. TARABISHY:  Okay.  You can zoom
19 back in.
20 BY MS. TARABISHY:
21   Q.  Here we have the word "suspect"
22 crossed out, and we have the name "Khaled
23 Ibrahim"; correct?
24   A.  Yes.

160

1    Q.  And that's one of the victims; right?
2    A.  Yes.
3    Q.  And it indicates that his left index
4  print was found on green sticker luxury car;
5  correct?
6        MS. CANONIE:  Form; document speaks
7  for itself.
8        THE WITNESS:  Yes.
9        MS. TARABISHY:  Can you zoom back out,
10 please?
11 BY MS. TARABISHY:
12   Q.  In each of these three sections,
13 summarizing the identifications, we have your
14 name and star number as the examiner; correct?
15   A.  Yes.
16   Q.  And Joseph Calvo's name and star
17 number appear as the corroborator; correct?
18   A.  Yes.
19   Q.  Moving on to the next page, city
20 20714 -- I'm sorry.  Not this page, the page
21 number 3.
22   A.  Yes.
23   Q.  On the top left, this case jacket says
24 [as read]:

Transcript of Michael Malone
Conducted on November 9, 2021

41 (161 to 164)

161

1        "Elim - no comp. Victim
2          number 1 - Khaled."
3      Do you see that?
4   **A. Yes.**
5      Q. The date, 5, December '95, the
6  initials "JW" and then in parentheses "FPs
7  only"; correct?
8   **A. Yes.**
9      Q. When you reviewed this case jacket,
10 what did you interpret this notation to mean?
11        MS. CANONIE: Objection; form,
12 mischaracterized previous testimony.
13        THE WITNESS: It states no comparison
14 of the elim, elimination prints of victim, I.
15 Khaled.
16 BY MS. TARABISHY:
17     Q. So the "elim" is shorthand for
18 "elimination print"?
19        MS. CANONIE: Objection; form,
20 foundation.
21        THE WITNESS: Yes.
22 BY MS. TARABISHY:
23     Q. And "no comp" means no identification
24 was made?

162

1        MS. CANONIE: Objection; form,
2  foundation, calls for speculation.
3        THE WITNESS: No comparisons, which
4  means a negative comparison.
5  BY MS. TARABISHY:
6      Q. A negative comparison means that
7  Khaled Ibrahim's prints were excluded as the
8  source?
9        MS. CANONIE: Objection; form,
10 mischaracterizes the testimony.
11        THE WITNESS: That whatever prints he
12 compared to, to Khaled's prints did not match.
13 BY MS. TARABISHY:
14     Q. And these shorthand notations, the
15 "elim" and "no comp," is this language that
16 you would use in communicating fingerprint
17 examination results at the latent print unit?
18        MS. CANONIE: Objection; form,
19 foundation.
20        THE WITNESS: It was -- some of it is
21 used for abbreviation, yeah.
22 BY MS. TARABISHY:
23     Q. And then in parentheses it says, "FPs
24 only." What does that mean, in your

163

1  experience?
2        MS. CANONIE: Objection; form,
3  foundation, calls for speculation.
4        MS. BARBER: And I just have a
5  standing objection to you asking him to
6  interpret somebody else's report. I -- or
7  writing or what, I'm not sure that you've even
8  established that. But, you know, I understand
9  what you're trying to do, but I'm not sure
10 that this is the proper way to do that.
11 BY MS. TARABISHY:
12     Q. Can you answer the question,
13 Mr. Malone?
14  **A. Could you repeat that last one, ma'am?**
15     Q. Of course.
16     The "FPs only" parentheses, what does
17 that mean in your experience?
18        MS. CANONIE: Objection; form,
19 foundation, calls for speculation.
20        THE WITNESS: That there were only
21 fingerprints available for the elimination
22 person, I. Khaled, and there were no palm
23 prints available for comparison against the
24 palm impression.

164

1  BY MS. TARABISHY:
2      Q. Next, underneath that there's a
3  section that is partially typewritten, and it
4  says "AFIS hit" at the top. Do you see that?
5   **A. Yes.**
6      Q. So similar to the case jacket where
7  you recorded your identifications, this
8  section has the details on a fingerprint lift
9  that resulted in an AFIS hit; correct?
10        MS. CANONIE: Objection; form,
11 mischaracterizes prior testimony.
12        THE WITNESS: Yes.
13 BY MS. TARABISHY:
14     Q. And under that it says, in handwriting
15 [as read]:
16        "Open FP plus palm."
17     And in parentheses [as read]:
18        "No comp, AFIS."
19     What do you take this to mean based on
20 your experience?
21        MS. CANONIE: Objection; form,
22 foundation, calls for speculation.
23        THE WITNESS: That there were open
24 fingerprints and palm prints, and -- and that

Transcript of Michael Malone
Conducted on November 9, 2021

42 (165 to 168)

---

165

1  they were searched through AFIS, and there was
2  no hit.
3       MS. ROCHE:  Noor, if now's a good spot
4  to take a five-minute break, is that possible?
5  Or if you want to keep going to finish this
6  document, it's totally up to you, but I'm just
7  hoping we can take like a five-minute break.
8       MS. TARABISHY:  Yeah.  I just have a
9  few more questions on this document, but if
10 you need to take a break, it's fine if we take
11 it.
12      MS. ROCHE:  That's totally fine.  We
13 could finish this document.
14      MS. TARABISHY:  Okay.  Thank you.
15 BY MS. TARABISHY:
16   Q.  Let's go down to page 5 of the PDF
17 Bates Number City 20751.
18      MS. TARABISHY:  I'm sorry.  Go back.
19      MS. CANONIE:  I'm sorry.  Are we
20 looking at the same document?  I thought we
21 were staying on the same document.
22      MS. TARABISHY:  We're on the same
23 exhibit, but I'm sorry, I misspoke.  I meant
24 page 4, and that's Bates Number City 20715.

---

166

1  BY MS. TARABISHY:
2    Q.  Do you have that document with you,
3  Mr. Malone?
4    **A.  Yes, yes.**
5    Q.  At the top it says [as read]:
6       "Rodney Graham, number
7        959742.  No comp, in
8        parentheses, FP only.  11,
9        December '95."
10 And again, no comp -- well, let me ask
11 you, based on your experience and your review
12 of these case jackets when you took on this
13 assignment, what do you understand "no comp"
14 to mean?
15      MS. CANONIE:  Objection; form,
16 foundation mischaracterizes the testimony,
17 calls for speculation.  He did not write this
18 envelope.
19      THE WITNESS:  That it was a negative
20 comparison to that -- fingerprints of -- of
21 that individual, Rodney Graham.
22 BY MS. TARABISHY:
23   Q.  Next it says, "Charles Johnson" and
24 "Troshawn McCoy," and again says, "no comp."

---

167

1  So that again, means it was a negative
2  comparison to these two individuals; correct?
3       MS. CANONIE:  Objection; form, calls
4  for speculation, foundation.
5       THE WITNESS:  Yes.
6  BY MS. TARABISHY:
7    Q.  Following that, it has the names
8  Troshawn McCoy in a circle, then Charles
9  Johnson, Lashawn Ezell in a circle, and Larod
10 Styles, and again says, "no comp." 15 --
11      MS. CANONIE:  Object --
12 BY MS. TARABISHY:
13   Q.  -- February '96, palms, plus 26
14 February '96 FPS?
15      Based on your experience, what do you
16 interpret this to mean?
17      MS. CANONIE:  Objection; form, calls
18 for speculation.
19      Are you asking him to interpret it as
20 he sits here today or back then?
21      MS. TARABISHY:  I think my question
22 was clear.
23 BY MS. TARABISHY:
24   Q.  Can you answer, Mr. Malone?

---

168

1    **A.  That there was a negative comparison**
2  **to the subject.**
3    Q.  So they're both their palm prints and
4  their fingerprints?
5       MS. CANONIE:  Objection; form, calls
6  for speculation, mischaracterizes previous
7  testimony.
8       THE WITNESS:  Yeah.
9  That -- I -- that, I couldn't say.  I can't
10 understand from this.
11 BY MS. TARABISHY:
12   Q.  Do you see underneath it says in big
13 type "no comp, palms"?
14   **A.  Yeah, but it's down there by itself so**
15 **it's, you know, so I can't say as to what**
16 **that -- if that's meant for all those**
17 **individuals or not.  So, yeah, I can't say.**
18   Q.  Fair enough.
19      No comp palms by itself means no -- no
20 identification to a palm print?
21      MS. CANONIE:  Objection; form,
22 mischaracterizes previous testimony.
23      THE WITNESS:  In this -- that being by
24 itself I couldn't say.

---

Transcript of Michael Malone
Conducted on November 9, 2021

43 (169 to 172)

169

1  BY MS. TARABISHY:
2      Q.  Let's scroll down to page 5 of the
3  PDF, please.  That's Bates Number City 20751.
4  In the upper left corner we again have "elim,
5  no comp.  Victim number 1, Khaled Ibrahim."
6  And then "elim, no comp.  Victim number 2,
7  Yosef Ali."
8          Do you see that?
9      A.  Yes.
10     Q.  So this indicates that the latent
11 prints in this jacket were compared to the
12 elimination prints of the two victims, and the
13 result was an exclusion; correct?
14         MS. CANONIE:  Objection; form,
15 foundation, mischaracterizes previous
16 testimony, calls for speculation.
17         THE WITNESS:  There was a negative
18 comparison to those two elimination -- test of
19 elimination prints.
20 BY MS. TARABISHY:
21     Q.  Under that it says [as read]:
22             "Six lifts, no ID.  One
23             good."
24         Under that [as read]:

170

1              "Not for AFIS.  Five not
2              suitable."
3          What do you interpret this to mean
4  based on your experience?
5          MS. CANONIE:  Objection; form,
6  foundation, calls for speculation.
7          THE WITNESS:  Oh, I can't say.  That's
8  too vague for me to say.
9  BY MS. TARABISHY:
10     Q.  Let's go down to page 7 of the PDF,
11 Bates Number City 20763.
12     A.  I have it.
13     Q.  We again have [as read]:
14             "Elim, no comp, FP only.
15             Victim number 1, Khaled
16             Ibrahim.  No comp.  FP
17             only.  Victim number 2
18             Yosef Ali."
19         What do you interpret this to mean
20 based on your experience?
21         MS. CANONIE:  Objection; form,
22 foundation, calls for speculation.
23         THE WITNESS:  That these two victims,
24 there was a negative comparison to the prints

171

1  of these two victims.
2  BY MS. TARABISHY:
3      Q.  Negative comparison to the latent
4  prints contained in this jacket?
5          MS. CANONIE:  Objection; form,
6  foundation, mischaracterizes previous
7  testimony, calls for speculation.
8          THE WITNESS:  That, I couldn't say.
9  That's not clear as to which
10 particular -- whether it was just the prints
11 in that jacket or not.
12 BY MS. TARABISHY:
13     Q.  Under that it says [as read]:
14             "Nine negs.  No ID.  One
15             suitable.  No comp AFIS."
16         And what do you interpret this to mean
17 based on your experience?
18         MS. CANONIE:  Objection; form,
19 foundation, calls for speculation.
20         THE WITNESS:  I can't.  That's too
21 vague.
22         MS. TARABISHY:  Now would be a good
23 time.  I'm done with this exhibit.  Thank you.
24 We can take a quick five-minute break.

172

1          THE VIDEOGRAPHER:  We are going off
2  the record at 1:47.
3              (A recess was had.)
4          THE VIDEOGRAPHER:  We are back on the
5  record at 1:58.
6  BY MS. TARABISHY:
7      Q.  Before we took a break --
8          MS. TARABISHY:  Can we pull up the
9  Exhibit 336 again, please?
10         And go to page 3, Bates Number City
11 20714.  Scroll down to the bottom left,
12 please.  Thank you.
13 BY MS. TARABISHY:
14     Q.  So before we took a break, I asked you
15 about some notations on the old case jackets
16 and you said they were vague.  Remember that,
17 Mr. Malone?
18     A.  Yes.
19     Q.  So let's -- looking at the lower left
20 where it says "eight lifts," what do you take
21 "eight lifts" to mean based on your
22 experience?
23         MS. CANONIE:  Objection; form,
24 foundation, calls for speculation.

Transcript of Michael Malone
Conducted on November 9, 2021

44 (173 to 176)

173

1    THE WITNESS: Eight lifts, eight lifts
2 in the jacket.
3 BY MS. TARABISHY:
4    Q. And next to that, "1 ID." Would that
5 indicate that one identification was made out
6 of the latent prints in this jacket?
7        MS. CANONIE: Objection; form,
8 foundation, calls for speculation,
9 mischaracterizes previous testimony.
10       THE WITNESS: No. I couldn't say what
11 that would mean exactly. It notes specific
12 information right there.
13 BY MS. TARABISHY:
14    Q. And the "four palms, 4 FPs," what do
15 you take this to mean based on your
16 experience?
17       MS. CANONIE: Objection; form,
18 foundation, calls for speculation.
19       THE WITNESS: Without any other
20 information, that's too vague for me to say
21 what they mean.
22 BY MS. TARABISHY:
23    Q. Now, going to page 5 of the PDF Bates
24 Number City 20751, do you see where it says

174

1 "six lifts"?
2    **A. Okay. One second. That is -- I'm**
3 **sorry. What was that again, can you repeat**
4 **that part?**
5    Q. "Six lifts," do you see that --
6    **A. Yes.**
7    Q. -- in the left --
8    **A. Mm-hmm.**
9    Q. Do you take this to mean there are six
10 lifts inside this case jacket?
11       MS. CANONIE: Objection; form,
12 foundation, calls for speculation,
13 mischaracterizes previous testimony.
14       THE WITNESS: Yeah, I do. It --
15 without it being more specific, I couldn't
16 say.
17 BY MS. TARABISHY:
18    Q. And the "no ID," what do you --
19       MS. CANONIE: Objection; form.
20 BY MS. TARABISHY:
21    Q. -- take this to mean based on your
22 experience?
23       MS. CANONIE: Objection; form,
24 foundation, calls for speculation.

175

1    THE WITNESS: That without any
2 specifics with it enclosed in the parentheses,
3 I couldn't say what they -- what they mean
4 there.
5 BY MS. TARABISHY:
6    Q. So in your work as a latent print
7 examiner, would you use the notation "no ID"
8 on a case jacket?
9       MS. CANONIE: Object to form,
10 incomplete hypothetical.
11       THE WITNESS: No, not by itself, no.
12 BY MS. TARABISHY:
13    Q. How would you -- what do you mean "not
14 by itself"?
15    **A. That that information there, I**
16 **couldn't -- I don't know what**
17 **he -- what -- what he's referring to.**
18    Q. If you -- when you use the word "no
19 ID," not on this envelope, what do you mean by
20 that?
21       What is the --
22       MS. CANONIE: Objection.
23 BY MS. TARABISHY:
24    Q. -- typical use of the phrase "no ID"

176

1 in the latent print unit?
2       MS. CANONIE: Objection; form,
3 foundation. You -- are you asking about him
4 or the unit?
5 BY MS. TARABISHY:
6    Q. The usage of the word "no ID" in the
7 latent print unit where you worked for two
8 decades.
9       MS. CANONIE: Objection; form,
10 foundation, calls for speculation, incomplete
11 hypothetical.
12 BY MS. TARABISHY:
13    Q. You can answer.
14    **A. No, the word -- no I -- the word "no**
15 **ID," that wasn't -- that's not a term that**
16 **while I was a latent print examiner, that we**
17 **used.**
18    Q. An ID means an identification;
19 correct?
20       MS. CANONIE: Objection; form,
21 foundation, mischaracterizes previous
22 testimony.
23       THE WITNESS: "No ID" is not a term
24 that we would write or use.

Transcript of Michael Malone
Conducted on November 9, 2021

45 (177 to 180)

177

1 BY MS. TARABISHY:
2    Q.  And my question was:  When you used
3 the word "ID," do you mean an identification?
4         MS. CANONIE:  Objection; form,
5 mischaracterizes previous testimony, calls for
6 speculation.
7         THE WITNESS:  We wouldn't use the word
8 "ID" by itself.
9 BY MS. TARABISHY:
10    Q.  Next to the "no ID" in parentheses it
11 says [as read]:
12         "One good.  Not for AFIS."
13      What do you interpret this to mean,
14 based on your experience?
15         MS. CANONIE:  Objection; form,
16 foundation, asked and answered, calls for
17 speculation.
18         THE WITNESS:  Without them referring
19 to anything in particular, I can't say what
20 you mean.
21 BY MS. TARABISHY:
22    Q.  What do you mean by "anything in
23 particular"?
24      Wouldn't they be referring to the

178

1 latent prints included in this jacket?
2         MS. CANONIE:  Objection; form, calls
3 for speculation.
4         THE WITNESS:  That -- I don't know
5 that.  I couldn't say.
6 BY MS. TARABISHY:
7    Q.  Next to that it says [as read]:
8         "Five not suitable."
9      What do you interpret this to mean
10 based on your identifi- -- based on your
11 experience.
12         MS. CANONIE:  Objection; form,
13 foundation, calls for speculation.
14         THE WITNESS:  With it not referring to
15 anything in particular, I couldn't say.
16 BY MS. TARABISHY:
17    Q.  Would it mean there are five prints
18 that are not suitable for comparison?
19         MS. CANONIE:  Objection; form, calls
20 for speculation, asked and answered.
21         THE WITNESS:  Again, by itself I
22 couldn't say what they're talking about.
23         MS. TARABISHY:  Let's go to page 7 of
24 the PDF, please.  That's Bates Number City

179

1 20763.
2 BY MS. TARABISHY:
3    Q.  Do you see in the left portion under
4 the line where it says "9 NEGS"?
5    **A.  The left portion, 9 -- yes, I see**
6 **that.**
7    Q.  What do you interpret "9 NEGS" to mean
8 based on your experience?
9         MS. CANONIE:  Objection; form,
10 foundation, calls for speculation.
11         THE WITNESS:  Well, I can't -- I don't
12 know what they might be indicating there.
13 BY MS. TARABISHY:
14    Q.  Is this a case jacket that you looked
15 at when you initially received the assignment
16 to work on the Charles Johnson case by
17 Mr. Simon?
18    **A.  I was -- this would have been included**
19 **with the other jacket.  So, yes, I would have**
20 **seen it, yes.**
21    Q.  And if I'm understanding your
22 testimony today, when you looked at the word
23 "9 NEGS," you just didn't know what it meant?
24         MS. CANONIE:  Objection; form,

180

1 mischaracterizes previous testimony.
2         THE WITNESS:  Well, we --
3         MS. CANONIE:  -- also speculation.
4         THE WITNESS:  We -- our -- our job
5 wasn't at that time to necessarily read all
6 the stuff that was on the jacket.  We were
7 just doing what was in the court order.
8 BY MS. TARABISHY:
9    Q.  Right.  And my question was:
10 When -- as part of the work that you did
11 pursuant to the court order, you looked at the
12 case jacket.  You were saying that you did not
13 understand what "9 NEGS" meant.  This is my
14 question:  Do you understand what "9 NEGS"
15 means?
16         MS. CANONIE:  And that was compound.
17 Can you ask your exact -- your question again?
18 BY MS. TARABISHY:
19    Q.  Yes.  My question is:  Do you
20 understand what "9 NEGS" means?
21         MS. CANONIE:  Objection; asked and
22 answered, calls for spec- -- form, and calls
23 for speculation.
24         THE WITNESS:  Well, we didn't have to

Transcript of Michael Malone
Conducted on November 9, 2021

46 (181 to 184)

181

1 understand what it meant, because we weren't
2 reviewing what the other examiners did.  So we
3 would have noted -- we would have observed
4 what they wrote on the jacket, but it really
5 didn't matter.  So I really wouldn't have to
6 understand or look into what "9 NEGS" meant.
7 So I don't know what it meant.
8 BY MS. TARABISHY:
9    Q.  And as you sit here today, what is
10 your understanding of what "9 NEGS" means?
11       MS. CANONIE:  Objection; form, asked
12 and answered.
13       THE WITNESS:  On this case jacket, I
14 don't know what it means.
15 BY MS. TARABISHY:
16    Q.  And what about in the profession of
17 latent print examination, what would the word
18 "NEG" be shorthand for?
19       MS. CANONIE:  Objection; form, calls
20 for speculation, asked and answered.
21       THE WITNESS:  That information by
22 itself, I don't know.  It can mean a lot of
23 things, so I can't say.
24

182

1 BY MS. TARABISHY:
2    Q.  A lot of things like what?
3    A.  I wouldn't speculate.
4    Q.  I'm not asking you to speculate.  You
5 just said it could mean a lot of things in
6 your profession.  So a lot of things like
7 what?  Can you list --
8    A.  My --
9       (Indiscernible simultaneous
10       colloquy.)
11       THE COURT REPORTER:  I'm sorry.
12       THE WITNESS:  -- could mean anything.
13       THE COURT REPORTER:  I'm sorry.  Can
14 you repeat that?  I didn't get the beginning.
15       THE WITNESS:  Me or her?
16       THE COURT REPORTER:  You, Mr. Malone.
17 My apologies.
18       THE WITNESS:  Yes.  I don't know what
19 "NEGS" might mean.
20 BY MS. TARABISHY:
21    Q.  You said it could mean a lot of
22 different things; correct?
23       MS. CANONIE:  Objection;
24 mischaracterizes previous testimony.

183

1       THE WITNESS:  Correct.
2 BY MS. TARABISHY:
3    Q.  So can you list those different things
4 for me?
5    A.  No.
6    Q.  So it is your testimony today under
7 oath Mr. Malone that you do not know what
8 "NEGS" means in your decades of experience at
9 the latent print unit?  Am I understanding
10 that --
11       MS. CANONIE:  Objection --
12 BY MS. TARABISHY:
13    Q.  -- correctly?
14       MS. CANONIE:  Objection; form, asked
15 and answered.  He's already said he -- you
16 need -- "NEGS" could mean -- he
17 doesn't -- there's no context.
18       MS. TARABISHY:  I'm sorry, Carson.  I
19 got your objection, now it's time for
20 Mr. Malone to please answer.
21       MS. CANONIE:  Calls for speculation.
22       THE WITNESS:  No.  I do not know what
23 "NEGS" means.
24       MS. TARABISHY:  You can take down the

184

1 exhibit.  Thank you.
2 BY MS. TARABISHY:
3    Q.  Do you stand by the work that you and
4 Mr. Calvo did in this case?
5       MS. CANONIE:  Objection; form.
6       THE WITNESS:  Yes.
7 BY MS. TARABISHY:
8    Q.  Do you have a reasonable degree of
9 confidence in the identifications that you and
10 Mr. Calvo did in this case?
11       MS. BARBER:  Those are asked -- those
12 questions are asked and answered.
13 BY MS. TARABISHY:
14    Q.  You said, "yes"?
15    A.  Yes.
16    Q.  Based on your review of the documents
17 and latent print evidence in this case, there
18 was no indication that Charles Johnson, Larod
19 Styles, Lashawn Ezell or Troshawn McCoy were
20 matched to any of the latent prints recovered
21 from the crime scene in this case; correct?
22       MS. CANONIE:  Objection; form,
23 foundation, calls for speculation,
24 mischaracterizes previous testimony.

185

1       THE WITNESS: I'm sorry. Repeat that
2   part again, that last question.
3       MS. TARABISHY: Can you read the
4   question back?
5       THE COURT REPORTER: Okay. I might
6   have butchered some of the names, but please
7   stand by.
8           (The requested testimony
9           was read back.)
10      MS. CANONIE: Did you get my
11  objection?
12      THE COURT REPORTER: I did get the
13  objection, correct.
14      MS. BARBER: I'm just going to object
15  also that it's vague as to what you're
16  referring to, what documents, what it asks,
17  et cetera.
18  BY MS. TARABISHY:
19      Q. You can answer, Mr. Malone?
20      **A. Yeah, I don't recall.**
21      Q. You don't recall seeing any
22  documentation indicating that there was a
23  fingerprint match to Charles Johnson, Larod
24  Styles, Lashawn Ezell or Troshawn McCoy;

186

1   correct?
2       MS. CANONIE: Objection; form,
3   mischaracterizes previous testimony.
4       THE WITNESS: Not without reviewing
5   any documents.
6       MS. TARABISHY: I have no more
7   questions for you, Mr. Malone. Does any of
8   the other attorneys have questions?
9       MS. CANONIE: I do. I don't know if
10  plaintiffs do.
11      MS. ROCHE: None for Ezell.
12      MR. NEULEIB: No questions for McCoy.
13      MS. CHOI: None from Alesia.
14      MR. MAIONE: None from Styles.
15      MS. CANONIE: Okay. Can you pull up
16  Exhibit 214, please?
17      THE TECHNICIAN: One moment.
18          EXAMINATION
19  BY MS. CANONIE:
20      Q. Mr. Malone, earlier you testified
21  regarding this document. Is this your report?
22      **A. Yes.**
23      MS. CANONIE: Can you pull up 216,
24  please?

187

1   BY MS. CANONIE:
2       Q. I believe -- scratch that.
3       Earlier you testified this document
4   was a -- addendum to that previous report; is
5   that correct?
6       **A. Yes.**
7       Q. And these two reports summarize or
8   indicate -- summarizes the work you did on
9   this case; is that correct?
10      **A. Yes.**
11      Q. Any work that you did on this case
12  would be summarized here?
13      MS. ROCHE: Objection; form.
14  BY MS. CANONIE:
15      Q. You also testified earlier that the
16  work you did on this case was pursuant to a
17  court order that we looked at extensively
18  today; is that correct?
19      **A. Yes.**
20      Q. So is it fair to say any work
21  summarized, or any work -- strike that.
22      So any work you did was according to
23  the direction of the court order?
24      MS. TARABISHY: Objection; form.

188

1       THE WITNESS: Yes.
2   BY MS. CANONIE:
3       Q. Okay. Earlier today Ms. Tarabishy
4   asked you about doing an analysis of the other
5   latent print for which Mr. Moses did not
6   have -- or did not send a tracing of.
7       Do you recall that testimony?
8       **A. Yes.**
9       Q. Based -- or you indicated that
10  you -- scratch that.
11      Did she also ask you -- or scratch
12  that.
13      Do you recall what you did, if
14  anything, with the other prints that did not
15  have a tracing?
16      MS. TARABISHY: Objection; form.
17      THE WITNESS: No.
18  BY MS. CANONIE:
19      Q. You don't recall what you did or
20  didn't do or --
21      **A. I don't recall what I did or didn't**
22  **do.**
23      Q. And anything you would have done with
24  those prints -- or that did not have a

189

1  tracing, would you have recorded it in your
2  report?
3       MS. TARABISHY: Objection; form.
4       THE WITNESS: Yes.
5  BY MS. CANONIE:
6    Q. Would you have done any additional
7  analysis that was not set forth in the court
8  order we looked at today?
9       MS. TARABISHY: Objection; form.
10      THE COURT REPORTER: I'm sorry. Can
11 you repeat that, Mr. Malone? I didn't get the
12 answer.
13      THE WITNESS: No, I would have not.
14 No, I would have not.
15      MS. CANONIE: Okay. That is all my
16 questions.
17      MS. TARABISHY: I have no further
18 questions.
19      MS. BARBER: I don't think I put it on
20 the record earlier, but I don't have any
21 questions.
22      MS. TARABISHY: Thank you for your
23 time, Mr. Malone.
24      THE VIDEOGRAPHER: If there are no

190

1  further questions, this marks the end of the
2  deposition of Michael Malone. We are going
3  off the record at 2:18.
4       THE COURT REPORTER: And would anyone
5  like to order the transcript?
6       MS. TARABISHY: Yeah, we'll order one.
7       MS. CANONIE: We'll order it as well.
8  * * * FURTHER DEPONENT SAITH NOT * * *
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

191

1  STATE OF ILLINOIS  )
2                      ) SS:
3  COUNTY OF C O O K  )
4    I, ANGELA C. LOISI, CSR, RPR, FCRR, an
5  Officer of the Court, do hereby certify that
6  heretofore, to wit, on November 9, 2021,
7  remotely appeared before me, from Cook
8  County, Illinois, MICHAEL MALONE, in a cause
9  now pending and undetermined in the United
10 States District Court for the Northern
11 District of Illinois Eastern Division,
12 wherein LASHAWN EZELL, et al., are the
13 plaintiffs, and CITY OF CHICAGO, et al., are
14 the defendants.
15   I further certify that the said witness
16 was first duly sworn to testify the truth,
17 the whole truth and nothing but the truth in
18 the cause aforesaid; that the testimony then
19 given by said witness was reported
20 stenographically by me in the remote
21 presence of the said witness, and afterwards
22 reduced to digital format by Computer-Aided
23 Transcription, and the foregoing is a true
24 and correct transcript of the testimony so

192

1  given by said witness as aforesaid.
2    I further certify that the signature to
3  the foregoing deposition was not requestd
4  for the respective parties.
5    I further certify that the taking of
6  this deposition was pursuant to notice, and
7  that remotely present at the deposition were
8  the attorneys hereinbefore mentioned.
9    I further certify that I am not counsel
10 for nor in any way related to the parties to
11 this suit, nor am I in any way interested in
12 the outcome thereof.
13   IN TESTIMONY WHEREOF: I have hereunto
14 set my verified digital signature this
15 November 9, 2021.
16
17
18
19
20   _Angela C. Loisi_
21 _____
22 Angela C. Loisi, CSR, RPR, FCRR
23
24

Transcript of Michael Malone
Conducted on November 9, 2021
49

**A**

**a-b**
101:20, 101:22
**a-f-i-s**
17:20
**a-i**
17:20
**a-p-i-s**
73:12
**abbreviated**
64:14
**abbreviation**
162:21
**aberdeen**
3:4
**ability**
12:1, 12:5,
87:22
**able**
34:23, 51:19,
55:12, 56:17,
72:24, 85:1,
151:4
**about**
15:12, 15:19,
15:22, 19:4,
19:23, 22:8,
24:2, 25:11,
31:11, 32:21,
41:12, 54:22,
55:22, 57:3,
57:19, 57:24,
58:5, 59:13,
59:23, 61:3,
66:13, 67:4,
71:13, 80:15,
112:5, 172:15,
176:3, 178:22,
181:16, 188:4
**above**
114:15, 120:16,
130:23, 131:12,
157:1
**academy**
19:3, 20:12
**access**
70:24, 71:7,

71:14, 72:20,
80:13, 80:15,
134:9, 134:13
**according**
75:19, 76:4,
79:9, 123:19,
187:22
**accurate**
12:8, 117:3
**active**
28:21
**actual**
60:21
**actually**
66:13
**addendum**
119:6, 187:4
**additional**
124:3, 124:7,
124:15, 155:10,
189:6
**adhesive**
37:17
**adjusted**
80:13
**af**
149:14
**affect**
12:1, 12:5,
34:16, 34:21
**afis**
16:20, 16:21,
17:11, 17:14,
17:17, 17:18,
17:20, 18:3,
26:6, 26:9,
40:7, 40:10,
40:11, 40:17,
40:22, 45:12,
47:5, 47:7,
47:11, 47:16,
47:23, 48:1,
49:11, 65:12,
71:20, 71:23,
72:3, 72:8,
72:11, 72:13,
72:18, 72:22,
73:1, 74:4,

74:10, 74:12,
74:15, 75:15,
76:18, 77:14,
78:15, 78:23,
79:5, 80:12,
81:18, 82:16,
82:19, 83:5,
83:11, 83:19,
84:7, 85:24,
86:12, 86:14,
89:9, 91:4,
92:20, 94:15,
112:10, 113:20,
114:1, 114:2,
114:5, 114:7,
114:11, 114:16,
116:8, 116:16,
133:19, 149:14,
164:4, 164:9,
164:18, 165:1,
170:1, 171:15,
177:12
**afis's**
76:5, 79:10
**aforesaid**
191:18, 192:1
**after**
11:16, 21:3,
21:20, 25:7,
32:13, 34:6,
37:18, 38:5,
39:3, 41:22,
47:2, 50:5,
52:24, 54:11,
54:21, 56:16,
67:16, 72:1,
76:9, 103:3,
122:8, 122:22,
124:15, 147:12
**afterwards**
191:21
**again**
22:17, 25:7,
30:1, 38:14,
54:18, 76:1,
81:13, 85:5,
88:10, 88:14,
92:7, 99:8,

100:16, 104:4,
104:17, 107:24,
111:13, 139:11,
140:22, 140:23,
148:21, 151:13,
152:13, 152:23,
166:10, 166:24,
167:1, 167:10,
169:4, 170:13,
172:9, 174:3,
178:21, 180:17,
185:2
**against**
26:7, 40:18,
40:20, 45:9,
45:11, 163:23
**agree**
123:16
**agrees**
51:11
**ahead**
11:17, 18:7,
24:13, 46:6,
60:4
**al**
1:10, 1:20,
1:30, 1:40, 8:3,
8:4, 191:12,
191:13
**alesia**
6:8, 9:10,
186:13
**alexa**
4:5, 8:19
**algorithm**
75:20, 76:5,
79:10, 80:4,
80:6, 80:8,
81:4, 81:13
**algorithms**
80:10, 81:8
**ali**
169:7, 170:18
**all**
15:12, 35:17,
37:11, 79:20,
80:15, 86:18,
115:9, 116:11,

Transcript of Michael Malone
Conducted on November 9, 2021                                    50

| | | | |
|---|---|---|---|
| 118:9, 119:20, 122:19, 139:10, 148:20, 149:2, 168:16, 180:5, 189:15 | 51:9 | 173:19, 175:1, 184:20, 185:21, 186:5, 186:7, 187:11, 187:20, 187:21, 187:22, 189:6, 189:20, 192:10, 192:11 | **approximately** 12:17, 13:17, 19:8, 21:2, 21:15, 26:18, 28:3, 31:11 |

**angela**
2:8, 9:16,
191:4, 192:22

**allen**
89:19, 90:7,
91:14, 92:3,
93:9, 93:22,
98:1, 101:17,
104:22, 107:15,
112:20, 113:7,
114:19, 132:7,
138:1, 138:24,
139:14, 140:15,
144:16, 145:12,
146:6, 155:3,
156:23, 157:14,
158:22

**another**
13:22, 50:18,
51:8, 59:5,
59:6, 80:8,
159:3

**anyone**
16:4, 190:4

**arch**
71:6

**area**
26:17, 120:14,
149:17

**anything**
13:11, 57:19,
58:5, 177:19,
177:22, 178:15,
182:12, 188:14,
188:23

**around**
27:3, 28:2

**answer**
10:22, 11:4,
11:6, 11:17,
15:10, 17:4,
18:7, 20:10,
37:6, 71:17,
75:24, 85:1,
103:13, 139:20,
163:12, 167:24,
176:13, 183:20,
185:19, 189:12

**allen's**
102:16, 106:4,
108:16, 132:24,
133:19, 138:17,
141:16, 145:1,
145:6, 145:19,
146:14, 156:12

**anywhere**
69:2, 69:14,
120:10

**arrest**
64:20, 142:18,
143:20, 144:7,
144:16, 145:4,
146:20

**apis**
73:12, 113:20,
114:2

**arrested**
16:23

**arrow**
71:10, 103:21

**answered**
30:20, 37:3,
37:6, 83:13,
177:16, 178:20,
180:22, 181:12,
181:20, 183:15,
184:12

**apologies**
182:17

**asked**
30:19, 37:5,
83:12, 172:14,
177:16, 178:20,
180:21, 181:11,
181:20, 183:14,
184:11, 184:12,
188:4

**along**
60:8, 72:19,
109:23

**apologize**
46:3

**appear**
144:21, 147:2,
160:17

**answers**
32:13

**already**
55:20, 116:22,
183:15

**any**
11:20, 11:24,
12:4, 12:7,
14:5, 14:11,
14:15, 14:19,
20:5, 22:20,
23:16, 24:2,
24:7, 27:18,
27:24, 28:4,
30:16, 31:22,
44:21, 45:8,
45:10, 46:11,
46:20, 50:14,
53:10, 54:22,
57:24, 58:23,
60:20, 60:24,
103:6, 112:5,
114:7, 116:6,
134:13, 138:11,

**appearances**
3:1, 4:1, 5:1,
6:1

**asking**
41:12, 56:2,
124:2, 163:5,
167:19, 176:3,
182:4

**appeared**
191:7

**also**
8:19, 20:24,
33:24, 46:20,
48:21, 53:17,
54:4, 63:14,
63:16, 69:17,
69:20, 77:15,
77:16, 78:15,
92:14, 114:22,
153:24, 180:3,
185:15, 187:15,
188:11

**appearing**
2:10

**asks**
185:16

**applied**
20:4

**assign**
43:5, 58:23,
59:5

**apprenticeship**
21:11

**assigned**
19:5, 28:24,
42:4, 57:14,
57:16, 58:16,
59:14, 60:2,
150:18

**appropriate**
24:3

**approval**
50:4

**analysis**
20:17, 44:20,
188:4, 189:7

**approves**
50:5

**assignment**
27:16, 41:18,
43:2, 57:9,

**analyze**
26:3, 44:9,

**approximate**
19:4, 26:14,
26:15, 71:8

57:19, 58:18,
60:7, 62:4,
125:11, 166:13,
179:15
**associated**
150:11
**association**
24:15
**assume**
11:6
**attached**
72:16
**attorney**
11:13, 13:5,
13:7, 14:22,
42:20
**attorney's**
63:2, 88:24
**attorneys**
10:5, 11:13,
16:4, 55:4,
90:15, 186:8,
192:8
**author**
14:11, 116:24
**automated**
40:11, 73:11
**availability**
19:24
**available**
40:23, 41:6,
42:5, 43:11,
43:17, 58:21,
87:14, 163:21,
163:23
**avenue**
4:6
**award**
28:12
**awards**
27:18, 28:5
**aware**
30:9, 30:13

————— **B** —————
**b**
70:13, 109:19,
158:24

**back**
19:21, 33:7,
38:17, 38:22,
50:6, 65:11,
66:24, 67:17,
70:1, 112:6,
116:2, 118:4,
118:5, 121:6,
125:7, 136:24,
138:19, 138:21,
140:12, 141:2,
153:5, 159:19,
160:9, 165:18,
167:20, 172:4,
185:4, 185:9
**barber**
5:12, 9:7,
56:11, 66:7,
66:16, 163:4,
184:11, 185:14,
189:19
**based**
16:23, 83:3,
151:2, 164:19,
166:11, 167:15,
170:4, 170:20,
171:17, 172:21,
173:15, 174:21,
177:14, 178:10,
179:8, 184:16,
188:9
**basically**
16:16
**basis**
46:1, 59:20
**bates**
61:18, 68:15,
73:18, 85:16,
88:14, 96:10,
96:19, 97:18,
99:12, 106:10,
108:22, 111:14,
119:9, 127:21,
129:9, 134:17,
137:1, 139:3,
139:5, 139:6,
139:8, 140:2,
140:13, 141:8,

141:9, 142:23,
143:4, 143:17,
144:12, 145:10,
145:24, 146:17,
148:6, 148:17,
148:20, 151:12,
152:8, 165:17,
165:24, 169:3,
170:11, 172:10,
173:23, 178:24
**bathroom**
66:10
**bearing**
89:19, 91:13,
93:9, 94:21,
112:20
**beatrice**
20:23
**became**
40:23
**because**
42:21, 47:18,
52:15, 77:14,
95:22, 122:19,
143:3, 181:1
**become**
21:17
**becoming**
20:6
**been**
9:22, 16:22,
26:16, 29:15,
46:9, 46:13,
60:20, 74:20,
84:11, 114:13,
126:23, 128:21,
128:23, 179:18
**before**
10:10, 11:4,
12:12, 14:22,
15:6, 15:20,
20:2, 32:3,
32:20, 57:18,
67:3, 84:14,
84:19, 122:14,
125:22, 126:5,
126:11, 172:7,
172:14, 191:7

**begin**
44:4, 48:13
**beginning**
76:22, 182:14
**begins**
8:1
**behalf**
8:21, 8:23,
9:3, 9:5
**behind**
25:11
**being**
13:4, 57:13,
71:5, 168:23,
174:15
**believe**
24:19, 25:8,
30:10, 31:11,
64:7, 83:14,
83:24, 86:2,
118:21, 118:22,
187:2
**belonging**
82:2, 136:4
**below**
78:19, 78:20,
149:18
**besides**
80:4
**best**
102:2, 117:3
**better**
61:14
**between**
28:2, 36:18,
80:9
**big**
50:13, 168:12
**bit**
127:23, 129:3,
139:7
**black**
112:3, 130:7,
130:10, 138:17,
139:1, 139:15,
139:21, 139:24,
140:14, 141:17,
156:19, 157:2,

Transcript of Michael Malone
Conducted on November 9, 2021

52

157:9
**block**
77:22, 149:18
**blue**
101:10, 104:17,
107:3, 107:23,
109:15, 110:1,
118:1, 129:13,
130:16, 130:20,
132:5, 135:10
**bonneville**
89:6, 90:18,
92:11, 97:8,
98:3, 101:5,
104:9, 106:20,
157:20, 158:4,
158:17, 158:24
**booked**
16:17
**both**
81:14, 102:14,
106:3, 108:15,
111:6, 132:23,
136:19, 144:3,
144:21, 168:3
**bottom**
75:13, 77:24,
78:19, 79:23,
80:1, 88:20,
104:3, 107:23,
116:23, 129:5,
129:11, 132:4,
138:8, 172:11
**boulevard**
3:13, 4:14
**box**
78:8, 78:12,
144:4, 144:24,
147:2
**boxes**
77:16, 144:22
**break**
11:20, 11:21,
32:9, 32:12,
33:2, 66:11,
66:15, 66:19,
67:3, 125:2,
165:4, 165:7,

165:10, 171:24,
172:7, 172:14
**breaking**
66:9
**brings**
15:2, 57:4
**brunt**
4:5, 8:19
**butchered**
185:6

**C**

**call**
13:16, 38:11,
39:6
**called**
9:22, 24:10,
31:22, 50:24,
73:10, 74:21,
78:3, 78:21
**calls**
26:22, 27:5,
29:6, 31:2,
35:7, 35:15,
41:1, 42:13,
44:8, 49:1,
49:8, 51:24,
52:12, 54:16,
55:5, 55:10,
56:20, 87:17,
99:4, 100:3,
103:10, 116:18,
138:5, 150:14,
155:18, 162:2,
163:3, 163:19,
164:22, 166:17,
167:3, 167:17,
168:5, 169:16,
170:6, 170:22,
171:7, 171:19,
172:24, 173:8,
173:18, 174:12,
174:24, 176:10,
177:5, 177:16,
178:2, 178:13,
178:19, 179:10,
180:22, 181:19,
183:21, 184:23

**calvo**
69:10, 87:6,
87:7, 87:10,
87:15, 88:18,
89:22, 91:19,
93:14, 95:1,
98:18, 99:3,
102:12, 102:21,
105:17, 105:23,
108:8, 108:11,
110:22, 111:2,
112:23, 122:9,
123:1, 123:10,
123:21, 124:17,
132:19, 136:10,
136:15, 137:20,
138:3, 144:8,
145:5, 145:18,
146:13, 147:6,
149:21, 159:4,
184:4, 184:10
**calvo's**
87:21, 97:11,
101:21, 102:8,
120:22, 129:6,
131:22, 144:1,
144:19, 145:15,
146:10, 146:24,
160:16
**came**
130:9, 135:4,
139:14
**camera**
72:15
**campbell**
5:3, 94:22,
95:9, 98:9,
110:3, 114:20,
146:21, 159:6
**campbell's**
111:8, 147:3,
147:7, 159:9
**can't**
11:21, 12:18,
24:18, 26:13,
27:23, 35:8,
87:12, 95:20,
168:9, 168:15,

168:17, 170:7,
171:20, 177:19,
179:11, 181:23
**candidate**
17:12, 26:10,
65:13, 74:4,
75:11, 79:6,
82:8, 84:10,
84:12, 85:24,
114:5
**candidates**
75:16, 81:19,
81:21, 81:22,
82:1, 83:20,
84:1, 84:5,
86:14, 86:18,
86:21
**cannot**
12:8
**capture**
37:19, 72:14,
72:17
**captured**
72:12
**car**
58:9, 124:9,
135:1, 135:5,
140:10, 140:16,
141:18, 160:4
**card**
25:20, 77:16,
77:19, 78:1,
78:20, 143:20,
144:7, 144:16,
145:4, 146:6,
146:20
**cards**
17:10, 61:1,
85:24, 142:18
**care**
11:24
**career**
31:10
**carey**
27:11, 57:17,
58:15, 61:20,
127:14, 142:19
**carson**
3:12, 9:5,

13:8, 46:1,
183:18
**cases**
26:11, 26:19,
28:20, 28:21,
29:4, 30:17,
30:24
**cause**
191:8, 191:18
**cbarber@rfclaw**
5:16
**ccanonie@sotoslaw**
3:16
**center**
4:2, 71:8
**certain**
24:3, 92:2,
93:22, 95:8,
113:6
**certification**
24:8, 24:10,
24:17, 24:22,
25:1, 25:5
**certified**
24:11, 24:12,
24:14
**certify**
191:5, 191:15,
192:2, 192:5,
192:9
**cetera**
185:17
**chance**
33:15, 33:20
**charged**
58:1
**charles**
1:24, 3:9,
4:10, 8:18,
8:20, 8:22,
10:6, 15:3,
15:4, 29:18,
30:4, 30:17,
57:5, 147:13,
166:23, 167:8,
179:16, 184:18,
185:23
**chemicals**
33:17

**chicago**
1:10, 1:20,
1:30, 1:40, 3:5,
3:14, 3:17, 4:7,
4:15, 5:6, 5:14,
6:5, 8:4, 9:6,
12:22, 16:9,
16:18, 18:10,
18:19, 18:20,
18:23, 20:12,
27:20, 40:23,
58:10, 121:22,
134:4, 134:9,
191:13
**choi**
6:3, 9:9,
186:13
**choose**
87:10
**chronological**
42:1, 42:6
**circle**
130:21, 131:6,
131:9, 131:12,
167:8, 167:9
**city**
1:10, 1:17,
1:20, 1:27,
1:30, 1:37,
1:40, 3:17, 8:4,
9:6, 16:9,
18:20, 61:18,
68:15, 73:18,
74:6, 85:18,
88:14, 96:19,
97:19, 99:12,
106:10, 108:23,
111:15, 119:9,
127:21, 129:9,
134:17, 137:1,
140:3, 140:13,
141:10, 142:23,
143:18, 144:12,
145:10, 145:24,
146:18, 148:6,
149:5, 151:12,
152:8, 153:6,
160:19, 165:17,

165:24, 169:3,
170:11, 172:10,
173:24, 178:24,
191:13
**clarification**
55:21
**clarified**
55:20
**clarity**
44:20
**clark**
5:13
**classification**
22:4, 22:6,
22:8, 25:13,
25:17
**classifying**
25:19
**clear**
35:1, 44:22,
167:22, 171:9
**clearly**
10:23, 34:24
**colloquy**
9:2, 38:9,
56:8, 131:2,
143:7, 157:6,
182:10
**color**
96:4, 148:10
**colored**
95:22, 96:5,
96:8, 96:15,
127:16
**colors**
95:23
**column**
75:13, 76:7,
76:14, 77:9,
78:24, 79:14
**com**
3:7, 3:16,
4:17, 5:8, 5:16,
6:7
**come**
19:21, 51:9
**comfortable**
20:3

**communicating**
162:16
**comp**
161:1, 161:23,
162:15, 164:18,
166:7, 166:10,
166:13, 166:24,
167:10, 168:13,
168:19, 169:5,
169:6, 170:14,
170:16, 171:15
**compare**
16:16, 16:19,
16:21, 26:6,
45:7, 45:9,
45:11, 46:14,
46:20, 51:9,
114:22
**compared**
17:6, 17:11,
40:20, 54:5,
84:9, 114:14,
114:18, 162:12,
169:11
**compares**
40:18
**comparing**
18:1, 48:13
**comparison**
20:2, 20:18,
44:14, 44:17,
45:3, 47:2,
48:1, 48:10,
76:9, 81:24,
84:14, 84:18,
89:13, 89:23,
91:8, 91:20,
93:3, 93:7,
93:15, 94:18,
95:2, 112:14,
112:24, 116:8,
116:15, 161:13,
162:4, 162:6,
163:23, 166:20,
167:2, 168:1,
169:18, 170:24,
171:3, 178:18
**comparisons**
23:14, 25:16,

Transcript of Michael Malone
Conducted on November 9, 2021

54

26:5, 114:8,
162:3
**complied**
86:2, 86:6
**compound**
180:16
**computer**
55:14, 74:12,
74:15
**computer-aided**
191:22
**computers**
74:23
**conclude**
54:21
**concluded**
21:3, 54:11,
56:17, 147:12
**conclusion**
51:10, 51:22,
102:14, 106:3,
108:15, 111:6,
132:23, 136:19
**concur**
52:3
**concurred**
52:19, 90:4,
91:24, 93:19,
95:6, 113:4
**conduct**
57:9, 76:9,
84:14, 84:18,
114:7, 116:6,
124:17
**conducted**
2:2, 27:3,
86:13, 89:12,
89:23, 91:7,
91:20, 93:2,
93:15, 94:18,
95:2, 112:13,
112:24
**conducting**
10:16, 71:23
**confidence**
117:14, 184:9
**confident**
88:6, 117:11,

117:17
**confirm**
144:8, 145:5,
145:17, 146:12
**confirmed**
147:5
**confused**
124:2
**connected**
74:15
**connelly**
5:11
**consecutive**
148:16
**consecutively**
61:18, 73:17,
127:20, 142:22
**considered**
20:14
**consisted**
22:1, 25:10
**consolidated**
1:16, 1:26,
1:36, 8:7
**contained**
97:1, 97:23,
125:14, 137:10,
171:4
**containing**
137:5
**contains**
97:6, 101:23,
128:14, 129:16,
137:9
**contents**
61:4
**context**
183:17
**continue**
23:4
**continued**
4:1, 5:1, 6:1
**continuing**
157:13
**cook**
2:10, 191:7
**copies**
55:7

**copy**
50:10
**core**
71:7, 72:20,
80:13, 80:14
**corner**
69:5, 69:18,
99:23, 106:15,
107:6, 109:18,
133:6, 149:16,
152:11, 169:4
**correctly**
18:4, 183:13
**correspond**
70:20
**corresponding**
70:15
**corroborate**
87:8
**corroborated**
86:24, 87:5,
102:9, 105:19,
108:8, 110:23,
132:1, 136:11
**corroborating**
51:1, 103:4
**corroboration**
51:6, 51:13,
52:18
**corroborator**
160:17
**cotsirilos**
5:2
**could**
9:11, 22:16,
26:19, 29:24,
37:4, 38:16,
39:20, 40:6,
40:7, 40:20,
42:14, 42:15,
43:4, 43:5,
47:3, 47:24,
63:13, 66:10,
123:5, 125:1,
140:23, 163:14,
165:13, 182:5,
182:12, 182:21,
183:16

**couldn't**
47:17, 49:3,
52:14, 168:9,
168:24, 171:8,
173:10, 174:15,
175:3, 175:16,
178:5, 178:15,
178:22
**counsel**
8:15, 192:9
**county**
2:10, 191:3,
191:8
**couple**
62:14, 69:20
**course**
31:9, 32:16,
61:15, 66:12,
139:6, 163:15
**court**
1:1, 8:5, 9:11,
9:12, 9:13,
9:15, 10:13,
10:21, 14:19,
17:13, 17:16,
22:5, 31:6,
31:14, 31:23,
36:9, 38:16,
38:19, 56:9,
60:8, 60:10,
61:3, 61:9,
62:3, 62:5,
62:7, 62:18,
62:21, 64:23,
65:3, 65:16,
65:24, 67:4,
67:9, 83:3,
83:15, 84:3,
85:6, 86:7,
95:20, 111:21,
115:16, 123:23,
125:12, 148:2,
154:23, 180:7,
180:11, 182:11,
182:13, 182:16,
185:5, 185:12,
187:17, 187:23,
189:7, 189:10,

Transcript of Michael Malone
Conducted on November 9, 2021                                                55

190:4, 191:5,
191:10
**cpd**
134:1
**created**
75:7, 82:19,
100:2, 133:11,
153:14
**crime**
17:9, 18:1,
26:4, 43:23,
44:4, 46:10,
46:15, 57:20,
60:20, 125:14,
155:14, 156:2,
156:7, 184:21
**criminal**
29:21
**crossed**
159:22
**csp**
155:10
**csr**
2:8, 191:4,
192:22
**cst**
2:4, 2:6
**culbertson**
6:2
**current**
16:15, 17:24
**currently**
16:6
**custody**
42:22, 63:2
**cv**
1:6, 1:14,
1:19, 1:24,
1:29, 1:34,
1:39, 8:7, 8:8,
8:9
**czarina**
4:4

---
                D
---
**dan**
13:24
**darker**
136:8

**database**
40:18, 72:22,
73:6, 73:7,
73:9, 73:10,
74:12, 74:16,
134:5, 134:7,
134:9
**databases**
134:14
**date**
8:10, 53:23,
54:4, 68:8,
121:4, 121:17,
121:18, 161:5
**dated**
117:21, 122:14
**dates**
19:1, 98:20,
98:21, 117:24,
137:22
**davion**
89:19, 90:7,
91:14, 92:3,
93:9, 93:22,
98:1, 101:16,
102:16, 104:22,
106:4, 107:15,
108:16, 112:20,
113:7, 114:19,
132:7, 132:24,
133:19, 138:1,
138:17, 138:24,
139:14, 140:15,
141:16, 144:16,
144:24, 145:6,
145:12, 145:19,
146:6, 146:14,
155:3, 156:12,
156:23, 157:14,
158:22
**day**
118:8
**days**
122:8, 122:10,
122:22
**dealership**
58:9
**dearborn**
5:5

**decades**
176:8, 183:8
**december**
100:23, 104:7,
106:17, 109:3,
130:2, 134:22,
161:5, 166:9
**decision**
76:7
**deemed**
47:15
**defendant**
5:17, 9:6, 9:8,
9:9
**defendants**
1:12, 1:22,
1:32, 1:42,
191:14
**defense**
120:2, 122:2
**definitions**
25:14
**degree**
117:14, 184:8
**dennis**
95:15
**department**
16:9, 18:11,
18:19, 18:24,
27:20, 40:24,
121:22, 134:10
**department's**
134:5
**deponent**
190:8
**depos**
8:13, 9:17
**deposition**
2:1, 8:2, 8:14,
10:16, 10:22,
12:11, 13:5,
13:12, 61:20,
68:16, 73:19,
95:15, 119:8,
127:14, 142:19,
147:22, 190:2,
192:3, 192:6,
192:7

**describe**
21:23, 143:18,
144:14, 145:10,
146:4, 146:18
**described**
48:12
**describes**
101:7, 104:11,
106:21
**detail**
32:21, 61:6,
80:16
**details**
32:3, 164:8
**detective**
42:21, 54:12
**detectives**
54:13, 54:23,
55:2, 55:7, 56:3
**determination**
52:7
**determine**
52:9, 86:15,
116:7, 126:10
**determined**
45:2, 116:14
**develop**
112:6
**development**
23:17, 23:22
**differ**
16:24
**difference**
36:18, 36:22,
80:9
**different**
18:22, 23:21,
51:22, 65:9,
80:14, 81:8,
95:23, 143:3,
143:4, 182:22,
183:3
**difficulties**
11:10
**digital**
191:22, 192:14
**dineen**
8:12

Transcript of Michael Malone
Conducted on November 9, 2021

56

direct
95:2, 114:8
direction
71:11, 187:23
disc
8:1
discrepancy
141:24
discretion
47:21
discuss
16:3
district
1:1, 1:2, 8:5,
8:6, 12:22,
16:18, 19:5,
19:7, 19:9,
19:10, 191:10,
191:11
division
1:3, 8:6, 55:3,
191:11
dl
94:10, 97:8,
109:7, 159:11
doctor's
11:24
document
61:18, 61:23,
63:20, 64:2,
65:1, 65:7,
67:13, 68:3,
68:11, 68:17,
69:3, 69:15,
83:7, 91:1,
92:16, 92:23,
94:5, 94:12,
97:15, 98:6,
98:13, 99:12,
104:14, 105:2,
106:24, 109:12,
119:23, 120:4,
120:11, 120:23,
121:5, 121:10,
122:15, 130:12,
135:7, 142:24,
143:19, 143:23,
144:14, 145:11,

145:17, 146:4,
146:12, 146:19,
156:15, 157:16,
157:22, 158:6,
159:13, 160:6,
165:6, 165:9,
165:13, 165:20,
165:21, 166:2,
186:21, 187:3
documentation
185:22
documents
14:5, 14:8,
14:12, 14:19,
14:23, 15:7,
15:15, 84:15,
84:19, 122:13,
184:16, 185:16,
186:5
doing
20:4, 80:4,
86:6, 100:8,
115:7, 180:7,
188:4
done
69:22, 124:23,
126:11, 142:14,
171:23, 188:23,
189:6
door
94:9, 109:5,
159:10
double
58:9, 97:3,
100:16, 128:9,
150:2
down
78:7, 78:11,
83:16, 86:9,
95:12, 106:9,
111:11, 118:15,
120:13, 129:2,
134:16, 139:7,
142:15, 147:9,
159:3, 165:16,
168:14, 169:2,
170:10, 172:11,
183:24

driver
101:4
driver's
92:10, 158:22
drizen
122:1
dry
34:11
dual
94:9
duly
9:23, 191:16
duplicates
128:18
during
48:16
dusted
37:18
dusting
33:16
duties
16:15, 65:2,
65:5

E

each
11:3, 13:16,
13:18, 19:1,
26:19, 34:15,
71:2, 71:13,
79:6, 82:18,
83:10, 83:19,
84:1, 84:5,
84:8, 86:13,
88:16, 98:16,
114:18, 114:22,
141:13, 156:13,
160:12
earlier
111:21, 186:20,
187:3, 187:15,
188:3, 189:20
east
4:6
eastern
1:3, 8:6,
191:11
echoi@hinshawlaw
6:7

eight
63:6, 77:6,
97:6, 172:20,
172:21, 173:1
eight-page
148:5
either
26:8, 33:16,
45:7, 45:11,
52:5, 56:24,
60:21, 81:14,
103:20
electronically
147:24
elim
161:1, 161:14,
161:17, 162:15,
169:4, 169:6,
170:14
elimination
26:8, 45:8,
45:16, 45:22,
46:7, 46:15,
48:14, 115:4,
161:14, 161:18,
163:21, 169:12,
169:18, 169:19
else
13:20, 66:5
else's
163:6
employed
12:22, 16:6,
18:20
employment
19:2, 22:12
enclosed
175:2
end
113:13, 190:1
end-of-day
40:19
ended
2:6
enhanced
80:5
enhanced-a
80:6, 80:12,

Transcript of Michael Malone
Conducted on November 9, 2021

57

81:14
**enhanced-b**
79:23, 80:3,
80:7, 80:12,
81:14
**enhancement-a**
81:1
**enhancement-b**
80:18
**enlarge**
119:12, 119:14
**enlarged**
40:1, 40:3,
119:17
**enough**
35:1, 47:14,
168:18
**entail**
26:20
**enter**
26:9, 45:12,
47:22, 71:22,
72:2, 72:24,
83:4
**entered**
19:2, 40:7,
76:8, 83:11
**entering**
18:2, 47:16,
72:19
**entitled**
147:19
**entry**
26:5, 48:1
**envelop**
95:14
**envelope**
43:22, 50:14,
50:15, 96:20,
97:20, 97:23,
127:12, 128:3,
128:7, 129:5,
137:5, 137:10,
141:15, 141:20,
142:11, 147:20,
150:4, 166:18,
175:19
**envelopes**
96:24

**erickson**
4:12
**error**
142:10
**established**
163:8
**esther**
6:3, 9:9
**et**
1:10, 1:20,
1:30, 1:40, 8:3,
8:4, 185:17,
191:12, 191:13
**evaluate**
26:4
**even**
163:7
**ever**
12:11, 27:18,
31:20
**every**
33:21, 52:17,
74:14, 74:24,
81:19
**evidence**
17:8, 33:18,
35:2, 43:22,
44:10, 48:14,
50:14, 51:21,
52:9, 53:1,
53:18, 54:6,
100:5, 147:20,
155:5, 155:23,
184:17
**exact**
85:4, 180:17
**exactly**
12:18, 12:24,
24:19, 24:21,
26:13, 30:11,
41:4, 80:16,
82:21, 85:4,
86:4, 87:12,
115:8, 152:6,
153:4, 173:11
**examination**
7:4, 7:5, 10:1,
31:15, 31:22,

32:4, 54:11,
56:17, 57:10,
58:17, 84:16,
84:20, 86:13,
116:7, 117:7,
124:18, 154:22,
162:17, 181:17,
186:18
**examinations**
22:21, 26:20,
27:4
**examine**
52:8
**examined**
9:23, 29:21,
50:19, 69:6,
102:11, 105:22,
108:10, 111:1,
116:11, 120:18,
132:18, 136:14
**examiner**
17:6, 18:15,
20:6, 20:14,
21:5, 21:11,
21:17, 22:13,
22:22, 23:5,
24:8, 24:12,
25:23, 27:20,
31:7, 36:2,
39:18, 41:14,
48:7, 50:18,
51:8, 51:12,
51:20, 52:3,
52:19, 53:1,
53:17, 58:23,
59:6, 69:7,
69:9, 74:24,
76:8, 81:7,
86:24, 87:4,
87:22, 88:1,
88:2, 89:22,
91:19, 93:14,
95:1, 103:6,
112:23, 120:19,
134:8, 151:3,
160:14, 175:7,
176:16
**examiners**
48:16, 55:9,

81:21, 102:19,
103:2, 154:15,
181:2
**examining**
39:17
**excluded**
162:7
**exclusion**
169:13
**exhibit**
7:10, 61:9,
61:21, 63:7,
63:8, 63:9,
68:6, 68:17,
73:14, 73:20,
73:21, 74:1,
83:17, 85:6,
86:10, 88:10,
95:13, 95:16,
96:3, 96:11,
108:22, 111:12,
118:2, 118:16,
119:6, 119:7,
122:20, 124:24,
127:12, 127:13,
129:9, 141:6,
142:15, 142:17,
142:19, 147:10,
147:19, 147:21,
147:23, 148:6,
148:20, 165:23,
171:23, 172:9,
184:1, 186:16
**exhibits**
14:9, 84:23,
84:24
**experience**
35:11, 47:21,
100:1, 151:2,
163:1, 163:17,
164:20, 166:11,
167:15, 170:4,
170:20, 171:17,
172:22, 173:16,
174:22, 177:14,
178:11, 179:8,
183:8
**experienced**
21:11

expert
20:13, 20:15,
20:21, 31:13,
31:21, 118:19,
120:2, 122:2
explain
36:15, 37:4,
45:21, 45:24,
51:5, 59:20,
71:2, 113:22
explanation
77:12, 142:5
extensively
187:17
exterior
94:9, 109:5,
159:10
ezell
1:4, 1:17,
1:27, 1:37, 3:8,
8:3, 8:22,
167:9, 184:19,
185:24, 186:11,
191:12

**F**

facing
71:11
factors
34:4, 34:9,
34:15, 35:11
failed
31:20
fair
27:2, 79:8,
168:18, 187:20
familiar
23:21, 69:12
far
39:15
fcrr
2:8, 191:4,
192:22
february
167:13, 167:14
fender
90:17, 92:11,
101:4, 104:8,

158:3, 158:16,
158:23
few
165:9
field
19:5, 19:6,
25:15, 31:14,
31:21
file
41:23, 43:8,
43:18, 43:23,
44:2, 50:13,
106:10, 108:22
files
43:1
filing
25:21
find
26:10
findings
51:11, 52:4,
52:19, 87:1,
90:4, 91:24,
93:19, 95:6,
113:4, 118:19,
120:3, 120:5,
121:12, 122:4,
122:5, 123:15,
124:5, 147:14
fine
61:16, 165:10,
165:12
fing
136:21
finger
33:13, 36:7,
40:1, 76:15,
76:21, 76:23,
77:3, 77:4,
77:7, 78:19,
78:22, 98:2,
98:9, 107:14,
108:2, 108:3,
108:17, 110:2,
110:13, 132:6,
133:19, 135:14,
136:5, 136:21
fingerprint
15:5, 16:11,

17:9, 20:13,
20:14, 20:16,
20:17, 20:21,
23:22, 26:20,
27:4, 36:6,
36:7, 39:3,
40:2, 40:11,
47:17, 57:10,
58:16, 72:24,
75:10, 77:16,
77:19, 84:4,
84:9, 84:12,
85:23, 89:18,
94:21, 112:19,
118:19, 134:5,
134:7, 144:5,
162:16, 164:8,
185:23
fingerprinting
25:12
fingerprints
16:23, 17:7,
17:11, 17:12,
17:17, 20:3,
20:18, 20:19,
22:2, 23:17,
25:20, 39:18,
40:17, 40:19,
44:3, 46:11,
62:8, 67:5,
67:11, 73:7,
114:3, 150:19,
163:21, 164:24,
166:20, 168:4
fingers
34:10, 76:14,
76:20, 76:24,
77:9, 77:15,
77:19, 77:23,
78:4, 78:5,
78:6, 78:20
finish
165:5, 165:13
finished
21:20, 41:22,
62:18
firm
3:11

first
9:23, 13:21,
18:19, 24:18,
25:6, 37:3,
40:23, 44:6,
70:1, 74:6,
75:13, 77:23,
79:23, 80:17,
81:16, 82:3,
90:10, 111:14,
120:8, 121:18,
128:4, 143:2,
143:10, 143:17,
148:14, 149:5,
152:2, 153:5,
191:16
five
25:8, 28:3,
29:11, 66:16,
77:4, 77:23,
78:5, 123:20,
134:22, 170:1,
178:8, 178:17
five-minute
33:2, 165:4,
165:7, 171:24
five-page
142:22
flip
85:9
floor
3:4, 4:6
follow
62:4
followed
83:15, 117:6
following
84:3, 109:24,
167:7
follows
9:24
foregoing
191:23, 192:3
forgot
38:17
format
191:22
forth
62:5, 141:2,

Transcript of Michael Malone
Conducted on November 9, 2021

59

189:7
**found**
28:9, 33:14,
119:15, 122:24,
123:9, 156:19,
157:19, 158:3,
158:16, 158:22,
159:9, 160:4
**foundation**
15:9, 22:15,
22:23, 28:15,
28:23, 29:23,
30:7, 31:17,
34:8, 34:19,
35:7, 35:15,
36:4, 38:13,
39:9, 41:20,
42:8, 42:13,
43:13, 44:8,
45:6, 49:1,
49:8, 49:22,
50:21, 51:16,
51:24, 52:12,
53:7, 53:14,
53:20, 54:8,
55:19, 56:6,
57:12, 58:12,
59:9, 60:18,
62:10, 63:20,
73:2, 81:10,
83:23, 84:22,
98:24, 100:10,
100:19, 103:10,
104:14, 115:2,
115:13, 123:3,
123:12, 126:13,
128:11, 137:13,
138:5, 139:17,
142:7, 150:14,
150:22, 151:8,
152:4, 152:22,
153:21, 154:3,
154:10, 155:18,
161:20, 162:2,
162:19, 163:3,
163:19, 164:22,
166:16, 167:4,
169:15, 170:6,

170:22, 171:6,
171:19, 172:24,
173:8, 173:18,
174:12, 174:24,
176:3, 176:10,
176:21, 177:16,
178:13, 179:10,
184:23
**four**
25:8, 77:3,
97:7, 97:8,
150:5, 151:14,
156:11, 173:14
**fourteen**
115:19
**fourth**
76:14
**fp**
164:16, 166:8,
170:14, 170:16
**fps**
161:6, 162:23,
163:16, 167:14,
173:14
**franklin**
6:4
**friction**
33:12, 36:8,
36:9, 36:11
**front**
85:1, 92:10,
94:8, 101:4,
109:5, 153:12,
154:12, 158:23,
159:10
**full**
12:8
**further**
37:4, 189:17,
190:1, 190:8,
191:15, 192:2,
192:5, 192:9
**fusco**
5:11

--- G ---

**gang**
19:11

**gary**
68:16, 73:19,
119:8
**gave**
21:24
**general**
41:13
**generally**
27:17, 29:20,
60:19, 76:6,
80:11
**generate**
26:9, 81:18
**generated**
49:17, 55:8,
74:4, 76:18,
83:20, 85:24,
114:11
**generates**
16:21, 40:19
**give**
12:8, 26:14,
27:15, 50:6,
62:14, 69:20,
96:9, 120:7
**given**
12:11, 27:2,
28:16, 125:11,
191:19, 192:1
**gives**
75:15, 79:5
**giving**
58:17
**go**
10:10, 11:17,
18:7, 24:13,
32:5, 32:22,
42:24, 46:6,
60:4, 68:24,
70:1, 72:18,
75:12, 80:20,
82:10, 86:17,
88:16, 99:11,
106:9, 106:11,
108:21, 113:11,
121:6, 129:8,
134:16, 136:24,
138:19, 138:21,

140:2, 140:12,
144:11, 145:9,
151:11, 152:7,
153:5, 165:16,
165:18, 170:10,
172:10, 178:23
**goes**
50:7, 50:9,
50:10
**going**
32:22, 33:3,
34:5, 41:11,
41:23, 57:3,
61:13, 66:20,
67:10, 84:22,
84:24, 86:20,
90:9, 95:24,
96:3, 122:18,
125:3, 127:16,
141:2, 156:9,
165:5, 172:1,
173:23, 185:14,
190:2
**good**
10:3, 13:9,
26:15, 66:13,
165:3, 169:23,
171:22, 177:12
**grab**
32:9
**graham**
166:6, 166:21
**grand**
4:6
**great**
66:11, 66:17
**greater**
77:10, 77:13
**green**
89:6, 90:18,
92:11, 97:8,
98:3, 101:4,
104:9, 106:19,
124:9, 134:24,
135:5, 140:9,
140:15, 141:18,
157:20, 158:3,
158:17, 158:23,

Transcript of Michael Malone
Conducted on November 9, 2021                    60

160:4
**ground**
10:11
**group**
148:6, 148:19
**guess**
37:11
**guide**
22:1
**guilty**
28:9

### H

**half**
99:13, 130:21,
131:6, 131:9,
131:12
**hand**
9:14, 61:13,
76:24, 78:5,
78:13, 149:15
**handed**
126:11
**hands**
141:7
**handwriting**
101:12, 104:18,
109:16, 135:11,
149:6, 149:12,
149:21, 150:7,
164:14
**happened**
19:23, 52:15
**happens**
52:24
**head**
10:24, 11:1
**hear**
19:23, 68:11,
95:20, 123:24
**hearing**
11:11
**heavy**
34:11
**held**
16:12, 17:1,
18:23
**help**
15:16

**henry**
22:3, 22:6,
22:8, 25:12,
25:17
**here**
8:1, 15:2,
57:4, 105:8,
119:15, 131:19,
140:13, 159:21,
167:20, 181:9,
187:12
**hereby**
191:5
**herein**
9:22
**hereinbefore**
192:8
**heretofore**
191:6
**hereunto**
192:13
**herself**
52:9
**higher**
79:8
**highly**
88:4, 88:6,
117:11
**himself**
52:9
**hinshaw**
6:2
**history**
22:1, 25:11
**hit**
76:14, 77:9,
81:12, 81:15,
82:7, 84:11,
114:7, 133:19,
133:23, 134:4,
134:6, 149:14,
164:4, 164:9,
165:2
**hold**
23:4, 24:22
**homicide**
58:9, 97:4,
100:16, 100:23,

104:6, 106:16,
109:2, 128:10,
130:5, 134:23,
150:2
**hood**
89:5, 106:18,
157:19
**hoping**
165:7
**hours**
13:17
**hundreds**
26:17
**hypothetical**
45:6, 49:14,
50:21, 52:13,
56:21, 82:14,
100:4, 103:10,
116:19, 151:8,
175:10, 176:11

### I

**ibrahim**
124:12, 124:21,
135:15, 137:22,
140:3, 140:14,
141:18, 143:21,
169:5, 170:16
**ibrahim"**
159:23
**ibrahim's**
136:5, 136:20,
144:4, 144:9,
162:7
**id**
64:14, 74:7,
74:14, 74:18,
75:2, 169:22,
171:14, 173:4,
174:18, 175:7,
175:19, 175:24,
176:6, 176:15,
176:18, 176:23,
177:3, 177:8,
177:10
**ident**
56:24, 101:16
**identical**
128:23

**identifi**
178:10
**identification**
24:15, 40:12,
47:4, 48:6,
49:18, 50:16,
51:7, 51:20,
52:17, 53:2,
53:12, 55:17,
56:3, 56:4,
56:18, 73:12,
74:22, 82:11,
87:1, 98:16,
98:18, 98:22,
102:6, 102:9,
102:20, 103:4,
103:7, 103:17,
105:15, 105:20,
108:5, 108:8,
110:18, 110:23,
124:4, 124:7,
124:16, 124:20,
131:20, 132:2,
136:11, 137:23,
140:4, 144:9,
145:6, 145:18,
146:14, 147:6,
148:1, 153:11,
154:1, 157:14,
159:4, 161:23,
168:20, 173:5,
176:18, 177:3
**identifications**
51:14, 87:5,
87:8, 88:17,
117:12, 117:15,
117:18, 118:9,
122:9, 122:14,
122:19, 123:20,
126:20, 137:16,
137:20, 138:12,
153:19, 154:7,
154:17, 156:11,
160:13, 164:7,
184:9
**identified**
82:2, 97:22,
104:21, 107:14,

110:2, 114:16,
116:22, 124:12,
132:6, 135:14,
136:3, 137:10
**identifies**
140:8
**identify**
8:15, 45:13,
95:24
**identifying**
28:8, 89:17,
91:12, 93:8,
94:20, 112:18,
129:20
**illinois**
1:2, 2:10, 3:5,
3:14, 4:7, 4:15,
5:6, 5:14, 6:5,
8:6, 57:5, 97:7,
134:6, 134:10,
191:1, 191:8,
191:11
**illness**
12:1
**image**
72:17, 72:18,
75:6, 75:9
**images**
128:24
**impact**
34:4, 35:12
**importance**
71:12
**impounded**
88:23
**impress**
131:7
**impression**
33:12, 34:5,
34:24, 35:19,
35:21, 36:1,
36:5, 36:6,
36:19, 37:2,
37:8, 37:10,
37:12, 37:18,
37:23, 38:4,
38:11, 39:7,
40:1, 40:2,

40:7, 47:14,
47:19, 47:20,
47:22, 71:9,
78:4, 78:9,
78:22, 89:5,
98:3, 98:10,
104:1, 124:9,
131:8, 131:10,
157:2, 163:24
**impressions**
14:10, 14:18,
39:21, 44:21,
47:13, 113:16,
113:24, 114:6,
114:19, 116:5
**inaccuracies**
138:11
**include**
44:20
**included**
43:7, 43:24,
123:20, 124:4,
178:1, 179:18
**incomplete**
45:6, 49:14,
50:21, 52:12,
56:20, 56:21,
82:14, 100:4,
103:10, 116:18,
116:19, 151:8,
175:10, 176:10
**independent**
86:5, 86:13,
115:6, 124:17
**independently**
89:23, 91:20,
93:15, 95:2,
102:11, 105:22,
108:10, 111:1,
112:24, 122:24,
123:9, 132:18,
136:14
**index**
76:24, 77:2,
77:5, 108:3,
108:17, 136:5,
136:21, 144:4,
144:9, 145:1,

145:6, 157:19,
160:3
**indicate**
53:11, 71:10,
71:19, 101:23,
102:5, 102:8,
103:16, 115:24,
131:6, 131:19,
133:18, 137:22,
173:5, 187:8
**indicated**
70:23, 123:14,
153:19, 154:12,
188:9
**indicates**
89:4, 98:17,
105:14, 105:19,
110:17, 110:22,
115:21, 117:2,
122:15, 128:17,
132:1, 136:3,
136:10, 137:19,
150:9, 152:1,
154:22, 159:8,
160:3, 169:10
**indicating**
71:12, 103:21,
108:4, 108:7,
116:14, 179:12,
185:22
**indication**
123:17, 184:18
**indications**
154:11
**individual**
5:17, 64:20,
74:21, 78:11,
152:24, 166:21
**individuals**
57:24, 114:15,
167:2, 168:17
**information**
35:17, 71:13,
149:16, 149:18,
149:20, 153:10,
153:13, 156:6,
156:10, 173:12,
173:20, 175:15,

181:21
**initial**
53:23, 54:4,
127:5
**initially**
179:15
**initials**
97:11, 99:9,
101:19, 101:20,
101:21, 102:5,
102:8, 103:3,
104:24, 105:12,
107:20, 108:4,
108:7, 110:8,
110:15, 110:20,
129:6, 131:13,
131:19, 131:23,
132:12, 135:20,
135:23, 136:7,
136:8, 138:8,
143:22, 144:1,
144:3, 144:7,
144:17, 144:19,
144:21, 145:4,
145:13, 145:17,
146:8, 146:12,
146:22, 147:5,
161:6
**ink**
130:17, 130:20,
132:5, 132:11,
136:8
**inside**
43:22, 50:15,
60:16, 153:8,
174:10
**instance**
44:22, 47:16
**instances**
42:3, 103:14
**interested**
192:11
**international**
24:14
**interpret**
161:10, 163:6,
167:16, 167:19,
170:3, 170:19,

171:16, 177:13,
178:9, 179:7
**introduced**
147:24
**inventory**
63:23, 64:4,
64:10, 64:13,
88:22, 90:13,
92:7, 94:2,
111:18, 130:6,
134:24
**investigation**
97:4, 100:16,
128:10, 150:2,
155:16
**involved**
13:1, 58:8,
126:19
**involvement**
12:19, 15:4
**involving**
20:2
**ir**
64:6, 64:11,
64:12, 64:16,
64:19, 89:19,
91:14, 93:9,
94:22, 101:17,
104:22, 107:15,
110:3, 112:20,
132:7
**isp**
134:1
**itself**
34:24, 36:8,
37:12, 40:6,
53:11, 53:18,
63:20, 64:2,
65:1, 65:7,
67:13, 83:7,
91:1, 92:17,
92:23, 94:5,
94:12, 97:15,
98:6, 98:13,
102:20, 104:14,
105:3, 106:24,
109:12, 121:19,
127:1, 130:12,

135:7, 141:14,
156:15, 157:16,
157:23, 158:6,
159:13, 160:7,
168:14, 168:19,
168:24, 175:11,
175:14, 177:8,
178:21, 181:22

**J**

**jacket**
50:10, 50:12,
60:9, 60:11,
60:16, 61:1,
125:12, 125:14,
125:22, 126:5,
126:17, 126:24,
127:1, 127:10,
147:14, 147:17,
149:9, 149:12,
150:5, 151:6,
151:14, 153:9,
153:12, 154:6,
154:12, 154:21,
155:24, 156:10,
159:17, 160:23,
161:9, 164:6,
169:11, 171:4,
171:11, 173:2,
173:6, 174:10,
175:8, 178:1,
179:14, 179:19,
180:6, 180:12,
181:4, 181:13
**jackets**
60:13, 150:10,
150:17, 151:20,
152:2, 152:14,
152:20, 153:1,
154:17, 166:12,
172:15
**jackson**
3:13, 4:14
**january**
19:14, 61:9
**jc**
98:17, 105:17,
108:7, 110:20,

136:7, 137:17
**job**
2:11, 13:9,
16:10, 16:15,
18:15, 19:24,
20:1, 25:22,
27:12, 180:4
**jodie**
8:12
**joe**
101:21
**john**
20:24
**johnson**
1:24, 3:9,
4:10, 8:18,
8:20, 8:22,
10:6, 15:3,
29:18, 30:4,
30:18, 57:6,
147:13, 166:23,
167:9, 179:16,
184:18, 185:23
**johnson's**
15:5
**join**
18:13, 18:18
**joined**
19:12, 87:15
**jon**
4:13, 8:23
**jon@colawus**
4:17
**joseph**
69:10, 87:6,
87:7, 87:10,
87:21, 89:22,
91:19, 93:14,
95:1, 97:11,
98:18, 99:3,
102:8, 102:12,
105:17, 105:23,
108:8, 108:11,
110:22, 111:2,
112:23, 120:22,
124:17, 129:6,
131:22, 132:18,
136:10, 136:14,

137:19, 138:3,
144:8, 145:5,
146:10, 146:13,
149:21, 160:16
**judge**
10:13, 11:15
**june**
68:6, 88:10,
98:20, 101:18,
104:23, 107:16,
110:5, 111:13,
117:21, 118:8,
119:6, 121:8,
121:16, 121:21,
122:6, 122:15,
122:17, 122:21,
132:9, 135:17,
137:23, 138:1
**jury**
10:14
**justice**
4:2
**jw**
161:6

**K**

**karalow**
155:6
**katie**
3:3, 5:12,
8:21, 9:7, 56:10
**katie@loevy**
3:7
**keep**
165:5
**ken**
65:10, 65:12,
65:17, 67:7,
70:7, 75:7,
118:19, 120:4,
122:24, 123:9
**kenneth**
68:22, 120:3,
122:3
**khaled**
124:12, 124:21,
135:15, 136:4,
136:20, 137:22,

140:3, 140:14,
141:18, 143:21,
144:4, 144:9,
159:22, 161:2,
161:15, 162:7,
163:22, 169:5,
170:15
**khaled's**
162:12
**kind**
103:20, 158:7
**know**
11:5, 11:9,
11:20, 12:24,
15:21, 20:1,
24:20, 28:1,
30:9, 35:9,
41:3, 49:3,
49:9, 49:18,
50:7, 57:19,
64:3, 64:16,
69:9, 69:22,
74:21, 79:16,
80:9, 87:15,
128:21, 133:11,
163:8, 168:15,
175:16, 178:4,
179:12, 179:23,
181:7, 181:14,
181:22, 182:18,
183:7, 183:22,
186:9
**knowledge**
23:9, 24:2,
40:22, 48:21,
54:14, 54:22,
112:5, 117:4
**known**
18:2, 23:15,
25:16, 26:7,
45:10, 46:9,
54:5, 60:24,
114:8, 114:23

**L**

**label**
100:11
**labeled**
78:8, 152:24

**laid**
37:17, 37:22,
40:4
**lamont**
94:22, 95:9,
110:3, 111:7,
114:20, 146:20,
147:2, 147:6,
159:5, 159:8
**language**
162:15
**larod**
1:14, 5:9, 9:4,
167:9, 184:18,
185:23
**lashawn**
1:4, 3:8, 8:22,
167:9, 184:19,
185:24, 191:12
**last**
43:14, 81:3,
146:17, 163:14,
185:2
**latch**
94:9, 109:5,
159:10
**later**
59:6
**law**
3:11
**lawsuit**
13:2, 16:3
**least**
28:3, 31:12
**left**
33:15, 33:19,
33:21, 34:6,
34:17, 35:1,
75:6, 75:14,
77:4, 77:5,
77:6, 77:7,
78:13, 79:16,
98:1, 99:22,
104:21, 105:10,
106:5, 108:3,
108:17, 110:12,
133:6, 136:5,
136:21, 144:4,

144:9, 145:1,
145:6, 145:19,
149:15, 149:20,
154:21, 156:24,
157:19, 158:2,
158:16, 160:3,
160:23, 169:4,
172:11, 172:19,
174:7, 179:3,
179:5
**lemont**
98:9
**length**
35:12
**lesniak**
20:24
**less**
81:22
**let's**
75:12, 97:18,
99:11, 99:21,
104:3, 106:9,
113:11, 127:11,
129:8, 134:16,
136:24, 140:12,
145:9, 151:11,
153:5, 159:16,
165:16, 169:2,
170:10, 172:19,
178:23
**letters**
64:11
**license**
2:9, 94:10,
97:7, 109:6,
159:11
**lift**
37:14, 37:16,
37:19, 53:11,
60:22, 62:23,
70:20, 89:9,
89:17, 90:10,
90:17, 91:4,
91:12, 92:20,
93:8, 94:15,
94:20, 95:23,
97:1, 99:21,
100:2, 100:13,

101:8, 101:23,
102:5, 102:11,
102:15, 102:20,
103:3, 103:7,
103:17, 103:22,
104:12, 105:8,
105:22, 106:22,
107:9, 108:10,
109:10, 109:21,
109:24, 110:12,
111:1, 113:17,
124:8, 124:18,
156:3, 156:6,
156:7, 157:20,
158:4, 158:17,
164:8
**lifted**
34:23, 46:13
**lifts**
44:22, 60:22,
70:15, 88:23,
90:14, 95:14,
97:6, 99:19,
114:1, 115:17,
115:19, 118:1,
125:15, 153:18,
169:22, 172:20,
172:21, 173:1,
174:1, 174:5,
174:10
**likely**
75:19, 76:4,
79:9
**line**
120:16, 179:4
**list**
17:12, 26:10,
65:13, 81:18,
81:23, 82:10,
83:20, 97:22,
114:5, 137:9,
182:7, 183:3
**listed**
65:3, 65:8,
114:15, 153:11
**lists**
40:19, 74:4
**little**
77:3, 77:7,

Transcript of Michael Malone
Conducted on November 9, 2021

64

127:23, 129:3,
138:24, 139:7,
143:4
**llc**
5:11
**llp**
6:2
**locate**
156:21
**location**
46:10, 103:21,
141:12, 156:5
**locations**
156:12
**lockups**
16:18
**loevy**
3:2
**loisi**
2:8, 9:16,
191:4, 192:22
**long**
13:16, 21:1,
21:14, 35:4,
66:14
**look**
23:12, 25:9,
50:18, 51:20,
68:1, 69:21,
85:5, 88:9,
95:18, 97:18,
104:3, 118:3,
118:5, 118:12,
125:21, 126:20,
140:22, 159:16,
181:6
**looked**
83:21, 111:21,
115:16, 118:1,
122:13, 126:16,
127:10, 138:17,
141:15, 150:1,
179:14, 179:22,
180:11, 187:17,
189:8
**looking**
63:4, 63:11,
74:6, 82:23,

84:23, 85:13,
96:19, 111:17,
143:2, 143:17,
149:5, 165:20,
172:19
**looks**
53:1, 149:19,
149:20
**loop**
71:6
**lot**
47:12, 89:6,
90:19, 92:12,
97:9, 98:4,
101:5, 104:10,
106:20, 181:22,
182:2, 182:5,
182:6, 182:21
**lower**
69:5, 69:18,
99:8, 130:1,
130:15, 130:21,
172:19
**luxury**
124:9, 135:1,
135:5, 140:9,
140:10, 140:16,
141:18, 160:4

**M**

**ma'am**
163:14
**macarthur**
4:2
**machine**
72:16
**made**
53:12, 65:24,
87:1, 88:17,
98:18, 98:21,
102:6, 102:20,
103:8, 103:17,
105:14, 108:5,
110:17, 117:12,
117:18, 118:9,
118:19, 122:9,
123:21, 124:8,
126:21, 128:7,

131:20, 137:20,
137:23, 144:8,
145:5, 145:18,
146:13, 147:6,
151:5, 154:1,
154:7, 156:11,
159:4, 161:24,
173:5
**maintain**
25:4
**maione**
5:4, 9:3,
186:14
**make**
11:3, 11:14,
32:6, 32:23,
47:3, 50:16,
51:7, 51:19,
52:7, 53:10,
53:18, 56:2,
56:18, 67:10,
82:11, 85:17,
103:6
**making**
103:3
**malone**
2:1, 7:3, 7:9,
8:3, 9:21, 10:3,
10:9, 45:23,
46:6, 56:14,
60:4, 61:24,
67:3, 69:7,
73:22, 85:14,
96:21, 99:14,
120:19, 125:10,
139:20, 163:13,
166:3, 167:24,
172:17, 182:16,
183:7, 183:20,
185:19, 186:7,
186:20, 189:11,
189:23, 190:2,
191:8
**manner**
102:21
**manual**
81:24, 84:18,
89:12, 89:23,

91:7, 93:2,
94:18, 112:13
**many**
12:14, 13:14,
26:11, 28:1,
29:4, 31:9,
60:13, 67:23
**margin**
130:16
**mark**
147:21
**marked**
61:19, 68:16,
73:19, 95:15,
97:2, 119:7,
127:13, 131:8,
142:19
**markings**
14:13, 95:22,
118:1
**marks**
190:1
**match**
75:19, 76:4,
76:16, 79:9,
86:15, 86:21,
90:7, 92:3,
93:22, 95:9,
113:7, 114:4,
162:12, 185:23
**matched**
139:14, 184:20
**matches**
26:10, 102:15,
106:4, 108:16,
111:7, 123:1,
123:10, 132:24,
136:20
**material**
43:8, 43:17,
125:21, 126:17,
126:18, 127:6
**materials**
60:6, 126:4
**matter**
8:3, 15:3,
30:4, 30:18,
181:5

Transcript of Michael Malone
Conducted on November 9, 2021                    65

**maybe**
24:19, 28:2
**mccoy**
1:34, 4:18,
8:24, 166:24,
167:8, 184:19,
185:24, 186:12
**mcginnis**
14:1
**mean**
39:2, 39:3,
40:13, 44:16,
45:17, 47:10,
64:6, 70:19,
71:3, 74:11,
74:19, 75:14,
76:15, 77:2,
77:20, 80:2,
128:20, 134:3,
152:19, 161:10,
162:24, 163:17,
164:19, 166:14,
167:16, 170:3,
170:19, 171:16,
172:21, 173:11,
173:15, 173:21,
174:9, 174:21,
175:3, 175:13,
175:19, 177:3,
177:13, 177:20,
177:22, 178:9,
178:17, 179:7,
181:22, 182:5,
182:12, 182:19,
182:21, 183:16
**meaning**
71:8, 90:6,
92:2, 93:21,
95:8, 113:6,
114:4
**means**
36:15, 71:7,
103:24, 113:22,
131:16, 161:23,
162:4, 162:6,
167:1, 168:19,
176:18, 180:15,
180:20, 181:10,

**181:14, 183:8,**
183:23
**meant**
152:6, 165:23,
168:16, 179:23,
180:13, 181:1,
181:6, 181:7
**medications**
12:4
**medium**
39:17
**meeting**
13:16
**memory**
86:5, 115:7,
118:13
**mentioned**
25:17, 34:16,
192:8
**met**
14:22, 15:6
**method**
24:3, 112:6
**methods**
23:22
**michael**
2:1, 5:4, 7:3,
7:9, 8:3, 9:3,
9:21, 10:9,
69:7, 120:19,
190:2, 191:8
**middle**
77:1, 77:6,
105:10, 151:22,
157:12
**might**
11:13, 46:11,
64:16, 95:21,
143:12, 179:12,
182:19, 185:5
**mine**
101:21, 149:19
**minute**
120:7
**minutes**
62:14, 66:15,
66:16, 69:20
**mischaracterized**
161:12

**mischaracterizes**
33:24, 38:2,
38:13, 45:19,
51:16, 75:22,
125:18, 127:8,
154:3, 154:10,
162:10, 164:11,
166:16, 168:6,
168:22, 169:15,
171:6, 173:9,
174:13, 176:21,
177:5, 180:1,
182:24, 184:24,
186:3
**misspoke**
143:12, 165:23
**mm**
98:17, 108:4,
110:15, 135:20,
137:17
**mm-hmm**
11:8, 30:15,
62:20, 63:5,
63:8, 67:8,
76:6, 79:3,
80:1, 85:21,
118:7, 120:9,
130:3, 130:18,
157:8, 159:14,
174:8
**mmaione@cotsiril-
oslaw**
5:8
**moment**
61:11, 68:7,
73:15, 85:7,
88:12, 186:17
**monitor**
8:11
**months**
21:2
**more**
27:3, 29:11,
79:9, 81:21,
108:21, 132:4,
165:9, 174:15,
186:6
**morgan**
4:4

**morning**
10:3
**moses**
65:10, 65:12,
65:13, 65:17,
67:7, 67:10,
67:21, 68:22,
70:7, 72:2,
75:7, 82:19,
84:15, 84:19,
85:23, 115:9,
115:22, 116:1,
116:6, 118:19,
118:23, 121:13,
122:24, 123:9,
188:5
**moses's**
83:5, 120:3,
120:5, 122:3,
122:5, 122:16,
123:19, 124:16
**most**
75:19, 76:4
**move**
47:4, 82:8
**moving**
146:17, 160:19
**much**
15:11, 15:21,
80:16
**multiple**
26:20
**must**
10:18, 10:22,
64:7

**N**

**name**
10:3, 10:7,
69:10, 87:4,
89:19, 91:14,
93:9, 94:22,
112:20, 155:2,
156:22, 157:1,
157:8, 159:5,
159:22, 160:14,
160:16
**names**
155:5, 155:22,

167:7, 185:6
**nd**
19:9, 19:10
**necessarily**
180:5
**need**
11:20, 32:14,
49:16, 84:13,
95:21, 165:10,
183:16
**needed**
25:4
**needs**
32:14
**neg**
181:18
**negative**
39:12, 39:14,
39:19, 39:20,
70:20, 113:20,
114:3, 129:13,
129:16, 129:20,
130:9, 130:22,
132:17, 134:18,
135:4, 136:4,
136:13, 141:13,
141:16, 162:4,
162:6, 166:19,
167:1, 168:1,
169:17, 170:24,
171:3
**negatives**
70:16, 111:19,
115:17, 115:19,
125:16, 127:12,
128:8, 128:14,
128:18, 137:5,
138:16, 140:19,
153:24
**negs**
171:14, 179:4,
179:7, 179:23,
180:13, 180:14,
180:20, 181:6,
181:10, 182:19,
183:8, 183:16,
183:23
**neuleib**
4:13, 8:23,

**186:12**
**never**
52:15
**new**
66:14
**news**
58:6
**next**
41:24, 42:5,
43:2, 45:3,
49:12, 50:7,
52:4, 52:7,
72:2, 74:18,
76:7, 78:12,
78:24, 79:15,
80:20, 82:8,
90:10, 92:7,
94:2, 98:16,
105:12, 113:11,
130:23, 137:16,
144:11, 145:9,
145:23, 146:1,
160:19, 164:2,
166:23, 173:4,
177:10, 178:7
**nine**
63:16, 77:7,
111:19, 115:17,
115:19, 128:8,
128:14, 171:14
**no-hit**
82:16
**nodding**
10:24
**none**
186:11, 186:13,
186:14
**noor**
4:3, 4:9, 8:17,
10:4, 32:8,
34:19, 61:12,
66:7, 68:8,
96:10, 127:15,
165:3
**normal**
43:1
**north**
3:4, 5:5, 5:13,

6:4
**northern**
1:2, 8:5,
191:10
**notate**
100:12, 133:16
**notation**
53:18, 152:14,
161:10, 175:7
**notations**
53:10, 103:7,
151:5, 162:14,
172:15
**note**
133:5, 133:12,
133:17
**noted**
181:3
**notes**
173:11
**nothing**
191:17
**notice**
138:11, 141:24,
142:2, 192:6
**noticed**
126:24
**notification**
54:23
**notified**
54:13, 55:3,
55:5, 55:16,
56:4, 56:15,
56:16, 56:23
**notify**
52:6
**november**
2:3, 8:10,
191:6, 192:15
**now's**
165:3
**numbered**
70:11, 70:16,
75:17, 76:20,
78:15, 105:8,
129:17
**numbers**
77:9, 113:17,

140:23, 141:8,
141:9, 150:10,
151:16, 157:13
--------
O
--------
**oath**
10:12, 183:7
**object**
29:6, 41:19,
43:3, 43:19,
55:18, 61:5,
90:22, 111:9,
122:18, 167:11,
175:9, 185:14
**objecting**
56:11
**objection**
11:16, 14:24,
15:8, 15:23,
17:3, 18:5,
19:17, 20:9,
21:6, 22:14,
22:23, 23:6,
23:18, 23:23,
24:4, 26:22,
27:5, 28:6,
28:14, 28:22,
29:12, 29:13,
29:23, 30:6,
30:19, 31:2,
31:16, 31:24,
33:23, 34:7,
34:18, 34:19,
35:6, 35:14,
35:20, 36:3,
36:16, 36:20,
37:5, 37:15,
38:1, 38:7,
38:12, 39:8,
39:13, 39:23,
40:14, 41:1,
41:8, 42:7,
42:12, 42:18,
43:9, 43:12,
43:20, 44:7,
44:13, 44:18,
45:5, 45:18,
46:1, 46:3,

46:4, 46:17,
46:22, 47:6,
48:2, 48:18,
48:24, 49:7,
49:13, 49:21,
50:8, 50:20,
51:2, 51:15,
51:23, 52:11,
52:20, 53:6,
53:13, 53:19,
53:24, 54:7,
54:15, 55:1,
55:10, 56:5,
56:19, 57:11,
57:21, 58:2,
58:11, 58:19,
59:1, 59:8,
59:15, 59:20,
60:17, 62:9,
63:19, 64:1,
64:18, 64:24,
65:6, 65:18,
67:12, 70:17,
71:15, 72:4,
73:2, 75:3,
75:21, 76:11,
79:11, 79:18,
81:9, 82:4,
82:13, 83:6,
83:12, 83:22,
84:21, 86:16,
87:17, 87:23,
88:7, 89:1,
89:14, 90:1,
90:24, 91:9,
91:16, 92:4,
92:15, 92:22,
93:11, 93:16,
93:23, 94:4,
94:11, 95:3,
95:10, 97:14,
98:5, 98:12,
98:23, 99:4,
100:3, 100:9,
100:18, 102:1,
102:22, 103:9,
103:18, 104:13,
105:2, 105:24,

106:23, 107:10,
108:12, 109:11,
111:3, 111:23,
112:7, 112:15,
113:1, 113:8,
114:9, 114:12,
115:1, 115:12,
116:9, 116:17,
117:8, 117:16,
118:11, 118:20,
122:11, 123:2,
123:11, 125:17,
125:24, 126:7,
126:12, 127:7,
128:11, 130:11,
132:20, 133:2,
135:6, 136:16,
136:22, 137:6,
137:12, 138:4,
138:13, 139:16,
140:5, 140:20,
141:21, 142:1,
142:6, 142:12,
145:20, 147:15,
150:13, 150:21,
151:7, 152:3,
152:21, 153:15,
153:20, 154:2,
154:9, 154:18,
155:17, 156:1,
156:14, 157:15,
158:5, 159:12,
161:11, 161:19,
162:1, 162:9,
162:18, 163:2,
163:5, 163:18,
164:10, 164:21,
166:15, 167:3,
167:17, 168:5,
168:21, 169:14,
170:5, 170:21,
171:5, 171:18,
172:23, 173:7,
173:17, 174:11,
174:19, 174:23,
175:22, 176:2,
176:9, 176:20,
177:4, 177:15,

178:2, 178:12,
178:19, 179:9,
179:24, 180:21,
181:11, 181:19,
182:23, 183:11,
183:14, 183:19,
184:5, 184:22,
185:11, 185:13,
186:2, 187:13,
187:24, 188:16,
189:3, 189:9
**objections**
11:14, 11:15
**objects**
46:12
**observe**
44:21
**observed**
181:3
**obtained**
84:4
**october**
19:4
**office**
14:1, 63:2,
88:24, 90:15
**officer**
19:6, 191:5
**officers**
5:18, 9:8
**oh**
19:18, 19:23,
26:13, 36:21,
37:7, 64:10,
70:22, 76:6,
77:22, 85:21,
103:14, 115:20,
118:10, 119:15,
119:17, 137:18,
158:14, 170:7
**okay**
11:7, 11:11,
11:12, 11:18,
11:19, 11:23,
32:7, 32:17,
32:23, 32:24,
41:15, 41:16,
57:6, 57:7,

62:16, 62:17,
66:18, 68:4,
68:13, 69:22,
69:23, 69:24,
96:7, 99:17,
119:17, 119:18,
119:21, 120:9,
139:23, 140:1,
140:12, 141:11,
142:2, 142:14,
143:5, 143:9,
143:11, 149:2,
149:22, 153:3,
158:14, 159:16,
159:18, 165:14,
174:2, 185:5,
186:15, 188:3,
189:15
**old**
172:15
**once**
12:15, 65:10,
86:21
**one**
10:4, 10:5,
13:21, 20:23,
21:15, 22:17,
26:19, 30:1,
31:1, 41:22,
61:11, 65:20,
65:23, 66:2,
68:7, 68:9,
68:12, 73:15,
75:11, 76:1,
76:21, 76:23,
78:19, 78:22,
81:15, 82:3,
83:21, 84:10,
84:17, 85:7,
88:12, 90:14,
96:9, 96:24,
98:10, 108:21,
110:3, 110:13,
119:10, 123:6,
124:12, 126:2,
127:15, 129:22,
130:1, 132:7,
133:20, 148:14,

Transcript of Michael Malone
Conducted on November 9, 2021

68

148:19, 152:16,
156:21, 160:1,
163:14, 169:22,
171:14, 173:5,
174:2, 177:12,
186:17, 190:6
**one-time**
25:3
**ones**
114:11
**only**
47:19, 51:13,
62:11, 84:12,
162:24, 163:16,
163:20, 166:8,
170:14, 170:17
**only"**
161:7
**open**
66:14, 103:20,
103:24, 104:1,
113:15, 164:16,
164:23
**operator**
74:18, 75:2
**opinion**
87:21
**oppenheimer**
4:12
**opposed**
10:23, 42:4
**opposite**
140:18, 141:14,
141:19
**orange**
112:3, 130:7,
130:10, 138:18,
139:1, 139:15,
139:22, 140:15,
141:17, 156:19,
157:2, 157:9
**order**
21:16, 23:3,
42:1, 42:6,
60:8, 60:10,
61:3, 61:10,
62:3, 62:5,
62:7, 62:15,

62:19, 62:21,
64:23, 65:3,
65:16, 66:1,
67:4, 67:9,
75:17, 75:18,
76:3, 83:3,
83:15, 84:3,
85:4, 85:6,
86:3, 86:7,
111:21, 115:16,
125:12, 154:23,
180:7, 180:11,
187:17, 187:23,
189:8, 190:5,
190:6, 190:7
**ordered**
65:24
**orders**
62:5
**org**
4:9
**organized**
25:20
**orientation**
70:24, 71:9,
71:14, 72:21
**origin**
101:7, 104:11,
106:21, 109:9,
140:9
**original**
25:10, 40:21,
51:11, 126:21,
151:5, 155:15
**originally**
18:14, 18:18
**originated**
48:23
**other**
11:13, 14:3,
15:12, 16:4,
30:16, 30:17,
30:24, 51:20,
58:20, 58:23,
76:24, 97:19,
114:11, 123:17,
134:14, 137:4,
149:19, 173:19,

179:19, 181:2,
186:8, 188:4,
188:14
**out**
96:8, 133:7,
159:22, 160:9,
173:5
**outcome**
82:12, 192:12
**over**
10:11, 31:9,
32:5, 32:22,
37:17, 37:22,
40:4, 69:21,
85:9, 88:16,
90:9, 108:21
**own**
75:20, 84:15,
84:20, 121:1,
123:20, 126:5,
136:8

**P**

**page**
7:3, 7:9, 32:7,
32:23, 63:4,
63:11, 68:24,
69:6, 70:1,
74:6, 74:7,
75:13, 79:23,
80:17, 80:21,
80:24, 81:3,
85:11, 85:17,
88:20, 90:11,
96:13, 96:19,
96:21, 97:18,
99:11, 104:4,
106:9, 106:12,
108:21, 108:22,
111:14, 113:11,
116:23, 127:20,
128:4, 129:8,
134:16, 137:1,
138:19, 138:22,
139:14, 140:2,
140:12, 141:1,
141:6, 141:20,
143:17, 144:12,

145:9, 145:23,
146:1, 146:17,
149:5, 151:11,
152:7, 153:5,
160:19, 160:20,
165:16, 165:24,
169:2, 170:10,
172:10, 173:23,
178:23
**pages**
62:15
**palm**
72:23, 73:8,
73:11, 90:21,
91:13, 92:14,
93:8, 98:2,
101:16, 101:20,
102:16, 104:21,
105:11, 106:5,
114:2, 145:12,
145:19, 146:6,
146:7, 146:14,
158:2, 158:16,
158:22, 163:22,
163:24, 164:16,
164:24, 168:3,
168:20
**palms**
33:14, 167:13,
168:13, 168:19,
173:14
**paper**
40:3, 50:9
**paragraph**
63:4, 63:12,
85:13, 90:11,
111:18, 120:8
**paragraphs**
65:9
**parameters**
71:18, 71:22,
72:20
**parentheses**
157:10, 161:6,
162:23, 163:16,
164:17, 166:8,
175:2, 177:10
**park**
12:22

Transcript of Michael Malone
Conducted on November 9, 2021     69

part
28:19, 43:14,
54:1, 127:5,
151:23, 152:5,
152:16, 154:21,
174:4, 180:10,
185:2
partial
47:13, 47:19
partially
164:3
particular
16:1, 27:24,
28:9, 46:10,
46:12, 74:9,
78:8, 113:24,
149:17, 171:10,
177:19, 177:23,
178:15
parties
192:4, 192:10
parts
149:11, 152:24
party
13:2
passenger
94:8, 109:4,
159:9
path
40:4
patrol
19:7, 19:10
pattern
20:15, 22:2,
25:13, 47:18,
70:23, 71:4,
71:5, 71:6,
71:14, 72:20
pattern-type
20:16
patterson
20:23
pausing
11:16
pc
74:21
pdf
61:18, 68:14,

73:17, 99:11,
106:9, 108:22,
119:9, 127:20,
134:16, 137:1,
142:22, 148:5,
148:19, 151:11,
152:8, 165:16,
169:3, 170:10,
173:23, 178:24
pending
11:22, 191:9
percent
117:18
perform
62:3, 65:2
period
21:9, 21:14,
55:21
periodic
22:11, 22:20
person
13:22, 78:2,
82:2, 163:22
personally
39:2
persons
46:8
pertaining
153:10
phone
55:5
phonetic
14:1, 94:9
photo
72:15
photograph
39:20, 40:2
photographed
34:24
photographs
14:15
photography
33:17
photos
14:9, 14:18
phrase
175:24
picking
42:5, 43:1

pictures
64:5
piece
37:17, 40:3
place
8:14, 103:2,
153:8
placed
100:2
placing
72:13
plain
78:22
plaintiff
1:6, 1:16,
1:26, 1:36,
8:18, 8:22,
8:24, 9:4, 10:5
plaintiffs
10:4, 186:10,
191:13
planet
8:13, 9:16
plate
94:10, 159:11
please
8:15, 9:17,
10:7, 11:5,
37:4, 37:6,
38:15, 38:19,
61:8, 61:11,
68:23, 70:2,
73:13, 73:15,
80:21, 85:6,
85:11, 88:10,
95:13, 99:13,
101:14, 106:10,
111:12, 111:14,
113:11, 119:5,
120:14, 121:7,
123:6, 125:2,
126:2, 127:18,
127:23, 129:3,
133:8, 134:17,
139:4, 140:13,
145:9, 146:1,
147:18, 149:1,
151:11, 152:8,

153:6, 159:3,
159:17, 160:10,
169:3, 172:9,
172:12, 178:24,
183:20, 185:6,
186:16, 186:24
plus
164:16, 167:13
point
49:15, 49:17,
66:10, 67:21
police
16:9, 16:18,
18:10, 18:19,
18:23, 19:3,
20:12, 27:20,
40:24, 121:22,
134:5, 134:6,
134:10, 134:11
policy
50:17, 51:13,
154:15
pontiac
89:6, 90:18,
92:11, 94:10,
97:7, 97:8,
98:3, 98:10,
101:5, 104:9,
106:19, 109:6,
157:20, 158:3,
158:17, 158:23,
159:10
portion
22:3, 130:1,
130:16, 130:22,
151:22, 157:12,
179:3, 179:5
position
16:12, 17:1,
17:2, 17:24,
19:1, 21:4, 23:4
positions
18:23
possession
63:17, 111:20
possible
26:10, 27:7,
30:23, 31:4,

Transcript of Michael Malone
Conducted on November 9, 2021                    70

66:4, 66:5,
66:6, 76:15,
116:4, 142:13,
165:4
**post-it**
133:5, 133:11,
133:17
**postconviction**
15:5, 28:20,
29:4, 29:19,
30:5, 30:17,
30:24
**poulos**
5:2
**pour**
32:10
**practice**
41:13, 48:15,
48:22, 49:5,
102:18
**prep**
65:16
**prepare**
13:12, 14:6
**presence**
191:21
**present**
13:20, 13:22,
192:7
**presented**
28:12
**preserved**
33:17
**press**
78:6, 78:7,
78:11
**pressure**
34:12
**previous**
18:9, 118:2,
161:12, 168:6,
168:22, 169:15,
171:6, 173:9,
174:13, 176:21,
177:5, 180:1,
182:24, 184:24,
186:3, 187:4
**previously**
61:19, 68:15,

73:19, 95:14,
119:7, 127:13,
142:18
**printed**
61:13, 96:8
**prints**
16:16, 16:19,
16:20, 16:21,
17:7, 17:9,
18:1, 23:14,
23:15, 25:16,
26:3, 26:6,
26:7, 26:8,
26:9, 29:20,
38:6, 38:24,
39:5, 44:3,
45:2, 45:8,
45:14, 46:7,
46:13, 46:14,
46:16, 46:21,
47:3, 47:10,
47:12, 48:14,
48:15, 50:19,
51:9, 62:23,
63:1, 63:6,
63:9, 63:16,
64:5, 65:9,
65:16, 67:16,
73:8, 77:17,
77:21, 78:2,
82:1, 97:23,
100:13, 101:23,
114:2, 115:10,
116:1, 116:7,
116:11, 116:14,
129:17, 137:10,
156:5, 156:12,
161:14, 162:7,
162:11, 162:12,
163:23, 164:24,
168:3, 169:11,
169:12, 169:19,
170:24, 171:4,
171:10, 173:6,
178:1, 178:17,
184:20, 188:14,
188:24
**prior**
20:5, 21:19,

21:22, 33:24,
38:13, 127:8,
154:3, 154:10,
164:11
**probably**
87:12, 126:24
**problem**
34:20
**procedures**
117:7
**proceedings**
2:6
**process**
33:16, 38:5,
38:24, 48:12,
51:5, 54:23,
62:6, 72:10,
85:4
**processing**
39:4, 43:24,
60:21, 125:15,
155:15, 156:3,
156:8
**profession**
181:16, 182:6
**professor**
121:24
**proficiency**
22:12, 22:24,
23:12
**proper**
117:6, 163:10
**prosecuted**
28:9
**prosecutors**
54:24
**provided**
46:21, 148:2
**pull**
55:13, 61:9,
68:5, 73:14,
95:13, 111:12,
111:14, 119:5,
127:11, 142:17,
147:19, 172:8,
186:15, 186:23
**purple**
130:16

**purpose**
100:8
**pursuant**
180:11, 187:16,
192:6
**put**
25:20, 78:6,
103:20, 139:17,
140:21, 189:19

---
**Q**
---
**qualified**
31:13, 51:8,
87:24, 88:1
**qualify**
31:20
**quality**
79:15, 79:16
**question**
11:3, 11:5,
11:7, 11:18,
11:22, 32:14,
36:23, 38:17,
54:17, 54:18,
56:12, 123:5,
139:11, 140:1,
141:12, 163:12,
167:21, 177:2,
180:9, 180:14,
180:17, 180:19,
185:2, 185:4
**questions**
10:22, 25:11,
41:11, 90:9,
106:11, 145:23,
165:9, 184:12,
186:7, 186:8,
186:12, 189:16,
189:18, 189:21,
190:1
**quick**
32:9, 125:1,
171:24
**quite**
35:22, 79:20

---
**R**
---
**r**
78:24, 79:2,

79:7, 79:16
**raise**
9:13
**ran**
82:19, 89:9,
94:15, 112:10,
116:13
**range**
96:10
**rank**
75:14, 75:16,
75:18, 76:3,
82:3
**ranking**
75:15
**rd**
149:17, 149:22,
150:1, 150:11,
151:12, 152:10
**re-examination**
15:6, 62:8,
67:5
**reach**
51:21
**reached**
102:14, 106:3,
108:15, 111:6,
132:23, 136:19
**read**
38:17, 38:22,
58:5, 62:12,
62:14, 83:4,
85:20, 100:22,
101:14, 101:15,
104:4, 104:5,
104:20, 106:15,
107:13, 109:1,
110:1, 113:14,
119:15, 120:7,
120:17, 121:4,
121:18, 121:20,
124:1, 130:4,
132:5, 134:21,
135:13, 148:20,
155:9, 160:24,
164:15, 164:17,
166:5, 169:21,
169:24, 170:13,

171:13, 177:11,
178:7, 180:5,
185:3, 185:9
**reading**
62:21, 70:4,
121:10
**reads**
64:4
**ready**
19:19
**really**
181:4, 181:5
**reason**
12:7, 28:4,
42:11, 50:2,
81:6, 126:16,
133:14
**reasonable**
66:9, 184:8
**reasons**
42:15
**recall**
12:18, 12:23,
13:22, 22:9,
24:5, 24:18,
26:14, 27:23,
29:9, 29:16,
29:18, 30:3,
30:10, 30:21,
35:17, 41:4,
52:21, 58:8,
59:11, 59:18,
60:1, 60:5,
60:12, 61:2,
65:19, 65:21,
65:23, 66:2,
66:6, 74:17,
79:7, 79:20,
82:21, 82:22,
85:3, 86:3,
87:12, 87:19,
115:14, 116:20,
118:3, 147:16,
152:5, 152:24,
155:20, 185:20,
185:21, 188:7,
188:13, 188:19,
188:21

**recalls**
60:1
**receive**
20:5, 23:16,
24:16, 44:2,
55:7, 60:6,
65:10, 65:11,
67:21, 118:18
**received**
24:7, 27:18,
57:18, 60:7,
67:24, 68:22,
70:6, 70:9,
72:1, 90:14,
115:22, 118:22,
119:2, 121:12,
121:23, 122:5,
122:16, 125:11,
179:15
**receiving**
57:8, 124:15
**recently**
18:16
**recertify**
25:7
**recess**
33:5, 66:22,
125:5, 172:3
**recognition**
20:15, 20:16,
22:3, 25:14,
27:19, 28:12
**recognitions**
28:5
**recognize**
61:23, 68:17,
73:24, 96:20,
99:14, 119:23,
128:3
**recollection**
15:16, 15:22,
62:22, 70:5,
80:11, 85:22,
102:3, 121:11
**record**
10:8, 11:17,
33:4, 33:8,
61:17, 64:20,

66:21, 67:1,
125:4, 125:8,
147:13, 154:16,
155:23, 172:2,
172:5, 189:20,
190:3
**recorded**
141:13, 141:14,
147:17, 164:7,
189:1
**recording**
10:21, 113:16,
138:12, 142:10,
159:3
**records**
78:23, 156:10
**recovered**
18:1, 33:15,
33:16, 44:3,
89:5, 90:17,
92:10, 94:8,
100:12, 112:2,
184:20
**red**
132:11, 149:13,
155:9
**reduced**
191:22
**reemployed**
18:16
**reexamining**
29:20, 150:19
**refer**
155:14
**referred**
111:20, 149:8
**referring**
129:24, 175:17,
177:18, 177:24,
178:14, 185:16
**refresh**
15:16, 62:21,
70:4, 85:22,
118:13, 121:10
**regarding**
186:21
**related**
50:14, 60:20,

Transcript of Michael Malone
Conducted on November 9, 2021

**relation**
36:6
**relationship**
39:15
**relative**
18:24
**remain**
35:4, 35:13
**remainder**
156:9
**remained**
19:10, 19:13
**remains**
49:5
**remember**
14:17, 14:21,
15:4, 15:11,
15:19, 57:8,
57:13, 60:13,
61:4, 62:6,
67:7, 67:23,
80:16, 119:2,
138:18, 172:16
**remote**
3:1, 4:1, 5:1,
6:1, 191:20
**remotely**
2:10, 8:14,
10:17, 191:7,
192:7
**remove**
84:24
**repeat**
22:16, 29:24,
32:18, 38:14,
54:18, 76:1,
84:17, 123:5,
126:2, 148:9,
163:14, 174:3,
182:14, 185:1,
189:11
**rephrase**
11:6
**report**
42:1, 43:24,
49:17, 49:20,
50:4, 50:6,

192:10

53:2, 53:4,
55:3, 56:23,
60:21, 68:6,
68:21, 69:18,
69:21, 70:4,
82:11, 82:15,
88:11, 89:4,
92:16, 111:13,
113:13, 115:21,
116:14, 116:24,
117:3, 117:21,
118:18, 118:22,
119:3, 120:2,
121:12, 121:17,
121:19, 121:24,
122:16, 123:17,
123:19, 123:20,
124:4, 124:16,
155:11, 156:3,
156:8, 163:6,
186:21, 187:4,
189:2
**reported**
191:19
**reporter**
2:8, 9:11,
9:13, 9:15,
9:17, 10:21,
17:13, 17:16,
22:5, 36:9,
38:17, 38:19,
56:9, 95:20,
123:23, 148:3,
182:11, 182:13,
182:16, 185:5,
185:12, 189:10,
190:4
**reports**
50:15, 55:8,
55:13, 125:15,
153:14, 155:15,
187:7
**represent**
8:16
**represented**
13:4
**representing**
3:8, 3:17,

4:10, 4:18, 5:9,
5:17, 6:8, 8:13,
9:16, 146:7
**request**
42:20, 62:3
**requestd**
192:3
**requested**
38:21, 154:23,
185:8
**requests**
42:24
**required**
23:8
**requirement**
23:3
**respect**
114:4
**respective**
192:4
**responsibilities**
26:1
**responsibility**
28:20
**responsible**
65:15
**result**
39:19, 82:7,
84:7, 114:7,
123:14, 169:13
**resulted**
89:17, 91:12,
93:7, 94:20,
112:18, 164:9
**results**
82:24, 88:19,
113:21, 114:3,
162:17
**resume**
21:4
**retake**
25:4
**retire**
19:15, 19:19
**retired**
18:15, 19:13,
20:12, 20:13
**review**
14:5, 14:15,

126:4, 127:5,
166:11, 184:16
**reviewed**
14:12, 14:22,
15:7, 127:4,
127:10, 150:18,
161:9
**reviewing**
15:15, 62:18,
139:13, 181:2,
186:4
**ridge**
33:12, 36:8,
36:9, 36:11,
89:5, 124:8,
157:2
**ridges**
39:6, 40:5
**right**
9:14, 30:5,
30:14, 33:22,
51:14, 51:22,
66:5, 66:8,
69:5, 69:18,
75:9, 76:22,
76:24, 77:1,
77:2, 77:3,
78:5, 79:1,
79:15, 94:3,
97:4, 98:2,
99:8, 100:17,
101:16, 101:20,
102:16, 104:5,
105:11, 107:6,
109:18, 109:23,
110:6, 110:14,
111:8, 119:20,
131:12, 131:16,
133:1, 135:18,
135:21, 139:10,
145:1, 145:7,
146:7, 146:14,
147:3, 147:7,
149:2, 149:15,
150:4, 151:17,
151:22, 152:10,
156:18, 157:8,
158:21, 159:9,

Transcript of Michael Malone
Conducted on November 9, 2021

73

159:16, 160:1,
173:12, 180:9
**right-hand**
149:16
**ring**
77:2, 77:6
**roche**
3:3, 8:21,
165:3, 165:12,
186:11, 187:13
**rock**
5:11
**roderick**
4:2
**rodney**
166:6, 166:21
**role**
26:2, 31:6,
64:22
**roll**
41:23
**room**
10:19
**roughly**
18:24
**row**
77:24, 78:1,
82:3
**rpr**
2:8, 191:4,
192:22
**rule**
11:15
**rules**
10:11
**run**
80:17, 81:1,
81:4, 81:7,
81:19, 86:12,
91:4, 92:20

S

**s**
79:15
**said**
15:21, 25:22,
33:19, 37:22,
56:14, 79:2,

120:5, 122:10,
124:1, 125:10,
135:5, 143:10,
172:16, 182:5,
182:21, 183:15,
184:14, 191:15,
191:19, 191:21,
192:1
**saith**
190:8
**sales**
89:6, 90:18,
92:11, 98:4,
101:5, 104:10,
106:20
**same**
10:19, 16:12,
29:12, 32:7,
32:23, 48:9,
70:16, 73:6,
78:12, 80:24,
81:3, 81:7,
90:9, 90:13,
92:7, 94:2,
106:11, 117:24,
123:1, 123:9,
128:22, 128:24,
145:23, 151:13,
152:10, 165:20,
165:21, 165:22
**say**
26:13, 26:17,
27:2, 28:2,
35:8, 36:11,
37:7, 47:16,
49:3, 52:14,
79:8, 88:4,
168:9, 168:15,
168:17, 168:24,
170:7, 170:8,
171:8, 173:10,
173:20, 174:16,
175:3, 177:19,
178:5, 178:15,
178:22, 181:23,
187:20
**saying**
17:14, 17:16,

32:20, 64:9,
127:2, 180:12
**says**
69:6, 74:7,
74:18, 75:14,
76:7, 76:14,
79:22, 100:22,
101:14, 101:22,
104:20, 105:6,
105:10, 106:15,
107:6, 107:13,
107:23, 109:1,
109:18, 110:12,
113:13, 120:17,
129:13, 130:1,
130:4, 132:5,
134:1, 134:21,
135:13, 138:23,
138:24, 139:21,
140:9, 140:14,
141:16, 141:19,
150:5, 151:23,
152:14, 152:16,
155:6, 155:9,
156:18, 160:23,
162:23, 164:4,
164:14, 166:5,
166:23, 166:24,
167:10, 168:12,
169:21, 171:13,
172:20, 173:24,
177:11, 178:7,
179:4
**scan**
65:9
**scanned**
65:20, 66:3,
115:10
**scanning**
65:15
**scans**
65:24, 67:6
**scene**
18:2, 43:23,
44:4, 46:10,
46:15, 60:21,
125:15, 155:14,
156:2, 156:7,

184:21
**scenes**
17:9, 26:4
**score**
78:24, 79:2,
79:4, 79:6, 79:8
**scratch**
187:2, 188:10,
188:11
**screen**
68:12, 72:14,
73:24, 82:23,
85:9
**scroll**
120:13, 129:2,
139:7, 159:3,
169:2, 172:11
**seal**
37:20
**search**
45:12, 71:19,
71:23, 72:22,
80:4, 80:5,
80:7, 80:8,
80:13, 80:17,
80:24, 81:4,
81:13, 81:19,
82:19, 82:24,
84:1, 86:1,
89:9, 90:6,
91:4, 92:20,
94:15, 112:10,
134:13
**searched**
40:21, 65:12,
72:8, 81:16,
165:1
**searches**
40:17, 83:19,
86:12
**searching**
71:20
**second**
52:3, 52:19,
52:24, 53:17,
63:11, 68:24,
69:6, 77:24,
80:24, 86:23,

Transcript of Michael Malone
Conducted on November 9, 2021                                74

90:11, 96:9,
119:10, 127:15,
152:20, 174:2
**second-to-last**
79:14, 111:17
**section**
66:14, 164:3,
164:8
**sections**
160:12
**see**
11:14, 38:5,
39:5, 51:21,
61:14, 68:12,
69:2, 69:14,
77:10, 79:24,
88:19, 96:3,
96:9, 99:22,
101:2, 101:10,
109:19, 117:22,
120:10, 120:22,
126:18, 129:20,
130:15, 130:23,
131:14, 132:10,
132:11, 133:5,
136:7, 137:17,
138:23, 139:8,
140:10, 140:16,
140:18, 141:22,
143:5, 143:22,
144:1, 144:17,
144:19, 145:13,
146:8, 146:22,
150:5, 151:16,
152:17, 154:23,
155:6, 155:10,
158:11, 161:3,
164:4, 168:12,
169:8, 173:24,
174:5, 179:3,
179:5
**seeing**
119:11, 185:21
**seen**
179:20
**send**
65:10, 65:13,
67:17, 115:9,

116:2, 188:6
**sending**
50:13, 84:15
**sends**
67:6
**sent**
65:17, 84:19,
85:23, 115:10,
123:14
**sentence**
121:18
**separate**
73:7, 73:9,
80:3, 80:6, 80:8
**september**
18:17, 19:21
**sergeant**
28:17
**set**
62:5, 62:7,
64:5, 189:7,
192:14
**seven**
77:6, 98:2,
107:15, 107:24,
108:3, 135:15
**several**
27:23
**shaking**
10:24
**shape**
39:6
**short**
33:1, 66:10
**shorthand**
161:17, 162:14,
181:18
**shots**
73:24, 82:23
**should**
71:11, 97:21
**showing**
144:4, 144:24
**shows**
80:17, 80:24,
81:3
**sic**
40:23, 142:23,

143:18
**sid**
89:20, 91:14,
93:10, 94:23,
112:21, 135:16
**side**
92:10, 97:19,
101:4, 109:23,
137:4, 140:22,
141:11, 150:4,
158:23, 159:16
**sides**
33:13
**sign**
14:11
**signature**
69:2, 69:12,
69:17, 116:23,
117:2, 120:10,
120:14, 120:22,
121:1, 192:2,
192:14
**signature-5tm1q**
192:20
**similar**
20:1, 164:6
**simon**
27:11, 27:15,
57:17, 58:16,
59:13, 59:22,
61:20, 68:16,
73:20, 119:8,
127:14, 142:20,
179:17
**simply**
64:12
**simultaneous**
9:1, 38:8,
56:7, 77:17,
77:21, 78:3,
78:8, 78:17,
131:1, 143:6,
157:5, 182:9
**since**
61:12
**sit**
181:9
**sits**
167:20

**six**
63:9, 77:5,
77:24, 169:22,
174:1, 174:5,
174:9
**skilled**
88:4
**skin**
33:12, 36:8,
36:10, 36:11
**slide**
101:8, 104:3
**slightly**
80:14, 136:7
**small**
21:24, 47:13,
47:19, 99:22,
129:19, 129:21,
134:21, 158:7
**solange**
4:2
**some**
10:11, 14:13,
22:1, 22:2,
22:3, 22:24,
32:5, 32:9,
32:10, 32:14,
32:22, 55:21,
67:20, 103:14,
103:20, 116:1,
127:1, 132:4,
149:7, 162:20,
172:15, 185:6
**somebody**
34:6, 163:6
**someone**
33:21, 42:21,
66:5, 151:19
**something**
25:4, 123:16
**sometime**
19:8
**somewhat**
20:1, 23:24
**sorry**
17:13, 17:15,
22:5, 24:13,
30:1, 32:17,

Transcript of Michael Malone
Conducted on November 9, 2021 75

32:18, 34:19,
39:3, 45:23,
55:23, 56:9,
59:6, 59:17,
68:10, 76:1,
84:17, 84:22,
123:4, 123:23,
126:1, 129:23,
141:5, 143:2,
143:13, 148:13,
157:1, 160:20,
165:18, 165:19,
165:23, 174:3,
182:11, 182:13,
183:18, 185:1,
189:10
**sortable**
113:15
**sotos**
3:11
**source**
162:8
**south**
100:24, 104:8,
106:18, 109:4
**speaks**
63:20, 64:2,
65:1, 65:7,
67:13, 83:7,
91:1, 92:16,
92:23, 94:5,
94:12, 97:15,
98:6, 98:13,
104:14, 105:3,
106:24, 109:12,
130:12, 135:7,
156:15, 157:16,
157:22, 158:6,
159:13, 160:6
**spec**
180:22
**specific**
41:12, 46:12,
173:11, 174:15
**specifically**
74:17
**specifics**
12:23, 175:2

**specified**
65:16, 67:9
**speculate**
182:3, 182:4
**speculation**
26:23, 27:6,
29:7, 31:3,
35:7, 35:15,
41:2, 42:13,
44:8, 49:1,
49:8, 51:24,
52:12, 54:16,
55:11, 56:20,
87:18, 99:5,
100:4, 103:11,
116:18, 138:5,
150:14, 155:18,
162:2, 163:3,
163:19, 164:22,
166:17, 167:4,
167:18, 168:6,
169:16, 170:6,
170:22, 171:7,
171:19, 172:24,
173:8, 173:18,
174:12, 174:24,
176:10, 177:6,
177:17, 178:3,
178:13, 178:20,
179:10, 180:3,
180:23, 181:20,
183:21, 184:23
**spoke**
13:13
**spot**
165:3
**ss**
191:2
**stamp**
148:6, 148:17
**stamped**
61:18, 68:15,
73:18, 119:9,
127:21, 142:23
**stamps**
148:21
**stand**
38:20, 184:3,

185:7
**standard**
48:15, 48:22,
54:5, 78:1,
80:4, 81:4,
81:12, 84:10,
84:12, 89:18,
91:13, 93:9,
94:21, 112:19
**standards**
18:2, 60:24,
84:4, 114:8,
114:14, 114:23,
115:4
**standing**
163:5
**stands**
79:7, 79:17
**stankus**
95:15, 155:6
**star**
97:12, 99:9,
101:19, 104:24,
107:20, 110:10,
120:20, 129:6,
132:15, 135:20,
136:1, 138:9,
160:14, 160:16
**start**
82:1, 99:21
**started**
10:10, 125:22,
126:5
**starting**
21:19, 21:22,
71:3, 88:18
**state**
8:16, 10:7,
57:5, 134:6,
134:10, 191:1
**state's**
42:20, 55:4,
63:2, 88:23,
90:15
**stated**
11:16
**states**
1:1, 8:5,

161:13, 191:10
**staying**
165:21
**stenographically**
191:20
**step**
44:6, 45:4,
49:12, 52:4,
52:7, 72:2
**steps**
47:5
**steven**
122:1
**sticker**
99:22, 100:2,
100:15, 104:5,
106:14, 109:1,
112:3, 124:9,
129:19, 130:7,
130:10, 134:21,
135:1, 135:5,
138:18, 138:24,
139:15, 139:17,
139:21, 139:22,
139:24, 140:8,
140:9, 140:15,
140:16, 141:17,
141:19, 156:19,
157:3, 157:9,
160:4
**sticker"**
139:1
**stickers**
63:17, 128:15,
129:21
**still**
10:18, 18:10,
24:22, 47:3,
47:24
**stop**
86:20
**street**
3:4, 5:5, 5:13,
6:4, 98:11,
109:8
**streicker**
5:2
**strike**
187:21

Transcript of Michael Malone
Conducted on November 9, 2021

76

study
21:24
stuff
180:6
styles
1:14, 5:9, 9:4,
167:10, 184:19,
185:24, 186:14
subject
16:22, 168:2
subjects
16:17, 26:7,
40:20
submission
50:2
submit
49:20, 53:4,
72:7
submitted
17:10, 39:21,
52:18, 113:19,
114:1
submitting
72:11
subsequent
89:12, 91:7
substance
34:10
suit
192:11
suitability
44:10, 44:12
suitable
44:17, 45:3,
47:8, 47:11,
48:5, 48:9,
49:11, 116:8,
116:15, 170:2,
171:15, 178:8,
178:18
suite
3:13, 4:14,
5:5, 6:4
summarize
102:19, 187:7
summarized
154:6, 187:12,
187:21

summarizes
187:8
summarizing
53:2, 120:2,
120:4, 122:2,
160:13
supervising
28:17
supervision
21:10
supervisor
27:10, 27:14,
42:4, 43:5,
49:23, 50:3,
50:5, 52:6,
52:8, 53:5,
57:9, 58:15,
59:5
supplied
114:5
sure
11:3, 12:18,
24:20, 32:6,
32:23, 37:2,
38:19, 54:20,
85:17, 85:18,
117:18, 123:8,
163:7, 163:9
surface
33:14, 33:15,
33:20, 33:21,
34:6, 34:12,
34:17, 35:5,
35:13, 38:5,
39:4, 39:5
surfaces
24:3, 38:24
surrounds
131:9
suspect
28:8, 46:21,
47:3, 48:14,
155:3, 159:5,
159:21
suspect's
44:3, 156:22
suspects
17:10, 26:8,

45:10
swear
9:17
sworn
9:19, 9:23,
191:16
symbol
64:15
system
16:20, 16:21,
22:4, 22:8,
25:13, 25:18,
25:21, 26:6,
26:9, 40:8,
40:10, 40:12,
40:16, 40:17,
45:12, 55:4,
55:14, 71:21,
72:19, 73:12,
74:5, 80:13,
82:16, 133:19

**T**

table
75:12, 79:22
tactical
19:11
tags
156:3, 156:7
take
11:21, 21:16,
21:19, 22:11,
22:20, 24:24,
25:6, 25:7,
32:11, 33:1,
41:24, 66:18,
78:4, 78:10,
83:16, 84:23,
85:8, 86:9,
95:12, 111:11,
118:15, 125:1,
142:15, 147:9,
152:19, 164:19,
165:4, 165:7,
165:10, 171:24,
172:20, 173:15,
174:9, 174:21,
183:24

taking
8:14, 12:4,
78:2, 192:5
talking
55:22, 67:4,
178:22
tarabishy@macart-
hurjustice
4:9
task
87:11
tech
61:8, 63:13,
68:23, 73:13,
147:18
technical
11:10
technician
16:11, 39:4,
61:11, 68:7,
73:15, 85:7,
88:12, 100:6,
186:17
technicians
155:5, 155:23
tell
47:18, 58:17,
59:13, 59:23,
100:12
ten
28:3, 66:15,
75:16, 77:8,
77:10, 77:14,
77:15, 77:16,
77:18, 77:23,
77:24, 78:20,
81:18, 81:24,
83:20, 83:24
ten-minute
66:19, 125:1
tenure
41:7
term
35:24, 37:11,
37:12, 45:16,
48:5, 176:15,
176:23
terminal
72:13, 74:7,

74:10, 74:11,
75:2
**terminology**
32:22
**terms**
25:14, 32:5,
71:3
**test**
21:16, 21:23,
22:1, 22:12,
24:24, 25:3,
25:9, 25:10,
169:18
**testified**
9:23, 31:6,
59:24, 186:20,
187:3, 187:15
**testify**
10:18, 12:2,
12:5, 31:14,
31:23, 191:16
**testifying**
10:13
**testimony**
12:8, 33:24,
38:2, 38:13,
38:21, 45:19,
51:16, 75:22,
125:18, 127:8,
154:3, 154:10,
161:12, 162:10,
164:11, 166:16,
168:7, 168:22,
169:16, 171:7,
173:9, 174:13,
176:22, 177:5,
179:22, 180:1,
182:24, 183:6,
184:24, 185:8,
186:3, 188:7,
191:18, 191:24,
192:13
**tests**
23:1, 23:12
**th**
98:11, 109:8,
122:6
**thank**
63:14, 83:17,

86:10, 96:14,
96:17, 118:16,
119:19, 120:14,
124:24, 127:23,
142:15, 147:10,
165:14, 171:23,
172:12, 184:1,
189:22
**thanks**
68:13, 96:16
**that'd**
66:11
**themselves**
8:16, 46:8,
55:13, 140:19
**thereof**
192:12
**thing**
78:13
**things**
181:23, 182:2,
182:5, 182:6,
182:22, 183:3
**think**
29:14, 29:15,
65:20, 95:21,
167:21, 189:19
**thought**
20:3, 165:20
**three**
21:2, 62:15,
77:1, 80:10,
81:8, 122:8,
122:10, 122:22,
151:19, 152:2,
152:14, 152:20,
158:13, 160:12
**three-page**
61:17, 73:17
**through**
16:19, 18:3,
18:22, 55:3,
55:5, 56:23,
61:19, 62:15,
72:10, 73:18,
75:12, 77:24,
78:5, 82:10,
86:18, 86:20,

96:12, 106:11,
114:16, 118:12,
120:8, 126:17,
127:21, 142:23,
143:8, 150:10,
156:9, 165:1
**throughout**
22:12, 29:3,
41:6
**thumb**
76:22, 78:11,
110:14, 111:8,
131:17, 133:1,
145:1, 145:7,
147:3, 147:7,
156:18, 157:8,
159:9
**thumbs**
78:21
**tighe**
5:2
**time**
8:11, 11:21,
12:21, 17:6,
18:19, 21:9,
24:18, 25:6,
29:21, 30:8,
31:22, 33:21,
35:12, 37:3,
48:16, 55:21,
59:3, 59:7,
66:9, 66:13,
87:14, 126:21,
171:23, 180:5,
183:19, 189:23
**times**
12:14, 13:14,
31:9, 47:12
**title**
16:10, 25:22,
27:12
**titled**
61:9, 68:6,
73:14, 95:13,
119:6, 127:12,
142:18
**today**
8:12, 9:16,

10:12, 10:17,
12:9, 13:5,
15:2, 30:14,
49:6, 57:5,
167:20, 179:22,
181:9, 183:6,
187:18, 188:3,
189:8
**today's**
8:10
**together**
78:6
**took**
22:24, 67:3,
166:12, 172:7,
172:14
**top**
74:7, 77:23,
99:21, 137:16,
149:13, 149:15,
149:22, 151:13,
154:22, 156:24,
160:23, 164:4,
166:5
**total**
63:1, 97:6
**totally**
165:6, 165:12
**touch**
34:12
**touches**
33:21, 34:6
**toward**
107:23, 113:13
**trace**
67:16, 116:6
**traced**
40:5
**tracing**
39:22, 39:24,
40:1, 40:3,
40:5, 40:6,
70:19, 72:11,
72:13, 72:17,
73:14, 75:6,
82:24, 84:8,
88:19, 89:10,
91:5, 92:21,

94:16, 113:17,
116:2, 124:8,
124:18, 188:6,
188:15, 189:1
**tracings**
65:11, 67:10,
67:21, 67:23,
68:21, 70:5,
70:9, 70:11,
70:23, 72:1,
72:7, 72:12,
82:18, 83:5,
83:10, 86:14,
114:1, 115:9,
115:22
**trained**
20:22, 88:1
**training**
19:6, 20:5,
20:8, 21:1,
21:3, 21:20,
21:21, 21:22,
23:16
**transcript**
190:5, 191:24
**transcription**
191:23
**transcripts**
14:19
**transferred**
19:9
**trial**
29:21, 63:7,
63:9
**troshawn**
1:34, 4:18,
8:24, 166:24,
167:8, 184:19,
185:24
**trouble**
11:10
**true**
117:3, 117:19,
191:23
**truth**
191:16, 191:17
**truthfully**
10:18

**try**
45:13
**trying**
20:11, 156:21,
163:9
**tuesday**
2:3
**twice**
13:15
**two**
13:17, 77:1,
78:5, 114:23,
128:17, 128:21,
129:21, 137:16,
137:20, 138:12,
144:21, 167:2,
169:12, 169:18,
170:23, 171:1,
176:7, 187:7
**two-page**
68:14, 69:21
**type**
21:12, 22:2,
24:7, 25:13,
47:18, 70:24,
71:4, 71:5,
71:6, 71:14,
72:20, 168:13
**typewritten**
164:3
**typical**
175:24
**typically**
43:7, 53:23
**typo**
64:4, 64:7,
64:9

**U**

**uh-huh**
36:13, 115:20,
137:18, 158:20
**unambiguously**
10:23
**under**
10:12, 11:24,
21:10, 63:23,
64:23, 69:17,

101:21, 113:17,
121:1, 131:4,
131:22, 151:19,
156:22, 157:3,
159:2, 164:14,
169:21, 169:24,
171:13, 179:3,
183:6
**underlying**
57:20
**underneath**
77:18, 77:22,
78:2, 79:22,
136:8, 164:2,
168:12
**understand**
10:14, 10:17,
11:1, 11:3,
11:4, 18:3,
35:22, 36:23,
123:5, 151:4,
163:8, 166:13,
168:10, 180:13,
180:14, 180:20,
181:1, 181:6
**understanding**
179:21, 181:10,
183:9
**understood**
11:7, 37:3
**undetermined**
191:9
**unident**
56:24
**unidentified**
49:16, 103:24,
104:1
**unique**
74:14, 75:1
**unit**
19:11, 19:12,
19:16, 27:13,
29:4, 32:6,
41:7, 41:14,
48:17, 48:22,
49:6, 63:18,
64:23, 67:6,
67:18, 67:20,

70:6, 75:1,
83:4, 86:24,
87:16, 102:19,
121:12, 121:23,
149:9, 151:4,
154:16, 162:17,
176:1, 176:4,
176:7, 183:9
**unit's**
50:17, 111:20
**united**
1:1, 8:4, 191:9
**unknown**
17:12, 26:3,
26:6, 40:21,
45:13
**unless**
123:15
**until**
19:7, 19:11,
19:13
**upper**
99:13, 99:22,
107:6, 109:18,
133:6, 152:10,
169:4
**upper-left**
106:15
**usable**
35:1, 44:23,
47:24
**usage**
176:6
**use**
22:7, 25:12,
37:11, 40:16,
75:2, 162:16,
175:7, 175:18,
175:24, 176:24,
177:7
**usefulness**
26:5
**uses**
77:17
**using**
74:22, 77:15,
81:7, 81:23
**usually**
28:7, 28:8,

28:16, 37:16,
37:18, 41:17,
41:21, 43:2,
43:22, 43:23,
46:7, 48:11,
49:16, 64:14,
71:10, 77:18,
81:11

**V**

**v**
100:17
**vague**
56:12, 59:21,
170:8, 171:21,
172:16, 173:20,
185:15
**valuation**
20:18
**van**
4:5, 8:19
**various**
16:18, 42:14,
42:15
**vary**
81:20
**vehicle**
106:19
**verified**
124:20, 192:14
**version**
96:8, 96:15,
127:17, 148:10
**versions**
95:22
**versus**
57:5
**vertically**
109:23
**victim**
46:8, 135:16,
140:14, 161:1,
161:14, 169:5,
169:6, 170:15,
170:17
**victims**
114:23, 124:13,
160:1, 169:12,

170:23, 171:1
**video**
8:11, 8:13
**videographer**
8:1, 8:12,
9:12, 9:15,
33:3, 33:7,
66:20, 66:24,
125:3, 125:7,
172:1, 172:4,
189:24
**videotaped**
8:2
**virtually**
2:2
**visually**
38:5
**vs**
1:8, 1:18,
1:28, 1:38

**W**

**walk**
18:22, 72:10
**want**
66:15, 81:23,
118:5, 127:16,
138:19, 148:20,
165:5
**wants**
32:9
**water**
32:10, 32:14
**way**
57:1, 70:16,
95:24, 163:10,
192:10, 192:11
**we'll**
33:1, 66:18,
90:9, 106:11,
190:6, 190:7
**we're**
32:7, 32:22,
32:23, 82:23,
84:23, 85:17,
105:10, 124:23,
142:14, 158:12,
165:22

**weren't**
181:1
**west**
3:13, 4:14,
98:10, 109:7
**western**
101:1, 104:8,
106:18, 109:4
**whatever**
162:11
**whatsoever**
12:7
**whenever**
66:7, 66:8
**wherein**
191:12
**whereof**
192:13
**whereupon**
9:20, 33:5,
66:22, 125:5,
147:22
**whether**
16:22, 30:9,
34:5, 34:10,
34:16, 34:21,
34:22, 47:22,
51:10, 56:24,
71:6, 85:23,
87:13, 171:10
**whichever**
81:15
**white**
106:14, 109:1,
130:23, 131:4,
139:17, 139:21,
140:8
**whole**
191:17
**whorl**
71:7
**wife**
12:21
**wit**
191:6
**withdraw**
46:3
**within**
32:6

**without**
10:13, 173:19,
174:15, 175:1,
177:18, 186:4
**word**
103:20, 149:14,
159:21, 175:18,
176:6, 176:14,
177:3, 177:7,
179:22, 181:17
**work**
15:19, 26:11,
27:19, 28:20,
29:3, 29:5,
30:3, 30:13,
30:16, 32:21,
36:1, 48:6,
51:1, 57:4,
57:14, 57:16,
58:16, 58:21,
58:24, 88:6,
125:22, 126:5,
126:10, 126:19,
147:12, 150:19,
175:6, 179:16,
180:10, 184:3,
187:8, 187:11,
187:16, 187:20,
187:21, 187:22
**worked**
15:12, 15:24,
30:23, 176:7
**working**
18:10, 21:10,
44:5, 54:13,
54:21, 54:24
**worth**
47:15
**worthy**
47:15
**wouldn't**
64:10, 177:7,
177:24, 181:5,
182:3
**write**
53:2, 130:19,
166:17, 176:24
**writing**
101:10, 104:17,

Transcript of Michael Malone
Conducted on November 9, 2021

80

107:3, 109:15,
127:2, 127:4,
130:15, 132:5,
135:10, 138:23,
149:11, 163:7
**written**
130:22
**wrote**
99:3, 138:3,
151:19, 181:4

### Y

**yeah**
19:18, 21:24,
22:7, 32:16,
35:16, 39:2,
46:2, 56:23,
57:13, 61:15,
64:7, 66:6,
66:12, 70:3,
75:8, 79:19,
80:22, 85:3,
85:10, 89:8,
90:5, 90:23,
92:24, 96:6,
96:22, 98:7,
99:17, 113:9,
122:22, 132:12,
136:9, 137:2,
140:17, 152:23,
154:11, 155:19,
158:9, 162:21,
165:8, 168:8,
168:14, 168:17,
174:14, 185:20,
190:6
**year**
18:9, 18:13,
18:17, 18:18,
21:15, 26:12,
27:2, 40:22,
87:15, 152:13
**years**
25:8, 151:2
**yellow**
133:5, 133:17
**yep**
85:2

**yosef**
169:7, 170:18

### Z

**z**
97:4, 104:6,
106:16, 109:2,
128:10, 149:23,
150:12, 152:11
**zoom**
99:13, 127:22,
133:7, 149:1,
158:8, 158:9,
159:18, 160:9

### 0

**00**
2:4
**004571**
2:9
**01049**
1:6, 8:7
**01053**
1:14, 8:8
**01062**
1:24, 8:8
**01068**
1:34, 8:9
**0345**
5:7
**08**
8:11
**084**
2:9
**09**
101:18

### 1

**1**
131:13, 172:2,
172:5, 173:4
**1,000**
27:3
**1-a**
73:14
**1-page**
119:8
**10**
2:4, 7:4, 8:11,

33:4, 33:8,
106:9, 106:12
**100**
117:18
**1000**
5:15
**1015321**
94:22
**101532115**
110:4
**10389**
120:20, 135:21
**1049**
1:19, 1:29,
1:39
**11**
66:21, 67:1,
70:12, 78:16,
78:23, 113:19,
166:8
**11578726**
88:22, 90:14,
92:8, 94:3
**1170632**
89:20, 91:14,
93:10, 101:17,
104:23, 112:21,
132:8
**1176032**
107:16
**12**
70:12, 88:19,
89:4, 89:10,
89:18, 90:6,
107:7, 108:10,
108:16, 125:4,
125:8, 157:20
**1240**
3:13
**1271**
4:8
**13**
70:9, 70:12,
82:18, 90:10,
90:17, 90:21,
91:5, 91:13,
92:2, 105:6,
105:8, 105:22,

106:4, 108:22,
115:22, 134:16,
140:2, 141:4,
141:6, 158:4,
158:17
**14**
63:1, 70:12,
70:13, 90:14,
92:7, 92:14,
92:21, 93:8,
93:21, 96:13,
101:20, 101:22,
101:23, 101:24,
102:11, 113:19,
115:17, 158:24
**141**
3:13
**148**
7:10
**15**
31:11, 66:15,
70:13, 94:2,
94:16, 94:21,
95:8, 98:20,
101:18, 104:23,
107:16, 109:19,
109:21, 111:1,
111:7, 117:21,
118:8, 122:15,
122:21, 127:20,
132:8, 138:1,
167:10
**151**
6:4
**1584551**
63:24, 111:18,
130:6, 134:24
**160**
4:6
**17**
66:21
**18**
1:6, 1:14,
1:19, 1:24,
1:29, 1:34,
1:39, 2:6, 8:7,
8:8, 8:9,
121:21, 122:6,

Transcript of Michael Malone
Conducted on November 9, 2021

| | | | |
|---|---|---|---|
| 190:3 | **2002** | **20659** | **20772** |
| **186** | 19:11 | 144:12 | 129:9, 139:9, |
| 7:5 | **2009** | **20660** | 141:10 |
| **19** | 16:13, 17:1, | 145:10 | **20778** |
| 122:17 | 17:2, 25:23, | **20661** | 134:17, 140:3, |
| **1990** | 27:10, 27:16, | 145:24 | 141:10 |
| 94:9 | 28:19, 54:12, | **20662** | **20780** |
| **1991** | 56:2, 57:10, | 142:23, 143:8, | 127:21, 127:24 |
| 18:21, 19:3, | 61:9, 68:6, | 146:18 | **20781** |
| 19:4 | 88:10, 98:20, | **20685** | 148:6, 148:14, |
| **1992** | 102:19, 104:23, | 142:23, 143:18 | 148:23, 149:5, |
| 19:8, 97:7, | 107:17, 110:5, | **20714** | 153:6 |
| 159:10 | 117:21, 118:8, | 148:7, 148:23, | **20782** |
| **1994** | 119:6, 121:8, | 151:12, 160:20, | 148:7, 148:23 |
| 12:17, 100:24 | 121:16, 121:21, | 172:11 | **212** |
| **1995** | 122:15, 122:17, | **20715** | 61:21 |
| 48:23, 58:10, | 122:21, 132:9, | 148:7, 148:24, | **214** |
| 104:7, 106:17, | 134:8, 135:17, | 165:24 | 68:17, 88:10, |
| 109:3, 126:22, | 137:23, 138:1 | **20716** | 111:12, 186:16 |
| 130:2, 151:16, | **2012** | 96:12 | **215** |
| 152:13, 155:16 | 24:20 | **20717** | 73:20 |
| **1a** | **2013** | 96:20 | **216** |
| 70:11, 70:19, | 24:19 | **20718** | 119:7, 186:23 |
| 70:20, 75:6, | **2019** | 97:19 | **217** |
| 82:24, 112:2, | 18:15, 19:14, | **20721** | 127:13 |
| 112:11, 112:19, | 19:15, 111:13 | 99:12 | **218** |
| 113:6, 129:17, | **2021** | **20725** | 142:19 |
| 130:22, 131:8, | 2:3, 8:10, | 106:10 | **22** |
| 131:10, 132:17, | 19:22, 191:6, | **20728** | 19:9, 19:10 |
| 132:24, 133:18, | 192:15 | 108:23 | **223** |
| 139:14, 156:20, | **20535** | **20729** | 4:14 |
| 157:9 | 61:19 | 96:12 | **23** |
| **1a-b** | **20536** | **20751** | 121:8, 121:16, |
| 129:14 | 85:18 | 148:7, 148:24, | 135:17, 137:23 |
| **1b** | **20537** | 152:8, 165:17, | **2417** |
| 70:12, 113:18, | 61:19 | 169:3, 173:24 | 98:10, 109:7 |
| 129:17, 133:22 | **20581** | **20752** | **243** |
| **2** | 68:15, 88:15, | 148:7, 148:24 | 3:6 |
| **2** | 111:15 | **20763** | **2500** |
| 2:6, 70:12, | **20582** | 148:24, 170:11, | 6:4 |
| 88:19, 89:4, | 68:15, 88:15 | 179:1 | **26** |
| 89:10, 89:18, | **20583** | **20764** | 167:13 |
| 90:6, 107:7, | 119:9 | 148:8, 148:24 | **263** |
| 108:10, 108:16, | **20590** | **20766** | 5:7 |
| 113:19, 157:20, | 73:18, 74:6 | 127:21, 127:24 | **28** |
| 190:3 | **20592** | **20767** | 63:7, 63:8, |
| **200** | 73:18 | 137:1, 140:13 | 67:1 |
| 4:14, 26:18 | **20658** | **20768** | **2a** |
| | 143:8 | 148:7 | 70:12, 113:18 |

Transcript of Michael Malone
Conducted on November 9, 2021                                    82

| 3 | | |
|---|---|---|

**3000**
6:6
**307**
139:2
**311**
3:4
**312**
3:6, 4:8, 4:16,
5:7, 5:15, 6:6
**31778620**
135:17
**321**
5:13
**32699760**
94:23
**327**
4:16
**33**
5:5
**3300**
3:15
**336**
7:10, 147:21,
147:23, 172:9
**3370**
4:16
**36**
33:4
**37**
33:8, 125:4
**39123760**
89:20, 91:15,
93:10, 112:21
**3rd**
3:4

| 4 | | |
|---|---|---|

**406491**
2:11
**47**
172:2
**494**
5:15
**4th**
19:5, 19:7

| 5 | | |
|---|---|---|

**503**
4:8

**53**
125:8
**5521**
94:10, 97:8,
109:7, 159:11
**58**
172:5
**5900**
3:6
**594269**
97:4, 100:17,
104:6, 106:16,
109:2, 128:10,
130:5, 134:23,
149:23, 150:12,
151:13, 152:11
**5a**
70:12, 113:18

| 6 | | |
|---|---|---|

**60**
63:9
**600**
5:5
**60602**
5:6
**60604**
3:14
**60606**
4:15, 6:5
**60607**
3:5
**60611**
4:7
**60654**
5:14
**630**
3:15
**6th**
4:6

| 7 | | |
|---|---|---|

**70**
98:11, 109:8
**7004**
100:24, 104:7,
106:17, 109:3
**704**
6:6

**735**
3:15
**7a**
70:12, 113:18,
124:8, 124:18,
134:18, 136:13,
136:20, 140:4

| 8 | | |
|---|---|---|

**822**
148:12
**85**
143:10
**8a**
70:12, 113:18
**8c**
70:12, 113:18

| 9 | | |
|---|---|---|

**9**
179:4, 179:7,
179:23, 180:13,
180:14, 180:20,
181:6, 181:10
**92**
98:10, 109:6
**94**
95:16
**95**
12:17, 112:6,
134:22, 161:5,
166:9
**959742**
166:7
**96**
167:13, 167:14